FILED
IN CLERKS OFFICE

2005 JAN 27 P 3: 37

05 DISTRICT COURT 10166 PBS
DISTRICT OF MASS.

RECEIPT #_____
AMOUNT $_____
SUMMONS ISSUED__4_____
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK._____
DATE_____

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| H.D. YORSTON, On Behalf of Himself and All Others Similarly Situated, | ) ) ) | No. |
| Plaintiff, | ) ) ) | CLASS ACTION |
| vs. | ) ) ) | COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| EPIX PHARMACEUTICALS, INC., MICHAEL D. WEBB, PEYTON J. MARSHALL and ANDREW UPRICHARD, | ) ) ) ) | MAGISTRATE JUDGE_JLA_ |
| Defendants. | ) ) ) | DEMAND FOR JURY TRIAL |

This writing/publication is a creative work fully protected by all applicable copyright laws, as well as by misappropriation, trade secret, unfair competition and other applicable laws. The authors of this work have added value to the underlying factual materials herein through one or more of the following: unique and original selection, coordination, expression, arrangement, and classification of the information.

No copyright is claimed in the text of statutes, regulations, and any excerpts from analysts' reports quoted within this work.

Copyright © 2005 by William S. Lerach and Lerach Coughlin Stoia Geller Rudman & Robbins LLP. William S. Lerach and Lerach Coughlin Stoia Geller Rudman & Robbins LLP will vigorously defend all of their rights to this writing/publication.

All rights reserved -- including the right to reproduce in whole or in part in any form. Any reproduction in any form by anyone of the material contained herein without the permission of William S. Lerach and Lerach Coughlin Stoia Geller Rudman & Robbins LLP is prohibited.

## SUMMARY AND OVERVIEW

1.      This is a securities class action on behalf of all purchasers of the publicly traded securities of EPIX Pharmaceuticals, Inc. ("EPIX" or the "Company") between July 10, 2003 and January 14, 2005 (the "Class Period"), against EPIX and certain of its officers and directors for violations of the Securities Exchange Act of 1934 (the "1934 Act").

2.      EPIX (formerly known as EPIX Medical Inc.) is a developer of targeted contrast agents that are designed to improve the diagnostic quality of images produced by magnetic resonance imaging ("MRI"). MRI is an imaging technology for a range of applications, including the identification and diagnosis of a variety of medical disorders.

3.      Defendants progressed MS-325, the Company's principal product in development, through early stage clinical trials. Following completion of those trials, in December 2003, EPIX submitted a New Drug Application ("NDA") for MS-325 to the United States Food and Drug Administration ("FDA"). MS-325 is designed to provide visual imaging of the vascular system through a type of MRI known as magnetic resonance angiography ("MRA").

4.      On or before July 10, 2003, defendants became aware of clinical quality issues with the underlying data for their MS-325 Phase III program. These issues, including the generation of unintelligible imaging scans, made difficult, if not impossible, the proper control of their clinical test results and statistical analysis of the data and results. Defendants knew that, if they were to meet the timelines and expectations of the market, these serious issues would need to be mitigated or overlooked. Stating in their press release of July 10, 2003 that "[t]he consistency of the results shown in all four Phase III studies has demonstrated that MS-325 should enable physicians to make important decisions about the care of their patients with greater confidence and accuracy," defendants reiterated their plan to submit their NDA for MS-325 by the end of 2003.

- 1 -

5.    On December 16, 2003, defendants announced the submission of their NDA for MS-325. Defendants continued to conceal the serious problems with their clinical program, specifically the poor quality of the underlying clinical data and problems with the statistical analysis. Defendants instead made positive and encouraging remarks about their "extensive scientific and clinical development" activities and prospects for product approval.

6.    Then, on January 14, 2005, the Company reported shocking news about the MS-325 submission. Although defendants sought to place a positive spin on their receipt of an FDA "approvable" action letter for MS-325, the news was far from positive. The FDA had determined that problems with the Phase III clinical trials were so serious that it was impossible for them to come to a conclusion about the efficacy of MS-325. Worse, the FDA noted problems with the underlying data itself, problems that could not be resolved simply on the basis of re-analysis of the data. Thus, defendants delivered a serious setback to investors and, based on their news, the price of EPIX stock plunged 27%, to $10.67, for a loss of $3.98 per share, on volume of 11 million shares.

7.    The true facts, which were known by each of the defendants but concealed from the investing public during the Class Period, were as follows:

(a)    The EPIX Phase III protocol for MS-325 allowed clinical investigators to substitute their own institutional standard for MRI imaging and the result of the use of different imaging methods to acquire non-contrast MRA comparator "control" scans demonstrated great variability from study site to site, seriously impacting the Company's ability make a case for the efficacy of MS-325 and diminishing prospects for product approval;

(b)    Clinical investigators generated a large number of uninterpretable images during the Phase III trials, a result rooted in the absence of clear instruction and defective clinical

- 2 -

quality standards as to the requirements for performance of test and non-contrast MRA comparator scan controls;

(c)     the absence of clear-cut clinical quality management practices to deal with test and control scan problems was responsible for difficulties in the statistical analysis and determination of efficacy of MS-325;

(d)     problems with uninterpretable images, multiple standards for acquisition of control scans, deficient clinical quality practices, and difficulties in the statistical analysis and determination of efficacy of MS-325 were known to defendants prior to the submission of the clinical data and results to the FDA; and

(e)     problems with the quality of the underlying clinical data and results for the MS-325 NDA were so serious that the product was unlikely to be approved for use by the FDA at the end of the regulatory review cycle.

8.     As a result of the defendants' false statements, EPIX shares traded at inflated prices during the Class Period, causing millions of dollars of damage to the Class. On June 3, 2004, as EPIX stock traded as high as $24.20 a share, the Company announced the sale of $100 million (including the over-allotment) in 3.00% convertible senior notes (the "Notes"), resulting in proceeds of approximately $96 million to the Company. In connection with that offering, the Company announced on November 3, 2004 that the Securities and Exchange Commission ("SEC") had declared effective its Registration Statement on Form S-3 relating to the resale of its Notes and the shares of its common stock issuable upon conversion of the Notes.

## JURISDICTION AND VENUE

9.     Jurisdiction is conferred by §27 of the 1934 Act. The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act and Rule 10b-5.

- 3 -

10.    (a)    Venue is proper in this District pursuant to §27 of the 1934 Act. Many of the false and misleading statements were made in or issued from this District.

(b)    The Company's principal executive offices are in Cambridge, Massachusetts, where the day-to-day operations of the Company are directed and managed.

## THE PARTIES

11.    Plaintiff H.D. Yorston purchased EPIX securities as described in the attached certification and was damaged thereby.

12.    Defendant EPIX is a developer of targeted contrast agents that are designed to improve the diagnostic quality of images produced by MRI. MRI is an imaging technology for a range of applications, including the identification and diagnosis of a variety of medical disorders.

13.    Defendant Michael D. Webb ("Webb") was Chief Executive Officer, a director and Secretary of EPIX. During the Class Period, defendant Webb sold 66,254 shares of EPIX stock, for net proceeds of $1.2 million.

14.    Defendant Peyton J. Marshall ("Marshall") was Senior Vice President, Finance and Administration and Chief Financial Officer of EPIX. During the Class Period, defendant Marshall sold 21,500 shares of EPIX stock, for net proceeds of $372,071.

15.    Defendant Andrew Uprichard ("Uprichard") was President and Chief Operating Officer of EPIX.

16.    The individuals named as defendants in ¶¶13-15 are referred to herein as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of EPIX's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and

- 4 -

opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them but not to the public, each of these defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations which were being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein at ¶¶19-21 and 23, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

**SCIENTER**

17.    In addition to the above-described involvement, each Individual Defendant had knowledge of EPIX's problems and was motivated to conceal such problems. Defendant Webb, having served as CEO, and defendants Marshall and Uprichard, having served as Chief Financial Officer and Chief Operating Officer, respectively, were responsible for press releases and communications issued by the Company. Each Individual Defendant sought to demonstrate that he could lead the Company successfully and generate the growth expected by the market.

**FRAUDULENT SCHEME AND COURSE OF BUSINESS**

18.    Each defendant is liable for: (a) making false statements; or (b) failing to disclose adverse facts known to him about EPIX. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of EPIX publicly traded securities was a success, as it: (i) deceived the investing public regarding EPIX's prospects and business; (ii) artificially inflated the price of EPIX publicly traded securities; (iii) allowed the Company to issue Notes at inflated prices; (iv) allowed defendants to sell $1.5 million worth of their own shares at inflated prices; and (v) caused plaintiff and other members of the Class to purchase EPIX publicly traded securities at inflated prices.

- 5 -

## DEFENDANTS' FALSE AND MISLEADING
## STATEMENTS ISSUED DURING THE CLASS PERIOD

19.    On July 10, 2003, defendants issued a press release entitled "EPIX Announces

Results of Final Phase III Trials of MS-325 for MR Angiography; Renal and Pedal MRA Studies

Meet Primary Endpoints Supporting Broad Vascular Imaging Indication." The press release stated

in part:

> Results from EPIX Medical Inc.'s final two Phase III MS-325 clinical trials in
> patients with suspected vascular disease in the renal and pedal arteries (kidneys and
> feet) were announced today concurrent with the Eleventh Annual Scientific Meeting
> of the International Society of Magnetic Resonance in Medicine (ISMRM) in
> Toronto. ***Each trial met its primary clinical endpoint, demonstrating statistically
> significant improvement in accuracy for detecting renal and pedal vascular disease
> with MS-325-enhanced magnetic resonance angiography (MRA) compared to non-
> contrast MRA. These final two Phase III studies further support results from
> previous Phase III studies and will form the basis for the NDA submission planned
> for later in the year, requesting a broad MRA indication.*** The company expects
> MS-325 to be the first contrast agent submitted to the FDA for an MRA indication.
>
> "We believe that these latest study results, as part of the complete MS-325
> Phase III database, will provide a very strong package to support the broad use of
> MS-325 in MRA, which we see as the next generation of MR contrast," said EPIX
> CEO Michael D. Webb. "Our NDA submission will include the results from all four
> Phase III MS-325 clinical trials in patients with suspected vascular disease in the
> aortoiliac, pedal and renal arteries. After recent consultation with the FDA, we
> continue to believe that our MRA studies in these widely varying vascular areas will
> support a broad indication for MRA using MS-325."
>
> "Previous studies with MS-325 support the safety and efficacy of this novel
> imaging agent in the aortoiliac region, where blood flow can be turbulent. The
> results of these final two studies confirm the wide range of vascular beds that can be
> examined using MS-325 MRA," said Gregory Sorensen, M.D., Associate Professor
> of Radiology at Harvard Medical School and Medical Director for EPIX. Dr.
> Sorensen further commented, "These Phase III studies show that MS-325 aids the
> imaging of blood flow to organs such as the kidneys, and areas of slow blood flow
> such as the feet. The consistency of the results shown in all four Phase III studies has
> demonstrated that MS-325 should enable physicians to make important decisions
> about the care of their patients with greater confidence and accuracy."

20.    On December 16, 2003, defendants issued a press release entitled "EPIX Submits

MS-325 New Drug Application to FDA; Seeks First U.S. Approval for Magnetic Resonance

Angiography Indication." The press release stated in part:

> EPIX Medical, Inc., a developer of specialty pharmaceuticals for magnetic resonance imaging (MRI), today announced that it has submitted a New Drug Application (NDA) to the Food and Drug Administration (FDA) for MS-325, a contrast agent designed specifically for vascular imaging with magnetic resonance angiography (MRA). MS-325 is being co-developed by EPIX and Schering AG, Germany.
>
> EPIX is the first company to seek marketing approval in any country for an MR blood pool agent, a new class of imaging agents expected to expand the clinical use of MRI by providing patients and physicians an innovative means for diagnosing vascular abnormalities. ***The MS-325 NDA is the culmination of an eight-year MRA development program that was discussed with the FDA as the trials progressed. It includes the results of 18 clinical trials, involving 1,438 subjects who received MS-325.*** The MS-325 NDA is the first application for marketing approval for an MR contrast agent to be submitted to the FDA for the primary indication of MRA.
>
> "***After extensive scientific and clinical development, we are extremely pleased to announce the submission of the MS-325 NDA to the FDA for a broad vascular imaging indication outside the heart***," commented Michael D. Webb, President and CEO of EPIX. "Currently, the standard diagnostic exam for vascular disease is invasive, catheter-based X-ray angiography. We believe MS-325-enhanced-MRA will provide a valuable alternative to X-ray angiography. In addition, there are a significant number of people with vascular disease who, for medical or other reasons, are unlikely to undergo an X-ray angiogram, and who might benefit from a minimally-invasive MRA exam using MS-325."
>
> "An estimated 62 million people in the United States have some form of cardiovascular disease, which can result in atherosclerotic plaque build-up that causes stroke, heart attack, or limb loss," continued Webb. "In 2002, there were 4.8 million diagnostic angiograms performed in arterial beds outside the heart, and an additional 2.7 million diagnostic angiograms of the coronary arteries. As our population ages, cardiovascular disease is putting an increasing burden on our health care system. We believe that MS-325 will address a large and growing medical need, and that both patients and physicians will rapidly adopt this new, less costly procedure."
>
> About MS-325
>
> MS-325 binds reversibly to human serum albumin, brightening the blood for a prolonged period. This feature may allow physicians to collect more meaningful clinical data using widely available MRI equipment to diagnose and characterize vascular disease. MS-325-enhanced MRA is less invasive than current catheter-

- 7 -

based X-ray angiography, and has the potential to provide health care professionals with an alternative to diagnose and manage patients with vascular disease.

21.    On February 17, 2004, defendants issued a press release entitled "EPIX Announces FDA Acceptance of Filing of MS-325 NDA; Review of First Drug Developed for MR Vascular Imaging on Track." The press release stated in part:

> EPIX Medical, Inc., a developer of pharmaceuticals for magnetic resonance imaging (MRI), today announced that the U.S. Food and Drug Administration (FDA) has determined that the New Drug Application (NDA) submitted for MS-325 (gadofosveset) has been accepted for filing by the Agency and has been designated for a standard review cycle. *Acceptance for filing indicates that the FDA considers the NDA to be complete and ready for review.* The target date for first FDA action in the standard review cycle is ten months from the December, 2003 date of submission. MS-325, a contrast agent designed specifically for vascular imaging with magnetic resonance angiography (MRA), is being co-developed by EPIX Medical, Inc. and Schering AG, Germany.
>
> "The NDA submission for MS-325 was based on the results of a large Phase III clinical trial program that included four separate studies. We have been working actively with the FDA, and are pleased to move to the next stage of the review process," said Michael D. Webb, President and CEO of EPIX. "We believe that, if approved, MS-325-enhanced MRA will provide a safer way to perform diagnostic angiography. Given the risks that are associated with catheter X-ray angiography, many patients are contraindicated for either the X-ray contrast agent, or the procedure itself. MS-325 has the potential to help address this important medical need."

22.    On June 3, 2004, the Company announced the sale of $100 million (including the over-allotment) in 3.00% convertible senior notes (the "Notes"), resulting in proceeds of approximately $96 million to the Company.

23.    On November 3, 2004, defendants issued a press release entitled "EPIX Announces Effectiveness of Registration Statement for Resale of 3.00% Convertible Senior Notes Due 2024." The press release stated in part:

> EPIX Pharmaceuticals, Inc., a developer of innovative pharmaceuticals for magnetic resonance imaging (MRI), today announced that the Securities and Exchange Commission has declared effective its Registration Statement on Form S-3 relating to the resale of $100 million aggregate principal amount of its 3.00% convertible senior notes due 2024 (the "Notes") and the shares of its common stock issuable upon

conversion of the Notes. The Notes were originally issued in a private placement in June 2004.

EPIX will not receive any proceeds from the sale by any selling holder of the Notes or the shares of EPIX common stock issuable upon conversion of the Notes.

## THE TRUTH IS REVEALED

24.   On January 14, 2005, defendants issued a press release entitled "EPIX

Pharmaceuticals Announces Receipt of Approvable Letter from FDA for MS-325; Agency Requests

Additional Clinical Studies." The press release stated in part:

EPIX Pharmaceuticals, Inc., announced today that the U.S. Food and Drug Administration (FDA) has completed its review of the new drug application for MS-325 (gadofosveset trisodium), and found it to be approvable. In the approvable letter, the FDA *requested additional clinical studies to demonstrate efficacy prior to approval.* MS-325 is the first in a new class of MRI blood pool contrast agents, and is specifically designed for magnetic resonance angiography (MRA).

*The FDA indicated that its principal questions continue to relate to the non-contrast MRA comparator scans used in the Phase III trials and to the statistical treatment of uninterpretable images. The letter identified no safety or manufacturing deficiencies.*

EPIX is continuing its active dialogue with the FDA in order to determine the next steps the Company will need to take to secure the approval of this first-of-its-kind contrast imaging agent. EPIX remains committed to developing MRI cardiovascular imaging pharmaceuticals that enable clinicians to obtain and view clearer scans.

25.   During defendants' conference call of January 14, 2005, defendants were pressed to

discuss "the timeline of their requirements going forward." Responding to this and similar

questions, defendant Webb noted:

I think our history in the four Phase III trials is probably what I'd want to comment on which is that we did conduct the four Phase III trials. They were relatively large. We do have a highly experienced machine here in terms of generating the patient enrollment. *It takes several months to get a protocol written and submitted and approved through IRBs at various sites.*

*The Phase III trials we conducted over the last few years, actual patient enrollment time was 9 to 12 months per trial from first injection to final injection.*

*And then of course the blinded read (ph) and the sufficient and rollup of all the data takes many months on the back of that.*

26.    The shocking news of January 14, 2005, revealed problems with the MS-325 Phase III clinical program so serious that the FDA required entirely new efficacy studies.  These problems highlight the aggressive promotion during the Class Period of an otherwise highly deficient and defective clinical program for MS-325 by defendants.  Based on this news, the price of EPIX's stock plunged 27%, to $10.67, for a loss of $3.98 per share, on volume of 11 million shares.

27.    The true facts, which were known by each of the defendants but concealed from the investing public during the Class Period, were as follows:

(a)    The EPIX Phase III protocol for MS-325 allowed clinical investigators to substitute their own institutional standard for MRI imaging and the result of the use of different imaging methods to acquire non-contrast MRA comparator "control" scans demonstrated great variability from study site to site, seriously impacting the Company's ability make a case for the efficacy of MS-325 and diminishing prospects for product approval;

(b)    Clinical investigators generated a large number of uninterpretable images during the Phase III trials, a result rooted in the absence of clear instruction and defective clinical quality standards as to the requirements for performance of test and non-contrast MRA comparator scan controls;

(c)    the absence of clear-cut clinical quality management practices to deal with test and control scan problems was responsible for difficulties in the statistical analysis and determination of efficacy of MS-325;

(d)    problems with uninterpretable images, multiple standards for acquisition of control scans, deficient clinical quality practices, and difficulties in the statistical analysis and

determination of efficacy of MS-325 were known to defendants prior to the submission of the clinical data and results to the FDA; and

(e)     problems with the quality of the underlying clinical data and results for the MS-325 NDA were so serious that the product was unlikely to be approved for use by the FDA at the end of the regulatory review cycle.

## INSIDER SELLING

28.     During the Class Period, defendant Webb sold a total of 66,254 shares of EPIX stock, in accordance with the following schedule, for net proceeds of $1.2 million:

| Date | Sold | Price | Proceeds | Date | Sold | Price | Proceeds |
|------|------|-------|----------|------|------|-------|----------|
| 09/16/2004 | 1,900 | $21.30 | $40,470 | 10/04/2004 | 2,500 | $19.85 | $49,625 |
| 09/16/2004 | 1,245 | $21.20 | $26,394 | 10/07/2004 | 2,500 | $17.60 | $44,000 |
| 09/16/2004 | 1,032 | $21.35 | $22,033 | 10/08/2004 | 2,500 | $17.90 | $44,750 |
| 09/16/2004 | 400 | $21.31 | $8,524 | 10/14/2004 | 1,254 | $16.85 | $21,130 |
| 09/16/2004 | 223 | $21.40 | $4,772 | 10/15/2004 | 2,000 | $16.65 | $33,300 |
| 09/16/2004 | 100 | $21.32 | $2,132 | 10/21/2004 | 2,160 | $16.25 | $35,100 |
| 09/16/2004 | 100 | $21.33 | $2,133 | 10/21/2004 | 340 | $16.25 | $5,525 |
| 09/17/2004 | 2,500 | $20.83 | $52,075 | 10/22/2004 | 2,500 | $16.50 | $41,250 |
| 09/17/2004 | 2,500 | $20.80 | $52,000 | 10/22/2004 | 1,700 | $16.65 | $28,305 |
| 09/21/2004 | 564 | $20.65 | $11,647 | 10/22/2004 | 700 | $16.70 | $11,690 |
| 09/23/2004 | 2,500 | $20.20 | $50,500 | 10/22/2004 | 100 | $16.75 | $1,675 |
| 09/24/2004 | 1,526 | $20.35 | $31,054 | 10/28/2004 | 2,500 | $16.10 | $40,250 |
| 09/24/2004 | 1,500 | $20.12 | $30,180 | 10/29/2004 | 1,375 | $15.70 | $21,588 |
| 09/24/2004 | 1,450 | $20.36 | $29,522 | 10/29/2004 | 1,025 | $15.55 | $15,939 |
| 09/24/2004 | 1,000 | $20.12 | $20,120 | 10/29/2004 | 1,000 | $15.60 | $15,600 |
| 09/24/2004 | 978 | $20.25 | $19,805 | 10/29/2004 | 1,000 | $15.59 | $15,590 |
| 09/24/2004 | 338 | $20.16 | $6,814 | 10/29/2004 | 500 | $15.58 | $7,790 |
| 09/24/2004 | 72 | $20.37 | $1,467 | 10/29/2004 | 100 | $15.63 | $1,563 |
| 09/24/2004 | 72 | $20.53 | $1,478 | 11/03/2004 | 2,500 | $15.85 | $39,625 |
| 09/29/2004 | 1,000 | $19.61 | $19,610 | 11/03/2004 | 2,500 | $15.75 | $39,375 |
| 09/30/2004 | 1,006 | $19.25 | $19,366 | 11/05/2004 | 1,700 | $16.50 | $28,050 |
| 09/30/2004 | 1,000 | $19.35 | $19,350 | 11/05/2004 | 800 | $16.30 | $13,040 |
| 09/30/2004 | 462 | $19.30 | $8,917 | 11/10/2004 | 2,000 | $16.85 | $33,700 |
| 09/30/2004 | 462 | $19.20 | $8,870 | 11/12/2004 | 1,000 | $16.85 | $16,850 |
| 10/01/2004 | 1,070 | $19.27 | $20,619 | 11/12/2004 | 1,000 | $16.74 | $16,740 |
| 10/01/2004 | 1,001 | $19.30 | $19,319 | 11/12/2004 | 601 | $16.75 | $10,067 |
| 10/01/2004 | 1,000 | $19.16 | $19,160 | 11/12/2004 | 500 | $16.75 | $8,375 |
| 10/01/2004 | 269 | $19.45 | $5,232 | 11/12/2004 | 200 | $16.77 | $3,354 |
| 10/01/2004 | 230 | $19.32 | $4,444 | 11/12/2004 | 199 | $16.75 | $3,333 |
| Totals: | | | | | 66,254 | | $1,205,184 |

29.    During the Class Period, defendant Marshall sold a total of 21,500 shares of EPIX

stock, in accordance with the following schedule, for net proceeds of $372,017:

| Date | Sold | Price | Proceeds |
|------|------|-------|----------|
| 10/04/2004 | 1,500 | $20.00 | $30,000 |
| 10/07/2004 | 1,500 | $17.65 | $26,475 |
| 10/15/2004 | 1,500 | $16.62 | $24,930 |
| 10/22/2004 | 1,500 | $16.70 | $25,050 |
| 10/29/2004 | 1,500 | $15.68 | $23,520 |
| 11/05/2004 | 1,200 | $16.65 | $19,980 |
| 11/05/2004 | 200 | $16.67 | $3,334 |
| 11/05/2004 | 100 | $16.66 | $1,666 |
| 11/12/2004 | 1,500 | $16.75 | $25,125 |
| 11/17/2004 | 1,500 | $17.05 | $25,575 |
| 11/24/2004 | 1,500 | $16.00 | $24,000 |
| 11/29/2004 | 1,500 | $17.45 | $26,175 |
| 12/10/2004 | 1,500 | $17.72 | $26,580 |
| 12/14/2004 | 1,500 | $18.05 | $27,075 |
| 12/21/2004 | 1,400 | $17.90 | $25,060 |
| 12/21/2004 | 100 | $17.91 | $1,791 |
| 12/28/2004 | 700 | $17.79 | $12,453 |
| 12/28/2004 | 400 | $17.82 | $7,128 |
| 12/28/2004 | 400 | $17.83 | $7,132 |
| 01/03/2005 | 365 | $18.15 | $6,625 |
| 01/03/2005 | 135 | $17.76 | $2,398 |
| Totals: | 21,500 | | $372,071 |

## FIRST CLAIM FOR RELIEF

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

30.    Plaintiff incorporates ¶¶1-29 by reference.

31.    During the Class Period, defendants disseminated or approved the false statements

specified above, which they knew or deliberately disregarded were misleading in that they contained

misrepresentations and failed to disclose material facts necessary in order to make the statements

made, in light of the circumstances under which they were made, not misleading.

32.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)    Employed devices, schemes, and artifices to defraud;

- 12 -

(b)    Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of EPIX publicly traded securities during the Class Period.

33.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for EPIX publicly traded securities. Plaintiff and the Class would not have purchased EPIX publicly traded securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

34.    As a direct and proximate result of these defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of EPIX publicly traded securities during the Class Period.

### SECOND CLAIM FOR RELIEF

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

35.    Plaintiff incorporates ¶¶1-34 by reference.

36.    The Individual Defendants acted as controlling persons of EPIX within the meaning of §20(a) of the 1934 Act. By reason of their positions as officers and/or directors of EPIX, and their ownership of EPIX stock, the Individual Defendants had the power and authority to cause EPIX to engage in the wrongful conduct complained of herein. EPIX controlled each of the Individual Defendants and all of its employees. By reason of such conduct, the Individual Defendants and EPIX are liable pursuant to §20(a) of the 1934 Act.

## CLASS ACTION ALLEGATIONS

37.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased EPIX publicly traded securities (the "Class") on the open market during the Class Period. Excluded from the Class are defendants.

38.    The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. EPIX had more than 23 million shares of stock outstanding, owned by hundreds if not thousands of persons.

39.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)    Whether the 1934 Act was violated by defendants;

(b)    Whether defendants omitted and/or misrepresented material facts;

(c)    Whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)    Whether defendants knew or deliberately disregarded that their statements were false and misleading;

(e)    Whether the prices of EPIX publicly traded securities were artificially inflated; and

(f)    The extent of damage sustained by Class members and the appropriate measure of damages.

40.    Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

- 14 -

41.    Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

42.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.    Declaring this action to be a proper class action pursuant to Federal Rules of Civil Procedure 23;

B.    Awarding plaintiff and the members of the Class damages, including interest;

C.    Awarding plaintiff's reasonable costs, including attorneys' fees and expenses; and

D.    Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

DATED: January 27, 2005                By His Attorneys,


Thomas G. Shapiro BBO #454680
Theodore M. Hess-Mahan BBO #557109
53 State Street
Boston, MA 02109
Telephone: 617/439-3939
617/439-0134 (fax)

- 15 -

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
200 Broadhollow Road, Suite 406
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
401 B Street, Suite 1600
San Diego, CA  92101-4297
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff

**LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS, LLP**
197 South Federal Highway, Suite 200
Boca Raton, FL 33432
(561) 750-3000
(561) 750-3364 Facsimile

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, ___H.D. Yorston___ ("Plaintiff"), declares as to the claims asserted, or to be asserted, under the federal securities laws, that:

1.      Plaintiff has reviewed the _EPIX Pharmaceuticals_ complaint and authorized its filing.

2.      Plaintiff did not purchase any common stock/securities that are the subject of this action at the direction of Plaintiff's counsel or in order to participate any private action under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

4.      The following includes all of Plaintiff's transactions during the Class Period specified in the complaint for the common stock/securities that are the subject of this action:

| SECURITY (Common Stock, Call, Put, Bonds) | TRANSACTION (Purchase, Sale) | QUANTITY | TRADE DATE | PRICE PER SHARE/SECURITY |
|---|---|---|---|---|
| EPIX Pharmaceuticals (EPIX) | PURCHASE | 1000 sh | 11-12-03 | $18.05 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Please list additional transactions on a separate sheet if necessary.

5.      Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws within the past three years, unless otherwise stated in the space below:

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _26_ day of _JANUARY_____, 2005.

_____
SIGNATURE

%zJS 44  (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
H.D. YORSTON

**DEFENDANTS**
*CLERKS OFFICE*
EPIX PHARMACEUTICALS, INC., MICHAEL D. WEBB,
PEYTON J. MARSHALL and ANDREW UPRICHARD

*FILED*
*2005 JAN 27 P 3: 37*

**(b)** County of Residence of First Listed Plaintiff    OUT OF STATE
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed
(IN U.S. PLAINTIFF CASES ONLY)
*U.S. DISTRICT COURT*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
*DISTRICT OF MASS.*

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Theodore M. Hess-Mahan          Tel: (617) 439-3939
Shapiro Haber & Urmy LLP        Fax: (617) 439-0134
53 State Street
Boston, MA 02109

Attorneys (If Known)

**05 cv 10166 PBS**

| **II. BASIS OF JURISDICTION** (Place an "X" in One Box Only) | **III. CITIZENSHIP OF PRINCIPAL PARTIES**(Place an "X" in One Box for Plaintiff (For Diversity Cases Only) and One Box for Defendant) |
|---|---|

| | | | | DEF | | DEF |
|---|---|---|---|---|---|---|
| ☐ 1  U.S. Government Plaintiff | X 3  Federal Question (U.S. Government Not a Party) | Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4  ☐ 4 |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal of Business In Another State | ☐ 5  ☐ 5 |
| | | Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6  ☐ 6 |

**IV. NATURE OF SUIT**    (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | X 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | **FEDERAL TAX SUITS** | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | | ☐ 900 Appeal of Fee |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | | ☐ 870 Taxes (U.S. Plaintiff | Determination Under |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | or Defendant) | Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS  Third Party | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. | 26 USC 7609 | State Statutes |
| | | ☐ 550 Civil Rights | Security Act | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

**V. ORIGIN**    (PLACE AN "X" IN ONE BOX ONLY)

X 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ 6 Multidistrict Litigation    ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**    (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 USC §§78j(b) and 78t(a) and 17 CFR 240.10b-5

| **VII. REQUESTED IN COMPLAINT:** | X CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** 0 | CHECK YES only if demanded in complaint: JURY DEMAND:  X Yes  ☐ No |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instructions): JUDGE | DOCKET NUMBER |
|---|---|---|

DATE  1/27/2005

SIGNATURE OF ATTORNEY OF RECORD  *Theodore M. Hess-Mahan*

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

JS 44 Reverse (Rev. 3/99)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

## Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.      **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b.) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.     **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States, are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.    **Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.     **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.      **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a) Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.     **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

VII.    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.   **Related Cases.** This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

1. Title of case (name of first party on each side only) H.D. Yorston v. Epix Pharmaceuticals, Inc., et al.

2005 JAN 27 P 3:37

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

U.S. DISTRICT COURT
DISTRICT OF MASS

___  I.     160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

_X_  II.    195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,       *Also complete AO 120 or AO 121
            740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

___  III.   110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
            315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
            380, 385, 450, 891.

___  IV.    220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
            690, 810, 861-865, 870, 871, 875, 900.

___  V.     150, 152, 153.

05 cv 10166 PBS

3. Title and number, if any, of related cases.  (See local rule 40.1(g).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.
   _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                              YES ☐        NO **X**

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

                                                              YES ☐        NO **X**

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                              YES ☐        NO **X**

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                              YES ☐        NO **X**

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                                                              YES **X**        NO ☐

   A.    If yes, in which division do all of the non-governmental parties reside?

         Eastern Division **X**      Central Division ☐        Western Division ☐

   B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental
         agencies, residing in Massachusetts reside?

         Eastern Division ☐         Central Division ☐        Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

                                                              YES ☐        NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME Theodore M. Hess-Mahan
ADDRESS Shapiro Haber & Urmy LLP, 53 State Street, Boston, MA 02109
TELEPHONE NO. (617) 439-3939

(Epix Category Form.wpd - 10/17/02)