UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| H.D. YORSTON, On Behalf of Himself and All Others Similarly Situated, | ) ) ) | No. 05-CV-10166-PBS |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| EPIX PHARMACEUTICALS, INC., et al., | ) ) ) | |
| Defendants. | ) ) ) | |
| ROBERT GREENE, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | No. 05-CV-10194-WGY |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| EPIX PHARMACEUTICALS, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

[Caption continued on following page.]

DECLARATION OF THEODORE M. HESS-MAHAN IN SUPPORT OF ALASKA
ELECTRICAL PENSION FUND'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL

JOHN C. JOHNSON JR. DEFINED BENEFIT PENSION PLAN, et al., Individually and On Behalf of All Others Similarly Situated,

          Plaintiffs,

    vs.

EPIX PHARMACEUTICALS, INC., et al.,

          Defendants.

No. 05-CV-10272-GAO

CLASS ACTION

DORAVILLE MANAGEMENT II CORP. by DONALD RAMIREZ, PRESIDENT, On Behalf of Himself and All Others Similarly Situated,

          Plaintiff,

    vs.

EPIX PHARMACEUTICALS, INC., et al.,

          Defendants.

No. 05-CV-10288-PBS

CLASS ACTION

STANLEY A. KIM, On Behalf of Himself and All Others Similarly Situated,

          Plaintiff,

    vs.

EPIX PHARMACEUTICALS, INC., et al.,

          Defendants.

No. 05-CV-10315-PBS

CLASS ACTION

[Caption continued on following page.]

| | |
|---|---|
| YALE TOLWIN, On Behalf of Himself and All Others Similarly Situated, | ) ) ) No. 05-CV-10388-PBS |
| | ) ) <u>CLASS ACTION</u> |
| Plaintiff, | ) |
| | ) |
| vs. | ) ) |
| | ) |
| EPIX PHARMACEUTICALS, INC., et al., | ) ) |
| | ) |
| Defendants. | ) ) |
| | ) |
| SANDRA V. BIESTERFELDT, et al., On Behalf of Themselves and All Persons Similarly Situated, | ) ) ) No. 05-CV-10559-PBS |
| | ) ) <u>CLASS ACTION</u> |
| Plaintiffs, | ) |
| | ) |
| vs. | ) ) |
| | ) |
| EPIX PHARMACEUTICALS, INC., et al., | ) ) |
| | ) |
| Defendants. | ) ) |
| | ) |

I, Theodore M. Hess-Mahan, hereby declare as follows:

1.    I am an attorney duly licensed to practice before all of the courts of the Commonwealth of Massachusetts. I am associated with the law firm of Shapiro Haber & Urmy LLP, counsel for Alaska Electrical Pension Fund ("Alaska Electrical") and proposed liaison counsel for the class. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.    Attached are true and correct copies of the following exhibits:

Exhibit A:    Sworn Certification of Alaska Electrical;

Exhibit B:    Chart of Alaska Electrical's Purchases and Losses;

Exhibit C:    Notice of Pendency of Class Action published on *Business Wire*, a national, business-oriented newswire service, on January 27, 2005;

Exhibit D:    Firm Resume of Lerach Coughlin Stoia Geller Rudman & Robbins LLP; and

Exhibit E:    Firm Resume of Shapiro, Haber & Urmy, LLP.

I declare under penalty of perjury under the laws of the State of Massachusetts that the foregoing is true and correct. Executed this 28th day of March, 2005, at Boston, Massachusetts.

**/s/Theodore M. Hess-Mahan**
THEODORE M. HESS-MAHAN

S:\CasesSD\Epix Pharm\Lead-Con_cap.doc

- 1 -

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

ALASKA ELECTRICAL PENSION FUND ("Plaintiff") declares:

1.     Plaintiff has reviewed a complaint and authorized its filing.

2.     Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.     Plaintiff is willing to serve as a class representative on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|----------|-------------|------|-----------------|

*See* attached Schedule A.

5.     (a)     During the three years prior to the date of this Certificate, Plaintiff has served as a lead plaintiff for a class in the following actions filed under the federal securities laws:

*In re Ultimate Electronics Sec. Litig.*, No. 03-N-0597(PAC) (D. Colo.)
*Garber v. Pharmacia Corporation, et al.*, No. 03-1519(AET) (D.N.J.)
*Corwin v. Catalina Marketing Corp., et al.*, No. 8:03CV1582-T27TB14 (M.D. Fla.)
*Ryan v. FlowServe Corporation, et al.*, No. 3:03-CV-1769-M (N.D. Tex.)
*Alaska Electrical Pension Fund v. Global Crossing, et al.*, No. CV-04-3096-PA(CTx)
*Layher v. Odyssey HealthCare, Inc., et al.*, No. 3-04-CV0344-N (N.D. Tex.)
*In re Krispy Kreme Doughnuts, Inc. Sec. Litig.*, No 1:04-CV-00416 (M.D.N.C.)

(b)     During the three years prior to the date of this Certificate, Plaintiff has served as a representative party for a class in the following actions filed under the federal securities laws:

*In re Fleming Companies Sec. Litig.*, No. 5:02-CV-178(TJW) (E.D. Tex.)
*Alaska Electrical Pension Fund v. Adecco S.A., et al.*, No. 04-CV-0129-L(LSP) (S.D. Cal.)
*Alaska Electrical Pension Fund v. Activision, Inc., et al.*, No. 04-2834 (C.D. Cal.)

(c)     Plaintiff has an application to be appointed lead plaintiff for a class currently pending in the following actions:

(d)    Plaintiff initially sought to serve as a representative party for a class in the following actions filed under the federal securities laws, but either withdrew its application or its application was denied in favor of other investors with more significant losses:

*In re The Goodyear Tire & Rubber Company Sec. Litig.*, No. 5:03-CV-2166 (N.D. Ohio)
*Thompson v. The Shaw Group, Inc., et al.*, No. 04-1685 (E.D. La.)
*Simon v. Central Freight Lines, Inc., et al.* No. W-04-CA-203 (W.D. Tex.)

6.    The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 11ᵗʰ day of MARCH , 2005.

ALASKA ELECTRICAL PENSION FUND

By: _Gregory R Hake_

Its: _ADMINISTRATOR_

- 2 -

## SCHEDULE A

## SECURITIES TRANSACTIONS

**Acquisitions**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 02/13/2004 | 3,350 | $21.54 |
| 02/13/2004 | 7,810 | $21.54 |
| 02/17/2004 | 2,530 | $22.68 |
| 02/17/2004 | 5,890 | $22.68 |
| 02/18/2004 | 2,800 | $20.62 |
| 02/18/2004 | 6,420 | $20.62 |
| 07/09/2004 | 1,000 | $20.25 |
| 07/12/2004 | 900 | $20.26 |
| 07/13/2004 | 700 | $20.70 |
| 07/14/2004 | 1,200 | $20.73 |
| 07/15/2004 | 400 | $20.74 |
| 07/16/2004 | 1,700 | $20.52 |
| 07/19/2004 | 3,000 | $20.06 |
| 07/20/2004 | 1,400 | $20.50 |
| 07/21/2004 | 1,700 | $20.26 |
| 07/22/2004 | 300 | $19.84 |

**Sales**

| Date Sold | Type/Amount of Securities Sold | Price |
|---|---|---|
| 05/28/2004 | 2,700 | $24.43 |

Movant's Purchases and Losses                                                                EPIX Pharmaceuticals

| Name | Date | Shares Purchased | Share Price | Total Cost | Date | Shares Sold | Share Price | Total Proceeds | Total Gain (Loss)* |
|---|---|---|---|---|---|---|---|---|---|
| Alaska Electrical Pension Fund | 02/13/2004 | 3,350 | $21.54 | $72,167.71 | 05/28/2004 | 2,700 | $24.43 | $65,961.00 | |
| Alaska Electrical Pension Fund | 02/13/2004 | 7,810 | $21.54 | $168,247.71 | held | 38,400 | $8.68 | $333,312.00 | |
| Alaska Electrical Pension Fund | 02/17/2004 | 2,530 | $22.68 | $57,375.85 | | | | | |
| Alaska Electrical Pension Fund | 02/17/2004 | 5,890 | $22.68 | $133,574.60 | | | | | |
| Alaska Electrical Pension Fund | 02/18/2004 | 2,800 | $20.62 | $57,744.96 | | | | | |
| Alaska Electrical Pension Fund | 02/18/2004 | 6,420 | $20.62 | $132,400.94 | | | | | |
| Alaska Electrical Pension Fund | 07/09/2004 | 1,000 | $20.25 | $20,254.30 | | | | | |
| Alaska Electrical Pension Fund | 07/12/2004 | 900 | $20.26 | $18,234.63 | | | | | |
| Alaska Electrical Pension Fund | 07/13/2004 | 700 | $20.70 | $14,491.19 | | | | | |
| Alaska Electrical Pension Fund | 07/14/2004 | 1,200 | $20.73 | $24,880.08 | | | | | |
| Alaska Electrical Pension Fund | 07/15/2004 | 400 | $20.74 | $8,297.16 | | | | | |
| Alaska Electrical Pension Fund | 07/16/2004 | 1,700 | $20.52 | $34,880.26 | | | | | |
| Alaska Electrical Pension Fund | 07/19/2004 | 3,000 | $20.06 | $60,191.40 | | | | | |
| Alaska Electrical Pension Fund | 07/20/2004 | 1,400 | $20.50 | $28,696.92 | | | | | |
| Alaska Electrical Pension Fund | 07/21/2004 | 1,700 | $20.26 | $34,441.32 | | | | | |
| Alaska Electrical Pension Fund | 07/22/2004 | 300 | $19.84 | $5,950.86 | | | | | |
| | | | | | | | | | |
| **Movant's Total** | | **41,100** | | **$871,829.88** | | **41,100** | | **$399,273.00** | **($472,556.88)** |
| | | | | | | | | | |
| | | | | | | | | | |
| *For shares held at the end of the class period, damages are calculated | | | | | | | | | |
| by multiplying the shares held by the average share price during the 90 | | | | | | | | | |
| calendar days after the end of the class period.  The price used is $8.68 | | | | | | | | | |
| as of March 24, 2005. | | | | | | | | | |

factiva.

Dow Jones & Reuters

**Lerach Coughlin Stoia Geller Rudman & Robbins LLP Files Class Action Suit against EPIX Pharmaceuticals, Inc.**
745 words
27 January 2005
16:40
Business Wire
English
(c) 2005 Business Wire. All Rights Reserved.

NEW YORK - (BUSINESS WIRE) - Jan. 27, 2005 - Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin")
( http://www.lerachlaw.com/cases/epix/ ) today announced that a class action lawsuit has been commenced in the United States
District Court for the District of Massachusetts on behalf of purchasers of EPIX Pharmaceuticals, Inc. ("EPIX") (NASDAQ:EPIX)
securities during the period between July 10, 2003 and January 14, 2005 (the "Class Period").

If you wish to serve as lead plaintiff, you must move the Court no later than 60 days from today. If you wish to discuss this action
or have any questions concerning this notice or your rights or interests, please contact plaintiff's counsel, Samuel H. Rudman or
David A. Rosenfeld of Lerach Coughlin at 800/449-4900 or 619/231-1058 or via e-mail at wsl@lerachlaw.com. If you are a member
of this class, you can view a copy of the complaint as filed or join this class action online at
http://www.lerachlaw.com/cases/epix/ . Any member of the purported class may move the Court to serve as lead plaintiff through
counsel of their choice, or may choose to do nothing and remain an absent class member.

The complaint charges EPIX and certain of its officers and directors with violations of the Securities Exchange Act of 1934. EPIX
(formerly known as EPIX Medical Inc.) is a developer of targeted contrast agents that are designed to improve the diagnostic
quality of images produced by magnetic resonance imaging ("MRI"). MRI is an imaging technology for a range of applications,
including the identification and diagnosis of a variety of medical disorders.

The complaint alleges that, by the start of the Class Period, defendants became aware of clinical quality issues with the underlying
data for their MS-325 Phase III program. MS-325 is designed to provide visual imaging of the vascular system through a type of
MRI known as magnetic resonance angiography. These issues, including the generation of unintelligible imaging scans, made
difficult, if not impossible, the proper control of their clinical test results and statistical analysis of the data and results. On
December 16, 2003, defendants announced the submission of their New Drug Application ("NDA") for MS-325. Defendants
continued to conceal the serious problems with their clinical program, specifically the poor quality of the underlying clinical data and
problems with the statistical analysis. Defendants instead made positive and encouraging remarks about their "extensive scientific
and clinical development" activities and prospects for product approval.

Then, on January 14, 2005, as alleged in the Complaint, the Company reported shocking news about the MS-325 submission.
Although defendants sought to place a positive spin on their receipt of an "approvable" action letter from the U.S. Food & Drug
Administration ("FDA") for MS-325, the news was far from positive. The FDA had determined that problems with the Phase III
clinical trials were so serious that it was impossible for them to come to a conclusion about the efficacy of MS-325. Worse, the FDA
noted problems with the underlying data itself, problems that could not be resolved simply on the basis of re-analysis of the data.
Thus, defendants delivered a serious setback to investors and, based on their news, the price of EPIX stock plunged 27%, to
$10.67, for a loss of $3.98 per share, on volume of 11 million shares.

Plaintiff seeks to recover damages on behalf of all purchasers of EPIX securities during the Class Period (the "Class"). The plaintiff is
represented by Lerach Coughlin, which has expertise in prosecuting investor class actions and extensive experience in actions
involving financial fraud.

Lerach Coughlin, a 140-lawyer firm with offices in San Diego, San Francisco, Los Angeles, New York, Boca Raton, Washington, D.C.,
Houston, Philadelphia and Seattle, is active in major litigations pending in federal and state courts throughout the United States
and has taken a leading role in many important actions on behalf of defrauded investors, consumers, and companies, as well as
victims of human rights violations. Lerach Coughlin lawyers have been responsible for more than $20 billion in aggregate
recoveries. The Lerach Coughlin Web site ( http://www.lerachlaw.com ) has more information about the firm.

Lerach Coughlin Stoia Geller Rudman & Robbins LLP William Lerach, 800-449-4900 Samuel H. Rudman David A. Rosenfeld
wsl@lerachlaw.com

Document BWR0000020050127e11r00dcm

© 2005 Dow Jones Reuters Business Interactive LLC (trading as Factiva). All rights reserved.

# LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP

**LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP** ("Lerach Coughlin") is a 150-lawyer law firm with offices in San Diego, San Francisco, Los Angeles, New York, Boca Raton, Washington, D.C., Houston, Philadelphia and Seattle (*www.lerachlaw.com*). Lerach Coughlin is actively engaged in complex litigation, emphasizing securities, consumer, insurance, healthcare, human rights, employment discrimination and antitrust class actions. Lerach Coughlin's unparalleled experience and capabilities in these fields are based upon the talents of its attorneys who have successfully prosecuted thousands of class action lawsuits. As a result, Lerach Coughlin attorneys have been responsible for recoveries of more than $25 billion.

This successful track record stems from our experienced attorneys, including many who left partnerships at other firms or came to Lerach Coughlin from federal, state and local law enforcement and regulatory agencies, including dozens of former federal prosecutors. Lerach Coughlin also includes more than 25 former federal (circuit and district) and state judicial clerks.

Lerach Coughlin currently represents more institutional investors in securities and corporate litigation – public and multi-employer funds – than any other firm in the United States.

**William S. Lerach** is widely recognized as one of the leading securities lawyers in the United States. Lerach founded the West Coast operations of Lerach Coughlin's predecessor firm– Milberg Weiss – almost 30 years ago. He has prosecuted hundreds of securities class and stockholder derivative actions, resulting in recoveries of billions of dollars. Lerach and the firm are involved in many of the largest and highest-profile securities suits in recent years, including *Enron*, *Dynegy*, *AOL-TimeWarner*, and *WorldCom*.

**Patrick J. Coughlin** has been lead counsel in several major securities matters, including *In re Apple Computer Securities Litigation*, where he obtained a $100 million verdict. Prior to joining Lerach Coughlin, Coughlin was a federal prosecutor in Washington, D.C. and San Diego handling complex white collar fraud matters. He helped try one of the largest criminal RICO cases ever prosecuted by the United States, *United States v. Brown*, as well as an infamous oil fraud scheme resulting in a complex murder-for-hire trial, *United States v. Boeckman*. Coughlin now heads up the prosecution of the high profile *HealthSouth* and *Qwest* cases. Coughlin has handled and resolved a number of large securities cases involving such companies as 3Com, Boeing, IDB Communications Group, Unocal, Sybase, Connor, Media Vision, ADAC, Sunrise Medical, Valence, Sierra Tucson, and Merisel. In addition, Coughlin spearheaded actions against the tobacco industry resulting in the phase-out of the Joe Camel Campaign and a $12.5 billion recovery to the Cities and Counties of California – unique in the nation.

**John J. Stoia, Jr.** has prosecuted numerous nationwide complex securities class actions, including *In re American Continental Corp./Lincoln Savings & Loan Sec. Litig.*, MDL 834 (D. Ariz.), which arose out of the collapse of Lincoln Savings & Loan and Charles Keating's empire. Stoia was a major part of the plaintiffs' trial team which resulted in verdicts against Keating and his co-defendants in excess of $3 billion and recoveries of over $240 million. Stoia has been involved in over 40 nationwide class actions brought by policyholders against U.S. and Canadian life insurance companies seeking redress for deceptive sales practices during the 1980s and 1990s, including, among others, Prudential, New York Life, Transamerica

Life Insurance Company, General American Life Insurance Company, Manufacturer's Life, Metropolitan Life, American General, US Life, Allianz, Principal Life and Pacific Life Insurance Company. Because of Stoia's efforts, victimized policyholders have recovered over $7 billion. Stoia also successfully litigated numerous cases brought against life insurance companies for racial discrimination involving the sale of small value or "industrial life" insurance policies during the 20th century, including serving as lead counsel in *McNeil v. American General Life Insurance and Accident Company*, the first major settlement involving discrimination claims ($234 million recovery). Stoia has since resolved other race-based insurance cases, including *Brown v. United Life Insurance Company*, *Morris v. Life Insurance Company of Georgia* and *Thompson v. Metropolitan Life*. In late summer 2004, Stoia filed the first complaint alleging kickbacks and rigged bidding in the insurance industry, and was hired by California Insurance Commissioner John Garamendi to represent the citizens of California in suits alleging these practices.

**Paul J. Geller** has served as Lead or Co-Lead counsel in a majority of the securities class actions that have been filed in the southeastern United States in the past several years, including cases against *Hamilton Bancorp* ($ 8.5 million); *Prison Realty Trust*; total combined recovery of over $120 million); *Intermedia Corporation* ($38 million). Mr. Geller is currently one of the Court-appointed Lead Counsel in cases involving the alleged manipulation of the asset value of some of the nations largest mutual funds, including *Hicks v. Morgan Stanley & Co.*, Case No. 01 Civ. 10071 (S.D.N.Y.); *Abrams v. Van Kampen Funds, Inc.*, Case No. 01 C 7538 (N.D. Ill.) and *In Re Eaton Vance Securities Litigation*, Case No. C.A. No. 01-10911 (D. Mass.).

Mr. Geller has also successfully represented consumers in class-action litigation. He was personal counsel to the lead plaintiff in *Stoddard v. Advanta*, a case that challenged the adequacies of interest rate disclosures by one of the nation's largest credit card companies ($11 million settlement) and was personal counsel to one of the lead plaintiffs in the American Family Publishers sweepstakes litigation, which alleged that the defendant misled consumers into thinking they would win a lottery if they purchased magazine subscriptions ($38 million settlement).

**Samuel H. Rudman** served in the Enforcement Division of the United States Securities & Exchange Commission in its New York Regional Office as a staff attorney, where he was responsible for numerous investigations and prosecutions of violations of the federal securities laws. Thereafter, Mr. Rudman joined one of the largest corporate law firms in the country, where he represented public companies in the defense of securities class actions and also handled several white collar criminal defense matters.

In 1995, Mr. Rudman joined Milberg Weiss, where he was one of the youngest lawyers ever to be made a partner at the firm and was responsible for the investigation and initiation of securities and shareholder class actions. In addition, Mr. Rudman developed an expertise in the area of lead plaintiff jurisprudence and has been responsible for numerous reported decisions in that area of securities law.

Mr. Rudman continues to focus his practice in the area of investigating and initiating securities and shareholder class actions and also devotes a considerable amount of time to representing clients in ongoing securities litigation.

**Darren J. Robbins** has extensive experience in federal and state securities litigation, serving as lead counsel in the *In re Dollar General Securities Litigation*, *In re Prison Realty Securities Litigation*, and *In re Hanover Compressor Securities Litigation*. Robbins currently represents numerous pension funds in state and federal courts across the country and specializes in the structuring of corporate governance enhancements in connection with the resolution of shareholder class and derivative litigations. Robbins was recently recognized as *California Lawyer* Attorney of the Year for 2003 as a result of his participation as lead counsel in *Hanover Compressor*, where plaintiffs recovered approximately $85 million and obtained numerous groundbreaking corporate governance changes, including direct shareholder nomination of Board members and the mandatory rotation of the company's outside audit firm.

## PRACTICE AREAS AND CURRENT CASES

### Securities

As recent corporate scandals clearly demonstrate, it has become all-too-common for companies and their executives to manipulate the market price of their securities by misleading the public about the company's financial condition or prospects for the future. This misleading information has the effect of artificially inflating the price of the company's securities above their true values. When the underlying truth is eventually revealed, the prices of these securities plummet, harming those innocent investors who relied upon the company's misrepresentations.

Lerach Coughlin is the leader in the fight to provide investors with relief from corporate securities fraud. Lerach Coughlin utilizes a wide range of federal and state laws to provide investors with remedies, either by bringing a class action on behalf of all affected investors or, where appropriate, by bringing individual cases on behalf of large institutional investors.

The firm's reputation for excellence has been repeatedly noted by courts and has resulted in the appointment of Lerach Coughlin attorneys to lead roles in hundreds of complex class action securities and other cases. In the securities area alone, Lerach Coughlin attorneys have been responsible for a number of outstanding recoveries on behalf of investors which, in the aggregate, exceed $25 billion. Currently, Lerach Coughlin is lead or named counsel in approximately 500 securities class action or large institutional investor cases including:

- Enron Securities class action
- AOL/Time Warner individual institutional investor private actions
- Cisco Systems Securities class action
- Coke Securities class action
- Oracle Securities class action
- WorldCom Bond individual institutional investor private actions
- HealthSouth Securities class action

One of the reasons for Lerach Coughlin's dominance stems from Lerach Coughlin's unparalleled dedication of resources towards investor recovery. For example, Lerach Coughlin has approximately 125 attorneys dedicated to investigating and prosecuting securities fraud class action and derivative cases on

behalf of hundreds of institutional investors.  In addition to ample human resources, Lerach Coughlin is also well capitalized to meet the demands of prosecuting complex cases.

Lerach Coughlin's securities department includes dozens of former federal and state prosecutors and trial attorneys.  Lerach Coughlin's securities practice is also strengthened by the existence of a strong Appellate Department – whose collective work has resulted in numerous legal precedents.  Lerach Coughlin's securities department also utilizes an extensive group of in-house experts, economic and damage analysts, investigators, and forensic accountants to aid in the prosecution of complex securities issues.

While obtaining recoveries for our clients is our primary focus, Lerach Coughlin attorneys have also been at the forefront of securities fraud **prevention**.  Lerach Coughlin prevention efforts are focused on creating important changes in corporate governance either as part of the global settlements of derivative and class cases or through court orders.  Recent cases in which such changes were made include: *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Hanover Compressor Co.*, No. H-02-0410 (S.D. Tex.) (groundbreaking corporate governance changes obtained include: direct shareholder nomination of two directors; mandatory rotation of the outside audit firm; two-thirds of the board required to be independent; audit and other key committees to be filled only by independent directors; creation and appointment of lead independent director with authority to set up board meetings); *In re Sprint Shareholder Litigation*, No. 00-CV-230077 (Circuit Ct. Jackson County, Mo.) (in connection with the settlement of a derivative action involving Sprint Corporation, the company adopted over 60 new corporate governance provisions which, among other things, established a truly independent Board of Directors and narrowly defines "independence" to eliminate cronyism between the board and top executives; required outside board directors to meet at least twice a year without management present; created an independent director who will hold the authority to set the agenda, a power previously reserved for the CEO; and imposed new rules to prevent directors and officers from vesting their stock on an accelerated basis); *Teachers' Retirement System of Louisiana v. Occidental Petroleum Corp.*, CV No. BC185009 (Cal. Super. Ct. 1998) (as part of the settlement, corporate governance changes were made to the composition of the company's Board of Directors, the company's Nominating Committee, Compensation Committee and Audit Committee), and *Barry v. E*Trade Group, Inc.*, No. CIV419804 (Cal. Super. Ct., San Mateo County) (in connection with settlement of derivative suit, excessive compensation of CEO eliminated (reduced salary from $800,000 to zero; bonuses reduced and to be repaid if company restates earnings; reduction of stock option grant and elimination of future stock option grants) and important governance enhancements obtained, including the appointment of a new unaffiliated outside director as chair of board's compensation committee).  Through these efforts, Lerach Coughlin has been able to create substantial shareholder guarantees to prevent future securities fraud.

The firm works exclusively with noted corporate governance expert Robert Monks and his firm, LENS Governance Advisors, to shape corporate governance remedies for the benefit of investors.

**Insurance**

Lerach Coughlin stands at the forefront in protecting the rights of defrauded individuals in the insurance and healthcare industries. Lerach Coughlin is focused on stopping fraudulent and improper sales practices and recouping losses for victimized policyowners.

Lerach Coughlin attorneys have spearheaded dozens of cases against the life insurance industry on behalf of policyowners with permanent life insurance policies (including universal life, whole life, and interest-sensitive whole life policies) and unfair and deceptive sales practices during the 1980s and 1990s. These cases are based upon insurance companies misrepresenting how policies will perform and whether premiums will "vanish." Purchasers were victims of a "replacement" or "churning" sales scheme where they were convinced to use loans, partial surrenders or withdrawals of cash values from an existing permanent life insurance policy to purchase a new, less-valuable policy. Our lawyers are responsible for such groundbreaking decisions as *In re: The Prudential Insurance Company of America Sales Practices Litigation*, 962 F. Supp. 450 (D. N.J. 1997), *In re: Great Southern Life Insurance Company Sales Practices Litigation*, 192 F.R.D. 212 (N.D. Tex. 2000), and *Massachusetts Mutual Life Insurance Company v. The Superior Court of San Diego County*, 97 Cal. App. 4th 1282 (4th Dist. 2002). To date, Lerach Coughlin attorneys have recouped over $7 billion on behalf of victimized policyholders against the world's largest insurance companies, including Metropolitan Life, Prudential, Manulife, Principal Mutual, Pacific Life, Transamerica, Allianz, and many others.

Lerach Coughlin attorneys have been at the forefront of discrimination cases against life insurance companies for their alleged practice of intentionally charging African-Americans and other minorities more for life insurance. These lawsuits relate to the sale and administration of low face-amount life insurance policies commonly known as "industrial," "burial," "home service," or "debit" policies. African-Americans and other minorities were allegedly charged more for the same level of life insurance or were offered lower policy benefits than provided to Caucasians. Our attorneys have recovered over $400 million for African-American and other minority class members as redress for the civil rights abuses they were subjected to, including such landmark settlements as *McNeil v. American Gen. Life & Acc. Ins. Co.*, No. 3-99-1157 (M.D. Tenn. 2000), *Thompson v. Metropolitan Life Insurance Company*, 216 F.R.D. 55 (S.D. N.Y. 2003), and *Williams v. United Insurance Company of America*, Civil Action No. 01-920 (Jefferson Cty. Ala. 2002). Our lawyers are also responsible for important decisions in this area such as *In The Matter of: Monumental Life Insurance Company, Industrial Life Insurance Litigation*, 343 F.3d 331 (5th Cir. 2003), *Moore v. Liberty National Insurance Company*, 267 F.3d 1209 (11th Cir. 2001), and *Carnegie v. Mutual Savings Life Insurance Company*, No. CV-99-S-3292 NE, 2002 U.S. Dist. LEXIS 21396 (N.D. Ala. 2002).

Lerach Coughlin attorneys are actively involved in litigation against major, nationwide auto insurers for alleged abuses in their claims-handling procedures. These cases challenge an alleged practice of replacing certain damaged automobile crash parts with cheaper, allegedly inferior, non-original equipment manufacturer parts, known as imitation parts.

California Insurance Commissioner John Garamendi recently retained Lerach Coughlin to represent the citizens of the state of California to assist in breaking up a long-standing pattern of illicit deals and commissions paid by insurance companies to companies like Universal Life Resources ("ULR") and Marsh,

who advanced the insurance companies' products while pretending to perform objective brokerage services for employers who hired them to assemble and place employee benefits. ULR immediately entered into a consent decree, agreeing to stop the unlawful practices, fully disclose its income and commission arrangements, and to fully assist in the state of California's investigation into these wide-spread practices.

Given their familiarity with the fraudulent and unfair business practices employed in the insurance industry, our attorneys are experts at rooting out facially neutral, yet discriminatory business behaviors. Our redlining cases seek to curb abuses in the underwriting practices used in determining whether to issue and at what price to charge minorities for homeowner and automobile insurance policies.

**Antitrust**

Lerach Coughlin's antitrust practice focuses on representing plaintiffs in complex litigation, such as small businesses and individuals who have been the victims of price-fixing, unfair trade practices, or other anticompetitive conduct. The firm has taken a leading role in many of the largest federal price-fixing and price discrimination cases throughout the United States.

For example, Lerach Coughlin attorneys played a lead role in *In re NASDAQ Market-Makers Antitrust Litigation*, MDL 1023 (S.D.N.Y.), serving as court-appointed co-lead counsel for a class of investors. The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry-wide conspiracy in one of the largest and most important antitrust cases in recent history. After three-and-one-half years of intense litigation, the case was settled for a total of $1.027 billion, the largest antitrust settlement ever. An excerpt from the court's opinion reads:

> Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties to this action achieved.

*See In re NASDAQ Market-Makers Antitrust Litig.*, MDL 1023, 187 F.R.D. 465, 474 (S.D.N.Y. 1998).

One of the most significant opinions in the case was Judge Sweet's decision to certify the class of millions of investors over the strenuous objections of defendants. *In re NASDAQ Market-Makers Antitrust Litigation*, 169 F.R.D. 493 (S.D.N.Y. 1996). Oral argument on behalf of plaintiffs on the class certification motion was presented by Leonard B. Simon, Of Counsel to Lerach Coughlin.

Other cases include:

- *Hall v. NCAA* (Restricted Earnings Coach Antitrust Litigation), No. 94-2392-KHV (D. Kan.). Lerach Coughlin attorneys served as lead counsel and lead trial counsel for one of three classes of coaches who alleged that the NCAA (National Collegiate Athletic Association) illegally fixed their compensation by instituting the "restricted earnings coach" rule. On

May 4, 1998, the jury returned verdicts in favor of the three classes for more than $67 million.  Trial counsel included Lerach Coughlin attorney Bonny E. Sweeney.

- *In re Disposable Contact Lens Antitrust Litigation*, MDL 1030 (M.D. Fl.).  Lerach Coughlin attorneys served as co-lead counsel for a class of contact lens wearers alleging that the principal manufacturers of disposable contact lenses conspired with the leadership of the American Optometric Association and other eye care practitioners to boycott alternative channels of contact lens distribution, including pharmacies and mail order suppliers.  The case settled for $89 million five weeks into a jury trial, shortly after plaintiffs' trial counsel, including Lerach Coughlin attorney Christopher M. Burke, defeated defendants' motion for a directed verdict.

- *Microsoft I-V Cases*, J.C.C.P. No. 4106 (San Francisco Super. Ct.).  Lerach Coughlin attorneys served on the executive committee in these consolidated cases, in which California indirect purchasers challenged Microsoft's illegal exercise of monopoly power in the operating system, word processing and spreadsheet markets.  In a settlement recently approved by the court, class counsel obtained an unprecedented $1.1 billion worth of relief for the business and consumer class members who purchased the Microsoft products.

Current cases include:

- *In re Currency Conversion Antitrust Litigation*, MDL 1409 (S.D.N.Y.).  Lerach Coughlin attorneys are co-lead counsel (with one other firm) in this multi-district litigation, in which a class of general purpose VISA and MasterCard cardholders allege that VISA and MasterCard, and certain leading member banks of Visa and MasterCard, conspired to fix and maintain the foreign currency conversion fee charged to U.S. cardholders.  Plaintiffs also allege that defendants failed to adequately disclose the fee in violation of federal law.  Discovery continues, and the plaintiffs' motion for class certification is fully briefed.

- *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc.* (the *Carbon Fiber Antitrust Litigation*), No. CV-99-7796 (C.D. Cal.).  Lerach Coughlin attorneys are co-lead counsel (with one other firm) in this consolidated class action, in which a class of purchasers alleges that the major producers of carbon fiber fixed the price of carbon fiber from 1993 to 1999.  The trial court denied defendants' motions to dismiss and granted plaintiffs' motion to certify the class, and the Ninth Circuit Court of Appeals has rejected defendants' challenge to the court's class certification order.  Discovery is continuing.

- *In re Carbon Black Antitrust Litigation*, MDL 1543 (D. Mass.).  Lerach Coughlin attorneys serve as co-lead counsel for a class of businesses that allege that the major producers of carbon black unlawfully conspired to fix the price of carbon black, which is used in the manufacture of tires, rubber and plastic products, inks, and other products, from 1999 through the present.  The parties are currently engaged in discovery.

- *In re DRAM Antitrust Litigation*, MDL 1486 (N.D. Ca.). Lerach Coughlin attorneys serve on the executive committee in this multi-district class action, in which a class of purchasers of high density low-cost-per-bit, random access memory chips, known as DRAM, allege that the leading manufactures of semiconductor products fixed the price of DRAM from the fall of 2001 through at least the end of June 2002. Lerach Coughlin attorneys took the lead in briefing and successfully opposing defendant's motion to dismiss, which was denied. The parties are engaged in discovery.

- *In re Medical Waste Services Antitrust Litigation*, MDL 1546 (D. Utah). Lerach Coughlin attorneys are co-lead counsel in this multi-district antitrust class action litigation involving two separate cases. In the first (the *Tri-State Class Action*), plaintiffs allege defendants illegally conspired to allocate customers and territories in the market for the collection, transportation and disposal of medical waste in three mountain states. In the second case (the *Stoll Action*), the firm is co-lead counsel for a California class of plaintiffs who allege that Stericycle, the largest provider of medical waste collection and disposal services in the United States, unlawfully monopolized the market for these services in California. Discovery is ongoing, and plaintiffs expect to move for certification of the class in July 2004.

- *In re Microsoft Antitrust Litigation*. Lerach Coughlin attorneys have served as lead counsel, co-lead counsel and on the executive committees of more than 15 indirect purchaser actions against Microsoft brought in both state and federal courts alleging Microsoft illegally exercised its monopoly power in the operating system, word processing and spreadsheet markets. Plaintiffs successfully defeated motions to dismiss, challenges to class certification and motions for summary judgment in many state cases. Plaintiffs also engaged in a massive discovery effort in order to defeat Microsoft's challenges regarding its unlawful acts, and to prepare for trials in California and Minnesota, both of which ultimately resolved before the cases reached a jury. In many states, the parties are currently in the process of finalizing settlements and/or achieving court approval in settlements which provide an unprecedented result for indirect purchaser class members.

- *The California Wholesale Electricity Antitrust Litigation*, 02-CV-990 (S.D. Cal.). Lerach Coughlin attorneys are co-lead counsel (with one other firm) in this litigation, which alleges buyers and sellers in markets operated by the California Power Exchange ("PX") and California ISO ("ISO") manipulated markets during the period May 1, 2000 to June 19, 2001. The culmination of several years of litigation, review of company documents and investigation have led to the determination of widespread market manipulation of the California and Western energy markets during 2000 and 2001. The findings show the trading strategies and withholding of power, employed by Enron and other companies, were undertaken in an effort to manipulate the California energy market which led to increased energy prices for consumers. Plaintiffs recently reached a landmark settlement in the litigation with the Williams Companies worth an estimated $400 million dollars. The case is currently before the Ninth Circuit Court of Appeals awaiting oral argument on several issues.

**Consumer**

The consumer attorneys at Lerach Coughlin represent plaintiffs nationwide in a variety of complex representative and consumer class actions. Lerach Coughlin attorneys have taken a leading role in many of the largest state and federal consumer fraud, human rights, environmental and public health, and tobacco-related cases throughout the United States. Lerach Coughlin is also actively involved in numerous cases relating to the financial services industry, pursuing claims on behalf of individuals victimized by abusive mortgage lending practices, including violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §2601 *et seq.*, market timing violations in connection with the sale of mutual fund and variable annuities, and deceptive consumer-credit lending practices in violation of the Truth In Lending Act, 15 U.S.C. §1601 *et seq.*

Current cases include:

- *Cellphone Termination Fee Cases.* Lerach Coughlin attorneys are co-lead counsel in a lawsuit against the six major wireless telephone service providers in California. The plaintiffs allege that the early termination fee provisions in defendants' contracts are illegal penalties under California law, designed to unfairly tether consumers to long-term contracts and prevent customers from changing their wireless service providers.

- *Tenet Healthcare Cases.* Lerach Coughlin attorneys are co-lead counsel in a class action alleging a fraudulent scheme of corporate misconduct, resulting in the overcharging of uninsured patients by the Tenet chain of hospitals. Lerach Coughlin attorneys represent uninsured patients of Tenet hospitals nationwide who were overcharged by Tenet's admittedly "aggressive pricing strategy," that resulted in price gouging of the uninsured.

- *Ocwen Financial Corporation.* Lerach Coughlin attorneys represent plaintiffs alleging unfair business practices in Ocwen's servicing of residential mortgage loans. Plaintiffs claim that Ocwen has engaged in a scheme to charge vulnerable borrowers unwarranted and unlawful fees, including late penalty fees, fees associated with hazard insurance, attorneys' fees and fees associated with the unnecessary and wrongful preparation of default and foreclosure proceedings.

- *AT&T Wireless Coverage Maps.* Lerach Coughlin attorneys represent consumers in a Los Angeles action that alleges false and misleading advertising by AT&T Wireless. Plaintiffs claim that AT&T Wireless's coverage maps are deceptive because they fail to disclose that defendants' service area is riddled with coverage gaps and holes. Plaintiffs seek injunctive relief from the court requiring AT&T Wireless to publish accurate coverage maps indicating where consumers are actually able to place wireless telephone calls throughout the Los Angeles region.

Prior cases include:

- *Schwartz v. Visa*. After years of litigation and a six month trial, Lerach Coughlin attorneys won one of the largest consumer protection verdicts ever awarded in the United States. In *Schwartz v. Visa Int'l, et al.*, No. 822404-4 (Cal. Super. Ct., Alameda County), California consumers sued Visa and MasterCard for intentionally imposing and concealing a fee from their cardholders. The court ordered Visa and MasterCard to return $800,000,000 in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest. In addition, the court ordered full disclosure of the hidden fee.

- *In re Lifescan, Inc. Consumer Litigation*, No. CV-98-20321-JF (N.D. Cal.). Lerach Coughlin attorneys were responsible for achieving a $45 million all-cash settlement with Johnson & Johnson and its wholly-owned subsidiary, Lifescan, Inc., over claims that Lifescan deceptively marketed and sold a defective blood-glucose monitoring system for diabetics. The Lifescan settlement was noted by the district court for the Northern District of California as providing "exceptional results" for members of the class.

**Human Rights, Labor Practices and Public Policy**

Lerach Coughlin attorneys have a long tradition of representing the victims of wrongdoing, ranging from unfair labor practices to violation of human rights. These include:

- ***Does I, et al. v. The Gap, Inc., et al.***, No. 01 0031 (D. Northern Mariana Islands). In this ground-breaking case, Lerach Coughlin attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top U.S. retailers such as The Gap, Target and J.C. Penney. In the first action of its kind, Lerach Coughlin attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan. This case was a companion to two other actions: ***Does I, et al. v. Advance Textile Corp., et al.***, No. 99 0002 (D. Northern Mariana Islands) – which alleged overtime violations by the garment factories under the Fair Labor Standards Act – and ***UNITE, et al. v. The Gap, Inc., et al.***, No. 300474 (Cal. Super. Ct., San Francisco County), which alleged violations of California's Unfair Practices Law by the U.S. retailers. These actions resulted in a settlement of approximately $20 million that included a comprehensive Monitoring Program to address past violations by the factories and prevent future ones. The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for Public Justice in recognition of the team's efforts at bringing about the precedent-setting settlement of the actions.

- ***Kasky v. Nike, Inc.***, 27 Cal. 4th 939 (2002), *cert. dismissed*, 539 U.S. 654 (2003). The California Supreme Court upheld claims that an apparel manufacturer misled the public regarding its exploitative labor practices, thereby violating California statutes prohibiting unfair competition and false advertising. The court rejected defense contentions that any misconduct was protected by the First Amendment. The court found the heightened

constitutional protection afforded to noncommercial speech was inappropriate in such a circumstance.

- ***The Cintas Litigation***. Brought against one of the nation's largest commercial laundries for violations of the Fair Labor Standards Act for misclassifying truck drivers as salesmen to avoid payment of overtime.

Shareholder derivative litigation brought by Lerach Coughlin also sometimes involves anti-union activities, including:

- ***Southern Pacific/Overnite***.  A shareholder action stemming from several hundred million dollars in loss of value in the Company due to systematic violations by Overnite of U.S. labor laws.

- ***Massey Energy***.  A shareholder action against an anti-union employer for flagrant violations of environmental laws resulting in multi-million dollar penalties.

- ***Crown Petroleum***.  A shareholder action against a Texas-based oil company for self-dealing and breach of fiduciary duty while also involved in a union lockout.

Lerach Coughlin attorneys also represented over 2,300 Taco Bell workers who were denied thousands of hours of overtime pay because, among other reasons, they were improperly classified as overtime exempt employees.  Currently, Lerach Coughlin attorneys represent CINTAS workers with similar claims of violation of federal and state labor laws.

**Environment & Public Health**

Lerach Coughlin attorneys have also represented plaintiffs in class actions related to environmental law. Lerach Coughlin attorneys represented, on a *pro bono* basis, the Sierra Club and the National Economic Development and Law Center ("NEDLC") as *amici curiae* in a federal suit designed to uphold the state and federal use of project labor agreements ("PLAs").  The suit represented a legal challenge to President Bush's Executive Order 13202, which prohibits the use of project labor agreements on construction projects receiving federal funds.  Our Amici Brief in the matter outlined and stressed the significant environmental and socio-economic benefits associated with the use of PLAs on large scale construction projects.

Attorneys with Lerach Coughlin have been involved in several other significant environmental cases including:

- ***Public Citizen v. US DOT.***   Lerach Coughlin represented a coalition of labor, environmental, industry and public health organizations including Public Citizen, The International Brotherhood of Teamsters, California AFL-CIO and California Trucking Industry, in a challenge to a decision by the Bush Administration to lift a congressionally-imposed "moratorium" on cross border trucking from Mexico on the basis that such trucks do not conform to emission controls under the Clean Air Act and, further, that the Administration did not first complete a comprehensive environmental impact analysis as

required by the National Environmental Policy Act. The suit was dismissed at the Supreme Court, the Court holding that because the DOT lacked discretion to prevent cross-border trucking, an environmental assessment was not required.

- ***Sierra Club v. AK Steel***. Brought on behalf of the Sierra Club for massive emissions of air and water pollution by a steel mill, including homes of workers living in the adjacent communities, in violation of the Federal Clean Air Act, RCRA and the Clean Water Act.

- ***MTBE Litigation***. Brought on behalf of various water districts for befouling public drinking water with MTBE, a gasoline additive linked to cancer.

- ***Exxon Valdez***. Brought on behalf of fisherman and of Alaska residents for billions of dollars in damages resulting from the greatest oil spill in U.S. history.

- ***Avilla Beach***. A citizens suit against UNOCAL for leakage from the oil company pipeline so severe it literally destroyed the town of Avilla Beach, California.

Federal laws such as the Clean Water Act, the Clean Air Act, the Resource Conservation and Recovery Act, and state laws such as California Proposition 65, exist to protect the environment and the public from abuses by corporate and government organizations. Companies can be found liable for negligence, trespass or intentional environmental damage and be forced to pay for reparations and to come into compliance with existing laws.

Prominent cases litigated by Lerach Coughlin attorneys include representing more than 4,000 individuals suing for personal injury and property damage related to the Stringfellow Dump Site in Southern California, participation in the Exxon Valdez oil spill litigation, and the toxic spill arising from a Southern Pacific train derailment near Dunsmuir, California.

**The Fight Against Big Tobacco**

Lerach Coughlin attorneys have led the fight against Big Tobacco since 1991. As an example, Lerach Coughlin attorneys filed the case that helped get rid of Joe Camel representing various public and private plaintiffs, including the State of Arkansas; the general public in California; the cities of San Francisco, Los Angeles, and Birmingham; 14 counties in California; and the working men and women of this country in the Union Pension and Welfare Fund cases that have been filed in 40 states. In 1992, Lerach Coughlin attorneys filed the first case in the country that alleged a conspiracy by the Big Tobacco companies.

**Pro Bono**

Lerach Coughlin attorneys have a long history of engaging in *pro bono* cases and have been recently recognized for their demonstrated commitment to providing *pro bono* services to the poor and disenfranchised. In 2003, Lerach Coughlin attorneys Eric Isaacson, Bonny Sweeney, and Amber Eck (from the San Diego office of the then Milberg Weiss) were nominated for the prestigious 2003 California State Bar President's *Pro Bono* Law Firm of the Year award, based in large part on their efforts with the ACLU in *Sanchez v. County of San Diego*. The San Diego office received a commendation from the state bar president

for its "dedication to the provision of *pro bono* legal services to the poor and for the significant contribution [the firm] made to extending legal services to underserved communities." In recommending the firm for the award, Carl Poirot, of the San Diego Volunteer Lawyer Program, praised the firm for its "extraordinary efforts" in the case, stating that the "legal team generously gave of their time in the vigorous representation of a class of individuals who clearly do not have the financial resources nor wherewithal to retain legal counsel. The County's questionable conduct would have gone unchallenged but for the intervention" of the legal team.

*Sanchez* is a class action brought on behalf of welfare applicants against the County of San Diego seeking an injunction requiring the County to discontinue its "Project 100%" program. Under Project 100%, investigators from the San Diego D.A.'s office, Public Assistance Fraud Division, enter and search the home of every person who applies for welfare benefits, even though there is no suspicion of fraud or wrongdoing – and despite the fact that every individual is required to undergo an extensive application process with numerous verifications. Plaintiffs contend that these searches by law-enforcement officers, performed without cause or suspicion, violate state and federal statutes and the Fourth Amendment of the U.S. Constitution.

The court certified a class of all present and future applicants for CalWORKs cash aid and food stamps in San Diego County who are subject to a search of their home under Project 100%. Defendants have since admitted that the use of home visits to determine eligibility for food stamps violates California state regulations and has agreed to settle these claims. Although defendants were granted summary judgment on the remaining claims, plaintiffs are currently in the process of filing an appeal with the Ninth Circuit Court of Appeals and are optimistic about the prospects for success there. Due to the substantial number of hours dedicated to this important case, lead attorneys Eric Isaacson, Bonny Sweeney and Amber Eck were awarded the SDVLP Distinguished Service Award.

This San Diego office was also named as one of three finalists for the 1999 Pro Bono Law Firm of the Year award by the SDVLP, based in part for its work on the *Badua v. City of San Diego* case. *Badua* was a case brought on behalf of Jenny Badua against the City of San Diego. After working for the City for 15 years, she was placed on Long Term Disability ("LTD") leave due to severe manic depression. Under the City's LTD Plan, which is similar to many other LTD plans, individuals with physical disabilities receive benefits until age 65 or longer, but individuals with mental disabilities receive benefits for only two years. We alleged that this differential treatment of persons with mental disabilities violated the Americans with Disabilities Act and federal and state disability nondiscrimination statutes. Unfortunately, after three years of working on the case, the Ninth Circuit Court of Appeals issued an opinion upholding the constitutionality of an LTD plan nearly identical to the one at issue, and plaintiffs settled the case for a nominal award to the plaintiff. However, the Disability Rights Education & Defense Fund and the ACLU commended our efforts and described this as one of the most important issues of the year.

Our co-counsel, Linda Kilb of the DREDF, said in recommending us for the award: "The talent, effort and commitment of [Lerach Coughlin attorneys have] been invaluable, and it is difficult to imagine how the case could proceed without them. DREDF is enormously appreciative of [Lerach Coughlin attorneys'] continuing role in this case, and of SDVLP's assistance in finding us co-counsel of this caliber."

## JUDICIAL COMMENDATIONS

Lerach Coughlin attorneys, working under the former Milberg Weiss mantel, have been commended by countless judges all over the country for the quality of representation in class action lawsuits.

When Judge Harmon appointed Lerach Coughlin attorneys as lead counsel for Enron securities purchasers, she commented:

> In reviewing the extensive briefing submitted regarding the Lead Plaintiff/Lead Counsel selection, the Court has found that the submissions of [Lerach Coughlin attorneys] stand out in the breadth and depth of its research and insight. Furthermore, Mr. Lerach has justifiably "beat his own drum" in demonstrating the role his firm has played thus far in zealously prosecuting this litigation on Plaintiffs' behalf.

*See In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 458 (S.D. Tex. 2002). More recently, in *Stanley v. Safeskin Corp.*, No. 99 CV 454-BTM (S.D. Cal. May 25, 2004), where Lerach Coughlin obtained $55 million for the class of investors, Judge Moskowitz stated:

> I said this once before, and I'll say it again. I thought the way that your firm handled this case was outstanding. This was not an easy case. It was a complicated case, and every step of the way, I thought they did a very professional job.

In a November 9, 1998 order approving settlements totaling over $1.027 billion, the court in *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998), commented about Lerach Coughlin attorneys including Len Simon that:

> Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties in this action achieved.

In *Transamerica*, Judge Danielson made it a point to comment on the professionalism of Lerach Coughlin attorneys:

> It would be hard to imagine what question I could come up with that I haven't already seen the information that I needed in the submissions that have been made to this Court. I can't remember anything so thoroughly and professionally handled in the 20-some odd years that I've been involved in the law. It is interesting to see law practiced honorably. And I think all of the lawyers who have involved themselves in this case can be very proud of their profession.

*See Gordon v. Transamerica Occidental Life Ins. Co.,* Hearing Transcript dated June 26, 1997, at 39:3-12.

Similarly, in *Prudential*, in approving the settlement of a nationwide class action against a life insurer for deceptive sales practices, Judge Wolin observed:

[T]he results achieved by plaintiffs' counsel in this case in the face of significant legal, factual and logistical obstacles and formidable opposing counsel, are nothing short of remarkable.... Finally, the standing and professional skill of plaintiffs' counsel, in particular Co-Lead Counsel, is high and undoubtedly furthered their ability to negotiate a valuable settlement and argue its merits before this Court. Several members of plaintiffs' counsel are leading attorneys in the area of class action litigation.

See *In re Prudential Ins. Co. Sales Practices Litig.*, 962 F. Supp. 572, 585-86 (D.N.J. 1997), *vacated on other grounds*, 148 F.3d 283 (3d Cir. 1998). Lerach Coughlin attorneys were co-lead counsel in this litigation. At the Fairness Hearing in *Prudential*, Judge Wolin stated that "there is **no doubt** that Class Counsel have prosecuted the interests of the class members with the utmost vigor and expertise." *In re Prudential Ins. Co. Sales Practices Litig.*, 962 F. Supp. 450, 519 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998) (emphasis added).

In approving a $100 million settlement in *In re Prudential Securities Limited Partnerships Litig.*, 912 F. Supp. 97, 101 (S.D.N.Y. 1996), for which Lerach Coughlin attorneys, acting under the Milberg Weiss firm name, were part of the lead counsel, Judge Pollack noted that he had "the opportunity at first hand to observe the quality of plaintiffs' class counsel's representation, both here and in prior complex litigation, and [was] impressed with the quality of plaintiffs' class counsel." In his opinion on class certification, Judge Chesler elaborated that:

The firm of Milberg Weiss Bershad Hynes & Lerach LLP, which is co-lead counsel for the plaintiff, was also counsel for the plaintiff class in the *Prudential* case. Thus, the adequacy of the plaintiff's representation is beyond reproach. Furthermore, the tremendous and unprecedented settlements which the Milberg firm has helped to secure for the plaintiff classes in both this case and the *Prudential* case are a testament to counsel's vigorous pursuit of the class interests.

See *Roy v. The Independent Order of Foresters*, Civ. No. 97-6225 (SRC), slip op. at 32 (D.N.J. Aug. 3, 1999).

At the Settlement Hearing in the *Chipcom* litigation, for which Lerach Coughlin attorneys were counsel, Judge Woodlock remarked:

[I]t seems to me that the level of legal services, the quality of legal services, the attention to the case on behalf of the plaintiffs, and ultimately plaintiffs' class, was really very high quality and ought to be recognized by an appropriately high percentage figure here.

Of course, I disagree on the merits of the case. That is not, however, to say that I disagree with the quality of the lawyering or disregarded the quality of the lawyering or thought that the quality of the lawyering was not at the highest level. To the contrary, I thought it was at the highest level and that ought also to be reflected here.

See *Nappo v. Chipcom Corp.*, CA-95-11114-WD (D. Mass.), Settlement Hearing Transcript dated June 26, 1997, at 13-14.

# NOTABLE CLIENTS

## Public Fund Clients

- **Alaska Permanent Fund Corporation.**

- **Alaska State Pension Investment Board.**

- **California Public Employees' Retirement System.**

- **California State Teachers' Retirement System.**

- **City of Birmingham Retirement and Relief System (Ala.).**

- **Teachers' Retirement System of the State of Illinois, Illinois Municipal Retirement Fund, Illinois State Board of Investment.**

- **Los Angeles County Employees Retirement Association (LACERA).**

- **Maine State Retirement System.**

- **The Maryland-National Capital Park & Planning Commission Employees' Retirement System.**

- **Milwaukee Employees' Retirement System.**

- **Minnesota State Board of Investment.**

- **New Hampshire Retirement System.**

- **Pompano Beach Police & Firefighters Retirement System.**

- **The Regents of the University of California.**

- **State Universities Retirement System of Illinois.**

- **State of Wisconsin Investment Board.**

- **Tennessee Consolidated Retirement System.**

- **Washington State Investment Board.**

- **Wayne County Employees' Retirement System.**

- **West Virginia Investment Management Board.**

## Multi-Employer Clients

- **Alaska Electrical Pension Fund.**

- **Alaska Hotel & Restaurant Employees Pension Trust Fund.**

- **Alaska Ironworkers Pension Trust.**

- **Alaska Laborers Employers Retirement Fund.**

- **Alaska U.F.C.W. Pension Trust.**

- **Chemical Valley Pension Fund of West Virginia**.

- **Carpenters Health & Welfare Fund of Philadelphia & Vicinity.**

- **Carpenters Pension Fund of Baltimore, Maryland**.

- **Carpenters Pension Fund of Illinois**.

- **Carpenters Pension & Annuity Fund of Philadelphia & Vicinity**.

- **Southwest Carpenters Pension Trust (f/k/a Carpenters Pension Trust for Southern California)**.

- **Central States, Southeast and Southwest Areas Pension Fund.**

- **Construction Industry and Carpenters Joint Pension Trust for Southern Nevada**.

- **Employer-Teamsters Local Nos. 175 & 505 Pension Trust Fund**.

- **Heavy & General Laborers' Local 472 & 172 Pension & Annuity Funds**.

- **UNITE Family of Funds**.

- **1199 SEIU Greater New York Pension Fund**.

- **Massachusetts State Carpenters Pension Fund**.

- **Massachusetts State Guaranteed Annuity Fund**.

- **New England Health Care Employees Pension Fund**.

- **PACE Industry Union-Management Pension Fund**

- **Rocky Mountain UFCW Unions & Employers Pension Plan.**

- **SEIU Staff Fund**.

- **Southern California Lathing Industry Pension Fund**

- **United Brotherhood of Carpenters Pension Fund**

## Additional Institutional Investors

- **The Dot.Com Fund**.

- **Northwestern Mutual Life Insurance Co**.

- **Standard Life Investments**.

# PROMINENT CASES

## PROMINENT CASES PROSECUTED BY LERACH COUGHLIN ATTORNEYS

• ***In re NASDAQ Market-Makers Antitrust Litig.***, MDL 1023 (S.D.N.Y.).  Lerach Coughlin attorneys served as court-appointed co-lead counsel for a class of investors.  The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry wide conspiracy in one of the largest and most important antitrust cases in recent history.  After three and one half years of intense litigation, the case was settled for a total of $1.027 billion, the largest antitrust settlement ever.  An excerpt from the court's opinion reads:

> Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful and well regarded law firms in the country.  It is difficult to conceive of better representation than the parties to this action achieved.

• ***In re American Continental Corp./Lincoln Savings & Loan Sec. Litig.***, MDL 834 (D. Ariz.).  Lerach Coughlin attorneys served as the court-appointed co-lead counsel for a class of persons who purchased debentures and/or stock in American Continental Corp., the parent company of the now infamous Lincoln Savings & Loan.  The suit charged Charles Keating, other insiders, three major accounting firms, three major law firms, Drexel Burnham, Michael Milken and others with racketeering and violations of securities laws.  Recoveries totaled $240 million on $288 million in losses.  A jury also rendered verdicts of more than $1 billion against Keating and others.

• ***In re 3Com, Inc. Sec. Litig.***, No. C-97-21083-JW (N.D. Cal.).  A hard-fought class action alleging violations of the federal securities law violations in which Lerach Coughlin attorneys served as lead counsel for the class and obtained a recovery totaling $259 million.

• ***Mangini v. R.J. Reynolds Tobacco Co.***, No. 939359 (Cal. Super. Ct., San Francisco County).  In this case R.J. Reynolds admitted "the *Mangini* action, and the way that it was vigorously litigated, was an early, significant and unique driver of the overall legal and social controversy regarding underage smoking that led to the decision to phase out the Joe Camel Campaign."

• ***Cordova v. Liggett Group, Inc., et al.***, No. 651824 (Cal. Super. Ct., San Diego County), and ***People v. Philip Morris, Inc., et al.***, No. 980864 (Cal. Super. Ct., San Francisco County).  Lerach Coughlin attorneys, as lead counsel in both these actions, played a key role in these cases which were settled with the attorneys general global agreement with the tobacco industry bringing $26 billion to the State of California as a whole and $12.5 billion to the cities and counties within California.

• ***Does I, et al. v. The Gap, Inc., et al.***, No. 01 0031 (D. Northern Mariana Islands).  In this ground-breaking case, Lerach Coughlin attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top U.S. retailers such as The Gap, Target and J.C. Penney.  In the first action of its kind, Lerach Coughlin attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort

Claims Act and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan. This case was a companion to two other actions: *Does I, et al. v. Advance Textile Corp., et al.*, No. 99 0002 (D. Northern Mariana Islands) – which alleged overtime violations by the garment factories under the Fair Labor Standards Act– and *UNITE, et al. v. The Gap, Inc., et al.*, No. 300474 (Cal. Super. Ct., San Francisco County), which alleged violations of California's Unfair Practices Law by the U.S. retailers. These actions resulted in a settlement of approximately $20 million that included a comprehensive Monitoring Program to address past violations by the factories and prevent future ones. The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for Public Justice in recognition of the team's efforts at bringing about the precedent-setting settlement of the actions.

- *In re Exxon Valdez*, No. A89 095 Civ. (D. Alaska), and *In re Exxon Valdez Oil Spill Litig.*, 3 AN 89 2533 (Alaska Super. Ct., 3d Jud. Dist.). Lerach Coughlin attorneys served on the Plaintiffs' Coordinating Committee and Plaintiffs' Law Committee in the massive litigation resulting from the Exxon Valdez oil spill in Alaska in March 1989. A jury verdict of $5 billion was obtained and is currently on appeal.

- *In re Washington Public Power Supply Sys. Sec. Litig.*, MDL 551 (D. Ariz.). A massive litigation in which Lerach Coughlin attorneys served as co-lead counsel for a class that obtained recoveries totaling $775 million after several months of trial.

- *Hall v. NCAA* (Restricted Earnings Coach Antitrust Litigation), No. 94-2392-KHV (D. Kan.). The firm was lead counsel and lead trial counsel for one of three classes of coaches in consolidated price fixing actions against the National Collegiate Athletic Association. On May 4, 1998, the jury returned verdicts in favor of the three classes for more than $54.5 million.

- *Newman v. Stringfellow* (Stringfellow Dump Site Litigation), No. 165994 MF (Cal. Super. Ct., Riverside County). Lerach Coughlin attorneys represented more than 4,000 individuals suing for personal injury and property damage arising from their claims that contact with the Stringfellow Dump Site may have caused them toxic poisoning. Recovery totaled approximately $109 million.

- *In re Prison Realty Sec. Litig.*, No. 3:99-0452 (M.D. Tenn.). Lerach Coughlin attorneys served as lead counsel for the class obtaining a $105 million recovery.

- *City of San Jose v. PaineWebber*, No. C-84-20601(RFP) (N.D. Cal.). Lerach Coughlin attorneys filed a lawsuit on behalf of the City of San Jose to recover speculative trading losses from its former auditors and 13 brokerage firms. In June 1990, following a six-month trial, the jury returned a verdict for the City, awarding over $18 million in damages plus pre-judgment interest. The City also recovered an additional $12 million in settlements prior to and during the trial.

- *Hicks v. Nationwide*, No. 602469 (Cal. Super. Ct., San Diego County). Lerach Coughlin attorneys represented a class of consumers alleging fraud involving military purchasers of life insurance, in which a jury trial resulted in a full recovery for the class, plus punitive damages.

- ***In re Nat'l Health Laboratories Sec. Litig.***, No. CV-92-1949-RBB (S.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel and obtained a pretrial recovery of $64 million in this securities fraud class action.

- ***In re Informix Corp. Sec. Litig.***, No. C-97-1289-CRB (N.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel for the class and obtained a recovery of $137.5 million.

- ***In re Apple Computer Sec. Litig.***, No. C-84-20148(A)-JW (N.D. Cal.). Lerach Coughlin attorneys served as lead counsel and after several years of litigation obtained a $100 million jury verdict in this securities fraud class action. The $100 million jury verdict was later upset on post-trial motions, but the case was settled favorably to the class.

- ***In re Nat'l Medical Enterprises Sec. Litig.***, No. CV-91-5452-TJH (C.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel and recovered $60.75 million in this securities fraud class action.

- ***In re Nucorp Energy Sec. Litig.***, MDL 514 (S.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel in this consolidated class action and recovered $55 million.

- ***In re U.S. Financial Sec. Litig.***, MDL 161 (S.D. Cal.). Lerach Coughlin attorneys acted as chairman of the Plaintiffs' Steering Committee and achieved a pretrial recovery of over $50 million.

- ***Barr v. United Methodist Church***, No. 404611 (Cal. Super. Ct., San Diego County). Lerach Coughlin attorneys served as lead and trial counsel in this class action on behalf of elderly persons who lost their life savings when a church-sponsored retirement home that had sold them prepaid life-care contracts went bankrupt. After four years of intensive litigation – three trips to the U.S. Supreme Court and five months of trial – plaintiffs obtained a settlement providing over $40 million in benefits to the class members. In approving that settlement, Judge James Foucht praised the result as "a most extraordinary accomplishment" and noted that it was the "product of the skill, effort and determination of plaintiffs' counsel."

- ***Grobow v. Dingman*** (The Henley Group Litigation), No. 575076 (Cal. Super. Ct., San Diego County). Lerach Coughlin attorneys served as co-lead counsel and obtained $42 million derivatively on behalf of The Henley Group, Inc.

- ***In re Itel Sec. Litig.***, No. C-79-2168A-RPA (N.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel in this securities class action that recovered $40 million.

- ***In re Financial Corp. of America***, No. CV-84-6050-TJH(Bx) (C.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel and obtained a recovery of $41 million.

- ***In re Oak Industries Sec. Litig.***, No. 83-0537-G(M) (S.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel in this case and obtained a recovery of $33 million.

- ***In re Wickes Cos. Sec. Litig.***, MDL 513 (S.D. Cal.). Lerach Coughlin attorneys served as liaison counsel in this consolidated securities law class action that recovered $32 million.

- **Weinberger v. Shumway** (The Signal Companies, Inc.), No. 547586 (Cal. Super. Ct., San Diego County). Lerach Coughlin attorneys served as co-lead counsel in this derivative litigation challenging executive "golden parachute" contracts, and obtained a recovery of approximately $23 million.

- **In re Seafirst Sec. Litig.**, No. C-83-771-R (W.D. Wash.). Lerach Coughlin attorneys served as co-lead counsel in this class action and obtained a pretrial recovery of $13.6 million.

- **In re Waste Management Sec. Litig.**, No. 83-C2167 (N.D. Ill.). Lerach Coughlin attorneys served as co-lead counsel in this case and obtained a pretrial recovery of $11.5 million.

- **In re IDB Communications Group, Inc. Sec. Litig.**, No. CV-94-3618 (C.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel in this case and obtained a pretrial recovery of $75 million.

- **In re Boeing Sec. Litig.**, No. C97-1715Z (W.D. Wash.). A securities class action in which Lerach Coughlin attorneys served as co-lead counsel for the class obtaining a recovery in the amount of $92.5 million.

- **Thurber v. Mattel, Inc., et al.**, No. CV-99-10368-MRP (C.D. Cal.). Lerach Coughlin attorneys served as chair of the Executive Committee of Plaintiffs' Counsel and obtained a recovery of $122 million.

- **In re Dollar General Sec. Litig.**, No. 3:01-0388 (M.D. Tenn.). Lerach Coughlin attorneys served as co-lead counsel and obtained a recovery of $172.5 million.

- **Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Hanover Compressor Co.**, No. H-02-0410 (S.D. Tex.). Lerach Coughlin attorneys served as lead counsel and obtained a recovery of $85 million.

- **In re Reliance Acceptance Group, Inc. Sec. Litig.**, MDL 1304 (D. Del.). Lerach Coughlin attorneys served as co-lead counsel and obtained a recovery of $39 million.

- **Schwartz v. Visa Int'l, et al**, No. 822404-4 (Cal. Super. Ct., Alameda County). After years of litigation and a six month trial, Lerach Coughlin attorneys won one of the largest consumer protection verdicts ever awarded in the United States. Lerach Coughlin attorneys represented California consumers who sued Visa and MasterCard for intentionally imposing and concealing a fee from their cardholders. The court ordered Visa and MasterCard to return $800,000,000 in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest. In addition, the court ordered full disclosure of the hidden fee.

- **Morris v. Lifescan, Inc.**, No. CV-98-20321-JF (N.D. Cal.). Lerach Coughlin attorneys were responsible for achieving a $45 million all-cash settlement with Johnson & Johnson and its wholly-owned subsidiary, Lifescan, Inc., over claims that Lifescan deceptively marketed and sold a defective blood-glucose monitoring system for diabetics. The Lifescan settlement was noted by the district court for the Northern District of California as providing "exceptional results" for members of the class.

- ***Thompson v. Metropolitan Life Insurance Co.***, 216 F.R.D. 55 (S.D.N.Y. 2003).  Lerach Coughlin attorneys served as lead counsel and obtained $145 million for the class in a settlement involving racial discrimination claims in the sale of life insurance.

- ***In re: The Prudential Insurance Company of America Sales Practices Litigation***, 962 F. Supp. 450 (D. N.J. 1997).  In one of the first cases of its kind, Lerach Coughlin attorneys obtained a settlement of over $1.2 billion for deceptive sales practices in connection with the sale of life insurance involving the "vanishing premium" sales scheme.

# PRECEDENT-SETTING DECISIONS

Lerach Coughlin attorneys are consistent leaders in developing favorable law for defrauded investors under state and federal securities laws. Lerach Coughlin attorneys have represented individual and institutional plaintiffs in over 500 securities class actions, including many under the Private Securities Litigation Reform Act of 1995. In most of those cases, Lerach Coughlin has been appointed as lead or co-lead counsel by the Court. Lerach Coughlin has also been at the forefront of shareholder rights in derivative and Mergers and Acquisitions litigation. Additionally, Lerach Coughlin attorneys are involved in complex litigation in such varied areas as abuses in the insurance industry, consumer protection and antitrust litigation, civil and human rights, and tobacco litigation. The firm's lawyers have been responsible for establishing many important precedents, including:

## Investor and Shareholder Rights

• ***No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.***, 320 F.3d 920 (9th Cir. 2003). *America West* is a landmark Ninth Circuit decision holding that investors pleaded with particularity facts raising a strong inference of corporate defendants' fraudulent intent under heightened pleading standards of the Private Securities Litigation Reform Act of 1995.

• ***Pirraglia v. Novell, Inc.***, 339 F.3d 1182 (10th Cir. 2003). In *Pirraglia*, the Tenth Circuit upheld investors' accounting-fraud claims, concluding that their complaint presented with particularity facts raising a strong inference of the defendants' fraudulent intent.

• ***Broudo v. Dura Pharmaceuticals, Inc.***, 339 F.3d 933 (9th Cir. 2003). The Ninth Circuit upheld investors' securities-fraud claims, reaffirming Ninth Circuit law on loss causation, which holds that investors suffer a loss when they purchase securities at a price inflated by fraud.

• ***In re Cavanaugh***, 306 F.3d 726 (9th Cir. 2002). In *Cavanaugh*, the Ninth Circuit disallowed judicial auctions to select lead plaintiffs in securities class actions, and protected lead plaintiffs' right to select the lead counsel they desire to represent them.

• ***Lone Star Ladies Investment Club v. Schlotzsky's, Inc.***, 238 F.3d 363 (5th Cir. 2001). In *Lone Star Ladies*, the Fifth Circuit upheld investors' claims that securities-offering documents were incomplete and misleading, reversing a district court order that had applied inappropriate pleading standards to dismiss the case.

• ***Bryant v. Dupree***, 252 F.3d 1161 (11th Cir. 2001). The Eleventh Circuit held that investors were entitled to amend their securities-fraud complaint to reflect further developments in the case, reversing a contrary district court order.

• ***Bryant v. Avado Brands***, 187 F.3d 1271 (11th Cir. 1999). Interpreting the Private Securities Litigation Reform Act of 1995, the Eleventh Circuit held that its provision requiring investors to plead facts raising a strong inference of scienter does not abrogate the principle that recklessness suffices to establish liability for violations of §10(b) of the Securities Exchange Act of 1934.

• ***Berry v. Valence Tech., Inc.***, 175 F.3d 699 (9th Cir. 1999). The Ninth Circuit held that negative articles in the financial press do not cause the one-year "inquiry notice" statute of

limitations to run, and indicated possible acceptance of an "actual knowledge" standard that would greatly extend the statute of limitations for victims of securities fraud.

- ***Hertzberg v. Dignity Partners, Inc.***, 191 F.3d 1076 (9th Cir. 1999). The Ninth Circuit reversed dismissal of investors' claims that securities-offering documents were misleading, holding purchasers who bought shares in the aftermarket had standing to bring claims under the Securities Act of 1933 where a material fact is misstated or omitted from a registration statement.

- ***StorMedia, Inc. v. Superior Court***, 20 Cal. 4th 449 (1999). Interpreting the anti-manipulation provisions of California's state securities laws, the California Supreme Court held that a corporation engages in the offer or sale of securities when it maintains an employee stock-option or stock-purchase plan, and thus may be liable under the statute for disseminating false or misleading public statements.

- ***Diamond Multimedia Sys., Inc. v. Superior Court***, 19 Cal. 4th 1036 (1999). The California Supreme Court held that the California state securities laws' broad anti-manipulation provisions provide a remedy for out-of-state investors damaged by manipulative acts committed within the State of California.

- ***Cooper v. Pickett***, 137 F.3d 616 (9th Cir. 1998). *Cooper* is the leading Ninth Circuit precedent on pleading accounting fraud with particularity. The court held that plaintiffs stated claims against a company, its independent auditors, and its underwriters, for engaging in a scheme to defraud involving improper revenue recognition.

- ***McGann v. Ernst & Young***, 102 F.3d 390 (9th Cir. 1996). *McGann* is a leading federal appellate precedent interpreting Securities Exchange Act of 1934 §10(b)'s provision prohibiting manipulative or deceptive conduct "in connection with" the purchase or sale of a security. The court rejected contentions that auditors could not be liable for a recklessly misleading audit opinion if they directly participated in no securities transactions. Rather, an accounting firm is subject to liability if it prepares a fraudulent audit report knowing that its client will include the report in an SEC filing.

- ***Provenz v. Miller***, 102 F.3d 1478 (9th Cir. 1996). In *Provenz*, the Ninth Circuit reversed a district court's entry of summary judgment for defendants in an accounting-fraud case. The decision is a leading federal appellate precedent on the evidence required to prove fraudulent revenue recognition.

- ***Knapp v. Ernst & Whinney***, 90 F.3d 1431 (9th Cir. 1996). The Ninth Circuit affirmed a jury verdict entered for stock purchasers against a major accounting firm.

- ***Warshaw v. Xoma Corp.***, 74 F.3d 955 (9th Cir. 1996). *Warshaw* is a leading federal appellate precedent on pleading falsity in securities class actions – sustaining allegations that a pharmaceutical company misled securities analysts and investors regarding the efficacy of a new drug and the likelihood of FDA approval. The court also held that a company may be liable to investors if it misled securities analysts.

- ***Gohler v. Wood***, 919 P.2d 561 (Utah 1996). The Utah Supreme Court held that investors need not plead or prove "reliance" on false or misleading statements in order to recover under a state law prohibiting misleading statements in connection with the sale of a security.

- ***Fecht v. Price Co.***, 70 F.3d 1078 (9th Cir. 1995). *Fecht* is another leading precedent on

pleading falsity with particularity.  It sustained allegations that a retail chain's positive portrayal of its expansion program was misleading in light of undisclosed problems that caused the program to be curtailed.  The Ninth Circuit held that investors may draw on contemporaneous conditions – such as disappointing results and losses in new stores – to explain why a company's optimistic statements were false and misleading.  It also clarified the narrow scope of the so-called "bespeaks caution" defense.

- ***In re Software Toolworks Sec. Litig.***, 50 F.3d 615 (9th Cir. 1995).  In *Software Toolworks*, the Ninth Circuit reversed the summary judgment entered for defendants, including a company and its top insiders, independent auditors, and underwriters.  Among other things, the court held that auditors and underwriters could be liable for their role in drafting a misleading letter sent to the SEC on the corporate defendant's attorneys' letterhead.

- ***In re Pacific Enterprises Sec. Litig.***, 47 F.3d 373 (9th Cir. 1995).  The Ninth Circuit approved shareholders' settlement of a derivative suit as fair, reasonable, and adequate.

- ***Kaplan v. Rose***, 49 F.3d 1363 (9th Cir. 1994).  The court reversed entry of summary judgment for defendants because investors presented sufficient evidence for a jury to conclude that a medical device did not work as well as defendants claimed.

- ***In re Wells Fargo Sec. Litig.***, 12 F.3d 922 (9th Cir. 1993).  *Wells Fargo* is a leading federal appellate decision on pleading accounting fraud, sustaining investors' allegations that a bank misrepresented the adequacy of its loan-loss reserves.

- ***Krangel v. General Dynamics Corp.***, 968 F.2d 914 (9th Cir. 1992).  The Ninth Circuit dismissed defendants' appeal from a district court's order upholding plaintiff investors' choice of forum by remanding the  matter to the state court.

- ***Colan v. Mesa Petroleum, Co.***, 951 F.2d 1512 (9th Cir. 1991).  In a shareholder derivative action, the Ninth Circuit held that exchange of common stock for debt securities was a "sale" subject to the Securities Exchange Act of 1934's regulation of short-swing profits.

- ***In re Apple Computer Sec. Litig.***, 886 F.2d 1109 (9th Cir. 1989).  The Ninth Circuit reversed summary judgment for defendants, holding that investors could proceed to trial on claims that a company's representations about its new disk drive were misleading because they failed to disclose serious technical problems.

- ***Blake v. Dierdorff***, 856 F.2d 1365 (9th Cir. 1988).  The Ninth Circuit reversed a district court's dismissal of claims for fraud brought against a corporation's directors and its lawyers.

- ***Mosesian v. Peat, Marwick, Mitchell & Co.***, 727 F.2d 873 (9th Cir. 1984).  The Ninth Circuit upheld an investor's right to pursue a class action against an accounting firm, adopting statute-of-limitation rules for §10(b) suits that are favorable to investors.

### Insurance

- ***Dehoyos v. Allstate Corp.***, 345 F.3d 290 (5th Cir. 2003), *cert. denied*, 2004 U.S. LEXIS 3088 (Apr. 26, 2004).  The Fifth Circuit Court of Appeals held that claims under federal civil rights statutes involving the sale of racially discriminatory insurance policies based upon the use of credit scoring, did not interfere with state insurance statutes or regulatory goals and were not preempted  under the McCarran -Ferguson Act.  Specifically, the appellate court affirmed the

district court's ruling that the McCarran-Ferguson Act does not preempt civil-rights claims – under the Civil Rights Act of 1866 and the Fair Housing Act – for racially discriminatory business practices in the sale of automobile and homeowners insurance. The U.S. Supreme Court recently denied defendants' petition for certiorari and plaintiffs can now proceed with their challenge of defendants' allegedly discriminatory credit-scoring system used in pricing of automobile and homeowners insurance policies.

- ***In re Monumental Life Insurance Co., Industrial Life Insurance Litigation***, ___ F.3d ___, 2004 U.S. App. LEXIS 6392 (5th Cir. 2004). The Fifth Circuit Court of Appeals reversed a district court's denial of class certification in a case filed by African-Americans seeking to remedy racially-discriminatory insurance practices. The Fifth Circuit held that a monetary relief claim is viable in a Rule 23(b)(2) class if it flows directly from liability to the class as a whole and is capable of classwide "computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances."

- ***Moore v. Liberty Nat'l Life Insurance Co.***, 267 F.3d 1209 (11th Cir. 2001). The Eleventh Circuit affirmed the district court's denial of the defendant's motion for judgment on the pleadings, rejecting contentions that insurance policyholders' claims of racial discrimination were barred by Alabama's common-law doctrine of repose. The Eleventh Circuit also rejected the insurer's argument that the McCarran-Ferguson Act mandated preemption of plaintiffs' federal civil-rights claims under 42 U.S.C. §§1981 and 1982.

- ***Massachusetts Mutual Life Ins. Co. v. Superior Court***, 97 Cal. App. 4th 1282 (2002). The California Court of Appeal affirmed a trial court's

order certifying a class in an action by purchasers of so-called "vanishing premium" life-insurance policies who claimed violations of California's consumer-protection statutes. The court held common issues predominate where plaintiffs allege a uniform failure to disclose material information about policy dividend rates.

## Consumer Protection

- ***Kasky v. Nike, Inc.***, 27 Cal. 4th 939 (2002), *cert. dismissed*, 539 U.S. 654 (2003). The California Supreme Court upheld claims that an apparel manufacturer misled the public regarding its exploitative labor practices, thereby violating California statutes prohibiting unfair competition and false advertising. The court rejected defense contentions that such misconduct was protected by the First Amendment.

- ***West Corp. v. Superior Court***, 116 Cal. App. 4th 1167 (2004). The California Court of Appeal upheld the trial court's finding that jurisdiction in California was appropriate over the out-of-state corporate defendant whose telemarketing was aimed at California residents. Exercise of jurisdiction was found to be in keeping with considerations of fair play and substantial justice.

- ***Spielholz v. Superior Court***, 86 Cal. App. 4th 1366 (1999). The California Court of Appeal held that false advertising claims against a wireless communications provider are not preempted by the Federal Communications Act of 1934.

- ***Day v. AT&T Corp.***, 63 Cal. App. 4th 325 (1998). The California Court of Appeal held that an action which seeks only to enjoin misleading or deceptive practices in the advertising of telephone rates does not implicate the federal filed-rate doctrine, and can proceed under Cal. Bus. & Prof. Code §§17200 and 17500. The court

also held that the claims were not preempted by the Federal Communications Act, that the California Public Utilities Commission does not have exclusive jurisdiction, that the doctrine of primary jurisdiction did not compel dismissal or stay of the action, and that the plaintiffs were not required to exhaust their administrative remedies.

- **Mangini v. R.J. Reynolds Tobacco Co.**, 7 Cal. 4th 1057 (1994). The California Supreme Court upheld allegations that a cigarette manufacturer committed an unlawful business practice by targeting minors with its advertising. It flatly rejected the manufacturer's contention that the action was preempted by federal cigarette labeling laws.

- **Jordan v. Department of Motor Vehicles**, 75 Cal. App. 4th 449 (1999). The California Court of Appeal invalidated a non-resident vehicle "smog impact" fee imposed on out-of-state autos being registered for the first time in California, finding that the fee violated the Interstate Commerce Clause of the U.S. Constitution.

- **Clothesrigger, Inc. v. GTE Corp.**, 191 Cal. App. 3d 605 (1987). The California Court of Appeal reversed the trial court's decision refusing to apply California law to the claims of nonresident plaintiffs. In reversing the lower court's ruling, the court found that California law may constitutionally apply to the claims of proposed nationwide class members who are not residents of California, provided there are significant contacts to the claims asserted by each member.

- **Lazar v. Hertz Corp.**, 143 Cal. App. 3d 128 (1983). The California Court of Appeal ordered a consumer class certified, in an opinion that significantly broadens the right of injured consumers to bring class actions.

- **Barr v. United Methodist Church**, 90 Cal. App. 3d 259 (1979). The California Court of Appeal rejected constitutional defenses to an action for civil fraud and breach of contract committed by religiously affiliated defendants.

## Antitrust

- **Law v. NCAA**, 134 F.3d 1010 (10th Cir. 1998). The Tenth Circuit upheld summary judgment on liability for plaintiffs in college coaches' antitrust action against the National Collegiate Athletic Association on the issue of antitrust liability under Section 1 of the Sherman Antitrust Act, 15 U.S.C. §1 (plaintiffs subsequently prevailed on a damages trial). It also upheld the district court's order permanently enjoining the NCAA from enforcing the "restricted earnings coach" rule, through which NCAA member institutions limited the salary of certain coaches to $12,000 during the academic year.

- **In re NASDAQ Market-Makers Antitrust Litig.**, 172 F.R.D. 119 (S.D.N.Y. 1997). In a case where plaintiffs alleged that approximately 30 NASDAQ market-makers engaged in a conspiracy to restrain or eliminate price competition, the district court certified a class of millions of investors – including institutional investors to be represented by five public pension funds.

- **In re Disposable Contact Lens Antitrust Litig.**, 170 F.R.D. 524 (M.D. Fla. 1996). Plaintiff contact lens purchasers alleged that defendant manufacturers conspired on a nationwide basis to eliminate competition and maintain artificially inflated prices for replacement contact lenses. The district court denied defendant manufacturers' motion to dismiss plaintiffs' Clayton Act claims and granted their motion for class certification, finding that plaintiffs' vertical–conspiracy evidence was general to the class and

provided a colorable method of proving impact on the class at trial.

- ***In re Currency Conversion Fee Antitrust Litig.***, 265 F. Supp. 2d 385 (S.D.N.Y. 2003). In a case consolidating more than 20 putative class actions, plaintiff credit-card holders alleged that two credit-card networks, Visa and MasterCard, and their member banks, conspired to fix the foreign-currency conversion fees they charged. The district court found that plaintiffs pleaded facts sufficient to permit the inference of an antitrust conspiracy, denying defendants' motion to dismiss the antitrust allegations.

- ***Pharmacare v. Caremark***, 965 F. Supp. 1411 (D. Haw. 1996). The district court denied defendant's motion to dismiss plaintiffs' Robinson-Patman Act claim in a case where the largest company in the alternate-site infusion therapy industry had pleaded guilty to mail fraud for making improper payments to physicians in exchange for their referrals of patients. Plaintiffs, defendant's competitors, alleged that they suffered injury as a result of defendant's agreements, which violated the anti-kickback provisions of the Clayton Act, §2(c) as amended by the Robinson-Patman Act, 15 U.S.C. §13(c).

ADDITIONALLY, IN THE CONTEXT OF SHAREHOLDER DERIVATIVE ACTIONS, Lerach Coughlin attorneys has been at the forefront of protecting shareholders' investments by causing important changes in corporate governance as part of the global settlement of such cases. Three recent cases in which such changes were made include:

- ***Teachers' Retirement Sys. of Louisiana v. Occidental Petroleum Corp.***, CV No. BC185009 (Cal. Super. Ct.) (as part of the settlement, corporate governance changes were made to the composition of the company's board of directors, the company's nominating committee, compensation committee and audit committee).

- ***In re Sprint Shareholder Litigation***, No. 00-CV-230077 (Circuit Ct. Jackson County, Mo.) (in connection with the settlement of a derivative action involving Sprint Corporation, the company adopted over 60 new corporate governance provisions, which, among other things, established a truly independent Board of Directors and narrowly defines "independence" to eliminate cronyism between the board and top executives; required outside board directors to meet at least twice a year without management present; created an independent director who will hold the authority to set the agenda, a power previously reserved for the CEO; and imposed new rules to prevent directors and officers from vesting their stock on an accelerated basis).

- ***Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Hanover Compressor Co.***, No. H-02-0410 (S.D. Tex.) (groundbreaking corporate governance changes obtained include: direct shareholder nomination of two directors; mandatory rotation of the outside audit firm; two-thirds of the board required to be independent; audit and other key committees to be filled only by independent directors; creation and appointment of lead independent director with authority to set up board meetings).

# THE FIRM'S PARTNERS

**WILLIAM S. LERACH** is widely recognized as one of the leading securities lawyers in the United States. He has headed the prosecution of hundreds of securities class and stockholder derivative actions resulting in recoveries for defrauded shareholders amounting to billions of dollars. Mr. Lerach has been the subject of considerable media attention and is a frequent commentator on securities and corporate law, as well as a frequent lecturer. He represents numerous public and multi-employer pension funds in corporate securities matters.

He is the author of *Plundering America: How American Investors Got Taken for Trillions by Corporate Insiders - The Rise of the New Corporate Kleptocracy*, 8 Stanford J. of Law, Bus. and Fin. 1 (2002); *Why Insiders Get Rich, and the Little Guy Loses*, L.A. Times, Jan. 20, 2002; *The Chickens Have Come Home to Roost: How Wall Street, the Big Accounting Firms and Corporate Interests Chloroformed Congress and Cost America's Investors Trillions; Achieving Corporate Governance Enhancements Through Litigation*, keynote address to Council of Institutional Investors spring meeting, Mar. 27, 2001; *The Private Securities Litigation Reform Act of 1995 - 27 Months Later: Securities Class Action Litigation Under The Private Securities Litigation Reform Act's Brave New World*, Washington U. L. Rev., Vol. 76, No. 2 (1998); *An Alarming Decline In the Quality of Financial Reporting* (unpublished paper presented to 7th Annual BusinessWeek CFO Forum (June 1998); co author of *Civil RICO in Shareholders Suits Involving Defense Contractors* in Civil RICO Practice: Causes of Action, published by John Wiley & Sons, Inc. (1991); *The Incorporation Trap: How Delaware Has Destroyed Corporate Governance* (unpublished paper presented to the Council of Institutional Investors (1990)); *Securities Class Actions and Derivative Litigations Involving Public Companies: A Plaintiff's Perspective*, ALI/ABI, Civil Practice and Litigation in Federal and State Courts (1985), ABA Fall Meeting (1985) and PLI Securities Litigation, Prosecution and Defense Strategies (1985); *Alternative Approaches for Awarding Attorneys' Fees in Federal Court Litigation: It's Time to Unload the Lodestar* (unpublished paper presented to the Ninth Circuit Judicial Conference (1984)); *Class Action and Derivative Suits in the Aftermath of Control Contests, Mergers and Acquisitions: Choice of Forum and Remedies; Attorney/Client Privilege in Class and Derivative Cases*, ABA 1984 Annual Meeting (1984); *Class Actions: Plaintiffs' Perspectives, Tactics and Problems*, ALI/ABA, Civil Practice and Litigation in Federal and State Courts (1984); *Life After Huddleston: Streamlining and Simplification of the Securities Class Action*, 7 Class Action Reports 318 (1982). He is also the author of *Termination of Class Actions: The Judicial Role*, McGough & Lerach, 33 U. Pitt L. Rev. 446 (1972); *Class and Derivative Actions Under the Federal Securities Laws* (1980 Regents of the University of California).

Mr. Lerach is chief counsel in many of the largest and highest profile securities class action and corporate derivative suits in recent years, including *Enron, Dynegy, Qwest* and *WorldCom*. He is listed in the "Best Lawyers in America" and is a Master of the American Inns of Court. Mr. Lerach has been the President of the National Association of Securities and Commercial Lawyers (NASCAT), a national group of attorneys specializing in commercial and securities litigation. Mr. Lerach is a member of the Editorial Board of Class Action Reports, and frequently lectures on class and derivative actions, accountants' liability, and attorneys' fees, and has been a guest lecturer at Stanford University, University of California at Los Angeles and San Diego, University of Pittsburgh,

San Diego State University and at the Council of Institutional Investors and the International Corporate Governance Network. He is also a member of the American Law Institute faculty on Federal and State Class Action Litigation.

Mr. Lerach received his Bachelor of Arts degree from the University of Pittsburgh in 1967 and his law degree in 1970 where he graduated second in his class, *magna cum laude*, and was a member of the Order of the Coif. Mr. Lerach was admitted to the Pennsylvania Bar in 1970 and to the California Bar in 1976. Mr. Lerach was a partner with Pittsburgh firm Reed Smith Shaw & McClay before opening the West Coast office of Milberg Weiss in 1976. Mr. Lerach served as Co-Chairman of Milberg Weiss and serves as Chairman of Lerach Coughlin. He is a member of the Pennsylvania and California Bar Associations and has been admitted to practice before numerous federal and state courts. He is a member of the ABA Litigation Section's Committee on Class Actions and Derivative Skills.

Mr. Lerach has testified before federal and state legislative committees concerning corporate governance and securities matters and is frequently quoted in the national media regarding corporate issues.

Mr. Lerach was honored by President Clinton who appointed him to be a member of the United States Holocaust Memorial Council.

**PATRICK J. COUGHLIN** has been lead counsel for several major securities matters including one of the largest class action securities cases to go to trial, *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW (N.D. Cal.). Formerly, Mr. Coughlin was an Assistant U.S. Attorney in Washington, D.C. and San Diego handling complex white collar fraud matters. During this time Mr.

Coughlin helped try one of the largest criminal RICO cases ever prosecuted by the United States, *United States v. Brown, et al.*, 86-3056-SWR, as well as an infamous oil fraud scheme resulting in a complex murder-for-hire trial, *United States v. Boeckman, et al.*, 87-0676-K. Mr. Coughlin has instructed on the current state of securities class action litigation in light of U.S. Congressional action aimed at weakening U.S. securities laws.

While at Milberg Weiss, Mr. Coughlin handled a number of large securities cases involving such companies as IDB Communications Group ($75 million recovery); Unocal ($47.5 million recovery); Media Vision ($25 million recovery); Boeing ($92.5 million recovery); Sunrise Medical ($20 million recovery); Sybase ($28.5 million recovery); Conner Peripherals ($26 million recovery); 3Com ($259 million recovery). Mr. Coughlin also prosecuted a number of actions against the tobacco industry which resulted in the phase-out of the Joe Camel Campaign and a $12.5 billion recovery to the Cities and Counties of California. Mr. Coughlin's recent trials include a RICO case against the tobacco industry (March 1999) and securities cases which went to trial against Wells Fargo (October 1999) and California Amplifier (February 2000).

**JOHN J. STOIA, JR**. received his Bachelor of Science degree from the University of Tulsa in 1983. While working on his degree, Mr. Stoia was elected President of the National Political Science Honor Society and graduated with highest honors. In 1986, Mr. Stoia received his Juris Doctor degree from the University of Tulsa and graduated in the top of his class.

In 1987, Mr. Stoia graduated from the Georgetown University Law Center in Washington, D.C., receiving his Masters of Law in Securities Regulation. Thereafter, Mr. Stoia served as an enforcement attorney with the U.S.

Securities and Exchange Commission, until joining Milberg Weiss. Mr. Stoia was a partner with Milberg Weiss until co-founding Lerach Coughlin.

Mr. Stoia worked on numerous nationwide complex securities class actions, including *In re American Continental Corp./Lincoln Savings & Loan Sec. Litig.*, MDL 834 (D. Ariz.), which arose out of the collapse of Lincoln Savings & Loan and Charles Keating's empire. Mr. Stoia was a member of plaintiffs' trial team which obtained verdicts against Mr. Keating and his co-defendants in excess of $3 billion and settlements of over $240 million.

Mr. Stoia was involved in over 40 nationwide class actions brought by policyholders against U.S. and Canadian life insurance companies seeking redress for deceptive sales practices during the 1980s and 1990s. Mr. Stoia was actively involved in cases against, among others, Prudential, New York Life, Transamerica Life Insurance Company, General American Life Insurance Company, Manufacturer's Life, Metropolitan Life, American General, US Life, Allianz, Principal Life and Pacific Life Insurance Company. While at Milberg Weiss, Mr. Stoia was appointed lead counsel for plaintiffs and class members in all deceptive sales practices cases in which Milberg Weiss was involved.

Mr. Stoia was also involved in numerous cases brought against life insurance companies for racial discrimination involving the sale of small value or "industrial life" insurance policies during the 20th century. Mr. Stoia was lead counsel in *McNeil, et al. v. American General Life Insurance and Accident Insurance Company*, the first major settlement involving discrimination claims which resulted in a $234 million recovery for class members. Mr. Stoia resolved other race-based insurance cases, including *Brown v. United Life*

*Insurance Company* ($40 million), *Morris v. Life Insurance Company of Georgia* ($55 million) and *Thompson v. Metropolitan Life* ($145 million).

Mr. Stoia currently represents numerous large institutional investors who suffered hundreds of millions of dollars in losses as a result of the major financial scandals, including WorldCom and AOL-Time Warner.

Mr. Stoia is a frequent lecturer at ALI-ABA, Practicing Law Institute and American Trial Lawyers Association seminars and conferences.

**PAUL J. GELLER** received his Bachelor of Science degree in Psychology from the University of Florida, where he was a member of the University Honors Program. Mr. Geller then earned his law degree, with Highest Honors, from Emory University School of Law. At Emory, Mr. Geller was an Editor of the Law Review, was inducted into the Order of the Coif legal honor society, and was awarded multiple American Jurisprudence Book Awards for earning the highest grade in the school in a dozen courses.

After spending several years representing blue chip companies in class action lawsuits at one of the largest corporate defense firms in the world, Mr. Geller was a founding partner and head of the Boca Raton offices of the national class action boutiques Cauley Geller Bowman & Rudman, LLP and Geller Rudman, PLLC. In June 2004, through a merger of Lerach Coughlin and Geller Rudman, PLLC, Mr. Geller opened the Boca Raton, Florida office of the Firm.

In July 2002, Mr. Geller was named by the *National Law Journal* as one of the nation's "40 Under 40" – an honor bestowed upon 40 of the country's top young litigators. In July 2003, Mr. Geller was featured in *Florida Trend* magazine

and the *South Florida Business Journal* as one of Florida's top lawyers.

Mr. Geller is rated AV by Martindale Hubbell (the highest rating available) and has served as Lead or Co-Lead counsel in a majority of the securities class actions that have been filed in the southeastern United States in the past several years, including cases against *Hamilton Bancorp* ($8.5 million settlement), *Prison Realty Trust* (Co-Lead Derivative Counsel; total combined settlement of over $120 million), and *Intermedia Corporation* ($38 million settlement). Mr. Geller is currently one of the court-appointed Lead Counsel in cases involving the alleged manipulation of the asset value of some of the nations largest mutual funds, including *Hicks v. Morgan Stanley & Co.*, Case No. 01 Civ. 10071 (S.D.N.Y.), *Abrams v. Van Kampen Funds, Inc.*, Case No. 01 C 7538 (N.D. Ill.), and *In re Eaton Vance Securities Litigation*, Case No. C.A. No. 01-10911 (D. Mass.). Mr. Geller is also heavily involved in corporate governance litigation. For example, Mr. Geller recently represented a shareholder of Applica, Inc. who was concerned with allegedly reckless acquisitions made by the company. Mr. Geller and his partners secured a settlement that required Applica to establish a new independent acquisitions committee charged with conducting due diligence and approving future acquisitions, even though such a committee is not required by SEC regulations. In another corporate governance lawsuit, Mr. Geller and his co-counsel challenged the independence of certain members of a special committee empaneled by Oracle Corp. to look into certain stock sales made by its Chairman and Chief Executive, Larry Ellison. After Delaware Chancery Court Vice Chancellor Leo E. Strine issued an order agreeing that the special committee was "fraught with conflicts," the *Wall Street Journal* called the decision "one of the most far-reaching ever on corporate governance."

Mr. Geller has also successfully represented consumers in class action litigation. He was personal counsel to the lead plaintiff in *Stoddard v. Advanta*, a case that challenged the adequacies of interest rate disclosures by one of the nation's largest credit card companies ($11 million settlement) and was personal counsel to one of the lead plaintiffs in the American Family Publishers sweepstakes litigation, which alleged that the defendant misled consumers into thinking they would win a lottery if they purchased magazine subscriptions ($38 million settlement).

During the past few years, several of Mr. Geller's cases have received regional and national press coverage. Mr. Geller has appeared on CNN's Headline News, CNN's Moneyline with Lou Dobbs, ABC, NBC and FOX network news programs. Mr. Geller is regularly quoted in the financial press, including the *New York Times*, the *Wall Street Journal*, the *Washington Post*, and *Business Week*.

Mr. Geller has been or is a member of the Association of Trial Lawyers of America, the Practicing Law Institute, the American Bar Association, the Palm Beach County Bar Association (former Member of Bar Grievance Committee) and the South Palm Beach County Bar Association (former Co-Chair of Pro Bono Committee).

**SAMUEL H. RUDMAN** received his Bachelor of Arts degree in Political Science from Binghamton University in 1989 and earned his juris doctorate from Brooklyn Law School in 1992. While at Brooklyn Law School, Mr. Rudman was a Dean's Merit Scholar and a member of the Brooklyn Journal of International Law and the Moot Court Honor Society.

Upon graduation from law school, Mr. Rudman joined the Enforcement Division of the United States Securities & Exchange Commission in its New York Regional Office as a staff attorney. In his position as a staff attorney, Mr. Rudman was responsible for numerous investigations and prosecutions of violations of the federal securities laws. Thereafter, Mr. Rudman joined one of the largest corporate law firms in the country, where he represented public companies in the defense of securities class actions and also handled several white collar criminal defense matters.

Shortly after the passage of the Private Securities Litigation Reform Act of 1995, Mr. Rudman joined the firm of Milberg Weiss, where he was one of the youngest lawyers ever to be made a partner at the firm and was responsible for the investigation and initiation of securities and shareholder class actions. In addition, Mr. Rudman developed an expertise in the area of lead plaintiff jurisprudence and has been responsible for numerous reported decisions in that area of securities law.

Mr. Rudman continues to focus his practice in the area of investigating and initiating securities and shareholder class actions and also devotes a considerable amount of time to representing clients in ongoing securities litigation.

**DARREN J. ROBBINS** received his Bachelor of Science and Master of Arts degrees in Economics from the University of Southern California. Mr. Robbins received his J.D. degree from Vanderbilt Law School, where he served as the Managing Editor of the *Vanderbilt Journal of Transnational Law*.

Mr. Robbins oversees Lerach Coughlin's merger and acquisition practice. Mr. Robbins has extensive experience in federal and state securities class action litigation. Mr. Robbins

served as one of the lead counsel in the *In re Prison Realty Sec. Litig.* ($120+ million recovery), *In re Dollar General Sec. Litig.* ($172.5 million recovery) and *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Hanover Compressor Co.* ($85+ million recovery). Mr. Robbins currently represents institutional and individual investors in securities actions in state and federal courts across the country, including The Regents of the University of California in the *Enron* litigation and numerous public pension funds in the *WorldCom* bond litigation.

Mr. Robbins is a frequent speaker at conferences and seminars concerning securities matters and shareholder litigation across the country.

**KEITH F. PARK** graduated from the University of California at Santa Barbara in 1968 and from the Hastings College of Law of the University of California in 1972.

Mr. Park is responsible for the recoveries in more than 1,000 securities class actions, including actions involving: Dollar General ($162 million recovery); Mattel ($122 million recovery); Prison Realty ($105 million recovery); Honeywell (in addition to the $100 million recovery, obtained Honeywell's agreement to adopt significant corporate governance changes relating to compensation of senior executives and directors, stock trading by directors, executive officers and key employees, internal and external audit functions, and financial reporting and board independence); Sprint (in addition to $50 million recovery, obtained important governance enhancements, including creation of "Lead Independent Director" and expensing of stock options); Hanover Compressor (on top of $85 million recovery, obtained the following governance enhancements, among others: direct shareholder nomination of Board and mandatory rotation of audit firm); 3COM ($259 million recovery); Chiron ($43 million recovery); MedPartners ($56 million recovery); NME ($60.75 million recovery); and TCI ($26.5 million recovery).

He is admitted to practice in California and New York. He is admitted to practice in California and New York.

**HELEN J. HODGES** received her Bachelor of Science degree in accounting from Oklahoma State University in 1979. While attending Oklahoma State, Ms. Hodges obtained her private pilot's license and in 1980 was a member of Oklahoma State's flying team, which won top honors at the National Intercollegiate Flying Association competition. Ms. Hodges became a

certified public accountant in 1982 and received her Juris Doctor degree from the University of Oklahoma in 1983, where she was the Managing Editor of the Law Review. She was admitted to the State Bars of Oklahoma in 1983 and California in 1987.

Before partnership with Lerach Coughlin, Ms. Hodges was a partner with Milberg Weiss. Formerly, she was staff accountant with Arthur Andersen & Co. and served as the law clerk for the *Penn Square* cases in the Western District of Oklahoma. Ms. Hodges has been involved in numerous securities class actions, including *Knapp v. Gomez*, Civ. No. 87-0067-H(M) (S.D. Cal.), in which a plaintiffs' verdict was returned in a Rule 10b-5 class action; *National Health Labs*, which was settled for $64 million; and *Thurber v. Mattel*, which was settled for $122 million.

**REED R. KATHREIN**, prior to his partnership with Lerach Coughlin, was partner of the San Francisco office of Milberg Weiss, which he opened in 1994. For the past 15 years, he has focused his practice on complex and class action litigation, principally involving securities or consumer fraud. He was lead counsel in numerous state as well as federal court actions around the country, including co-lead counsel in the *In re 3Com Sec. Litig.* which settled for $259 million.

Mr. Kathrein publishes and lectures extensively in the fields of litigation, consumer and securities law, class actions, and international law. He annually co-chairs the Executive Enterprises program for corporate officers and counsel entitled, "Dealing With Analysts and the Press." He has spoken to the American Bar Association (ABA), the American Business Trial Lawyers Association (ABTLA), the Consumer Attorneys of California (CAOC), the Practicing Law Institute (PLI), the Securities Law Institute, the National

Investor Relations Institute (NIRI), state and local bar groups, private seminar organizations and corporations. He testified before the Senate Foreign Relations Committee on behalf of the American Bar Association in favor of advice and consent to ratification of treaties on international sales, arbitration, evidence and service of process. He testified before the California Assembly and Senate Committees on Y2K litigation, the unfair trade practice act and changes in the business judgment rule. He actively fought the passage of the Private Securities Litigation Reform Act of 1995 (PSLRA) and the Securities Litigation Uniform Standard Act of 1998. Most recently, he worked behind the scenes to shape the Sarbanes–Oxley Act of 2002 on corporate responsibility and accountability.

He served as chairman of the Private International Law Committee of the American Bar Association from 1984-1990, as a director and officer of the International Business Counsel Mid-America from 1983-1988, where he also chaired the policy committee. He acted as an advisor to the U.S. State Department's Advisory Committee on Private International Law from 1984-1990. He is a member of the executive committee of the National Association of Securities and Commercial Law Attorneys (NASCAT), and since 1998 has been a member of the Board of Governors of the Consumer Attorneys of California (CAOC).

Formerly, Mr. Kathrein was a partner in the Chicago law firm Arnstein & Lehr, where he represented national and international corporations in litigation involving antitrust, commercial, toxic tort, employment and product and public liability disputes. Mr. Kathrein graduated from the University of Miami (B.A. *cum laude*, 1974; J.D. 1977) where he served as Editor-in-Chief of the *International Law Journal*.

He is admitted to the Bar of the States of Illinois (1977), Florida (1978) and California (1989).

**ERIC ALAN ISAACSON** received his A.B. *summa cum laude* from Ohio University in 1982. He earned his J.D. with high honors from the Duke University School of Law in 1985 and was elected to the Order of the Coif. Mr. Isaacson served as a Note and Comment Editor for the *Duke Law Journal*, and in his third year of law school became a member of the moot court board. After graduation Mr. Isaacson clerked for the Honorable J. Clifford Wallace of the United States Court of Appeals for the Ninth Circuit.

In 1986, Mr. Isaacson joined the litigation department of O'Melveny & Myers, where his practice included cases involving allegations of trademark infringement, unfair business practices and securities fraud. He served as a member of the trial team that successfully prosecuted a major trademark-infringement action.

Prior to his partnership at Lerach Coughlin, Mr. Isaacson was a partner at Milberg Weiss, where he took part in prosecuting many securities-fraud class actions. He was a member of the plaintiffs' trial team in *In re Apple Computer Sec. Litig.*, No. C 84-20198(A)-JW (N.D. Cal.), for example.

Since the early 1990s, his practice has focused on appellate matters in cases before the California Courts of Appeal, the California Supreme Court, the United States Court of Appeals and the United States Supreme Court. *See, e.g.*, *Lone Star Ladies Investment Club v. Schlotzsky's Inc.*, 238 F.3d 363 (5th Cir. 2001); *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076 (9th Cir. 1999); *Warshaw v. Xoma Corp.*, 74 F.3d 955 (9th Cir. 1996); *Fecht v. Price Co.*, 70 F.3d 1078 (9th Cir. 1995); *Mangini v. R.J. Reynolds Tobacco Co.*, 7 Cal. 4th 1057 (1994).

Mr. Isaacson's publications include: "Pleading Scienter Under Section 21D(b)(2) of the Securities

Exchange Act of 1934: Motive, Opportunity, Recklessness and the Private Securities Litigation Reform Act of 1995" (co-authored with William S. Lerach), 33 San Diego Law Review 893 (1996); "Securities Class Actions in the United States" (co-authored with Patrick J. Coughlin), in William G. Horton & Gerhard Wegen, editors, *Litigation Issues in the Distribution of Securities: An International Perspective* 399 (Kluwer International/International Bar Association, 1997); "Pleading Standards Under the Private Securities Litigation Reform Act of 1995: The Central District of California's *Chantal* Decision" (co-authored with Alan Schulman & Jennifer Wells), *Class Action & Derivative Suits*, Summer 1996, at 14; "Commencing Litigation Under the Private Securities Litigation Reform Act of 1995" (co-authored with Patrick J. Coughlin), in Jay B. Kasner & Bruce G. Vanyo, editors, *Securities Litigation 1996* 9-22 (Practising Law Institute 1996); "The Flag Burning Issue: A Legal Analysis and Comment," 23 Loyola of Los Angeles Law Review 535 (1990).

Mr. Isaacson has received recognition for his *pro bono* work from the California Star Bar and the San Diego Volunteer Lawyer Program. He has served as a member of the Board of Directors of the San Diego Foundation for Change since January of 2004.

Mr. Isaacson has been a member of the California Bar since 1985. He also is admitted to practice before the United States Supreme Court, the United States Courts of Appeals for the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits, and before all federal district courts in the State of California.

**MARK SOLOMON** is a partner at Lerach Coughlin. Prior to joining Lerach Coughlin, Mr. Solomon was a partner at Milberg Weiss Bershad Hynes & Lerach LLP. He earned his law degrees from

Trinity College, Cambridge University, England (1985), Harvard Law School (1986) and the Inns of Court School of Law, England (1987). He is admitted to the bars of England and Wales (Barrister), Ohio and California, as well as to various U.S. Federal District and Appellate Courts.

Before attending Trinity College in England, Mr. Solomon served as a British police officer. After qualifying as a barrister, and prior to joining Milberg Weiss in September 1993, he practiced at the international firm Jones Day Reavis & Pogue in Cleveland, Ohio followed by practice at the Los Angeles office of New York's Stroock & Stroock & Lavan. At those firms Mr. Solomon's representations included the defense of securities fraud and other white-collar crimes, antitrust, copyright, commercial and real estate litigation and reinsurance arbitration. While practicing in Los Angeles, Mr. Solomon took to trial, and won, complex commercial contract and real estate actions in respectively, the Orange County and Los Angeles Superior Courts.

Since 1993, Mr. Solomon has spearheaded the prosecution of many significant cases. He has obtained substantial recoveries and judgments through settlement, summary adjudications and trial. He litigated, through trial, *In re Helionetics*, No. SACV-94-1069-AHS(EEx) (C.D. Cal.), where he and his trial partner, Paul Howes, won a unanimous $15.4 million jury verdict in November 2000. He has led the litigation of many other cases, among them *In re Informix Corp. Sec. Litig.*, No. C-97-1289-CRB (N.D. Cal.) ($142 million recovery); *Rosen, et al. v. Macromedia, Inc., et al.*, No. 988526 (Cal. Super.Ct, County of San Francisco) ($48 million recovery); *In re Community Psychiatric Centers Sec. Litig.*, No. SACV-91-533-AHS(EEx) (C.D. Cal.) ($42.5 million recovery); *In re Advanced Micro Devices Sec. Litig.*, No. C-93-20662-RPA(PVT) (N.D. Cal.) ($34

million recovery); *In re Tele-Communications, Inc. Sec. Litig.*, No. 97CV421 (Arapahoe Dist. Ct. Colo.) ($33 million recovery); *In re Home Theater Sec. Litig.*, No. SACV-95-858-GLT(EEx) (C.D. Cal.) ($22.5 million judgment); *In re Gupta Corporation Sec. Litig.*, No. C-94-1517-FMS (N.D. Cal.) ($15 million recovery); *In re Radius Sec. Litig.*, No. C-92-20597-RPA(EAI) (N.D. Cal.); *In re SuperMac Technology, Inc. Sec. Litig.*, No. C-94-20206-RPA(PVT) (N.D. Cal.) (combined recovery of $14 million); *Markus, et al. v. The North Face, et al.*, No. 99-2-473 (D.C. Colo.) ($12.5 million recovery); *In re Brothers Gourmet Coffees, Inc. Sec. Litig.*, No. 95-8584-CIV-Ryskamp (C.D. Fla.) ($9 million recovery); *Anderson, et al. v. EFTC, et al.*, No. 98-CV-962 (County of Weld District Ct., Colo.) ($9 million recovery); *Sharma v. Insignia*, No. CV757058 (Super. Ct., Santa Clara County) ($8 million recovery); *In re Medeva Sec. Litig.*, No. 93-4376-KN(AJWx) (C.D. Cal.) ($6.75 million recovery); *In re Flir Systems Inc. Sec. Litig.*, No. CV-00-360-HA (D. Or.) ($6 million recovery); *In re Nike, Inc. Sec. Litig.*, No. CV-01-332-KI (D. Or.) ($8.9 million recovery); *Hayley, et al. v. Parker, et al.*, No. CV-02-9721-RGK(PLAx) (D.C. Cal.) ($16.4 million recovery).

Mr. Solomon chaired the American Bar Association Directors and Officers Liability Sub-Committee and the Accountants Liability Sub-Committee between 1996 and 2001.

**RANDI D. BANDMAN** is a partner at Lerach Coughlin whose responsibilities include the management of the Los Angeles office and involvement in the firm's Institutional Investor Department. Ms. Bandman received her Juris Doctor degree from the University of Southern California in 1989 and her Bachelor of Arts in English from the University of California at Los Angeles in 1986. Having been associated with the Lerach Coughlin lawyers for more than 12 years, Ms. Bandman's practice has focused on securities

and consumer class actions in both state and federal court. She has represented shareholders of companies in industries as diverse as aircraft manufacturing, battery technology, and computer software. These cases, which yielded significant recoveries for the plaintiffs, were against such companies as National Health Labs ($64 million); Sybase ($28.5 million); Unocal ($47.5 million); Sunrise Medical ($20 million); Valence ($20 million); and Coeur d'Alene ($13 million). Ms. Bandman was responsible for running one of the largest class actions in the country over a four-year period against the Boeing Company which settled for more than $90 million. Ms. Bandman was also an early member of the team that directed the prosecution of the cases against the tobacco companies.

Using her extensive experience in asserting claims for injured investors, Ms. Bandman lectures and advises union and public funds both domestically and internationally on their options for seeking redress for losses due to fraud sustained in their pension portfolios. Ms. Bandman is currently interfacing with numerous public and union funds including those workers for various States and Municipalities, and the Entertainment Industry, as well as trades such as Sheetmetal, Construction, Airconditioning, Food and Hospitality, Plumbers, and Teamsters. Ms. Bandman is also representing shareholders in a class action against Vivendi Universal for allegedly misrepresenting their financial crisis to investors while engaging in a multi-billion dollar acquisition spree.

Ms. Bandman has served as a lecturer on numerous matters concerning securities litigation to attorneys for continuing legal education, as well as a panelist for the Practicing Law Institute.

**THEODORE J. PINTAR** received his B.A. from the University of California at Berkeley in 1984 where

he studied Political Economies of Industrial Societies. Mr. Pintar received his J.D. from the University of Utah College of Law in 1987 where he was Note and Comment Editor of the *Journal of Contemporary Law* and the *Journal of Energy Law and Policy*. Formerly, Mr. Pintar was associated with the firm of McKenna, Conner & Cuneo in Los Angeles, California, where he specialized in commercial and government contracts defense litigation. Mr. Pintar is co-author of "Assuring Corporate Compliance with Federal Contract Laws and Regulations," Corporate Criminal Liability Reporter, Vol. 2 (Spring 1988).

Prior to partnership with Lerach Coughlin, Mr. Pintar was a partner with Milberg Weiss, where he worked for 14 years. Mr. Pintar participated in the successful prosecution of numerous securities fraud class actions and derivative actions, including participation on the trial team in *Knapp v. Gomez*, No. 87-0067-H(M) (S.D. Cal.), which resulted in a plaintiff's verdict. Mr. Pintar also participated in the successful prosecution of numerous consumer class actions, including (i) actions against major life insurance companies such as Manulife ($555 million settlement value) and Principal Life Insurance Company ($379 million settlement value), (ii) actions against major homeowners insurance companies such as Allstate ($50 million settlement) and Prudential Property and Casualty Co. ($7 million settlement), and (iii) actions against Columbia House ($55 million settlement value) and BMG ($10 million settlement value), a direct marketer of CDs and cassettes.

Mr. Pintar is a member of the State Bar of California and the San Diego County Bar Association.

**JOY ANN BULL** received her J.D., *magna cum laude*, from the University of San Diego in 1988. She was a member of the University of San Diego National Trial Competition Team and *San Diego Law Review*. Ms. Bull focuses on the litigation of complex securities and consumer class actions. For nine years, Ms. Bull has specialized in negotiating and documenting complex settlement agreements and obtaining the required court approval of the settlements and payment of attorneys' fees. These settlements include: *In re Dole Shareholders' Litig.*, No. BC281949 (Cal. Super. Ct., Los Angeles County) ($172 million recovery plus injunctive relief); *Lindmark v. American Express*, No. 00-8658-JFW(CWx) (C.D. Cal.) ($38 million cash payment plus injunctive relief); *In re Disposable Contact Lens Antitrust Litig.*, MDL 1030 (M.D. Fla.) (cash and benefits package over $90 million plus injunctive relief); *In re LifeScan, Inc. Consumer Litig.*, No. C-98-20321-JF(EAI) (N.D. Cal.) ($45 million cash recovery); *In re Bergen Brunswig Corp. Sec. Litig.*, No. SACV-99-1305-AHS(ANx) (C.D. Cal.) ($27.9 million cash recovery); *Hall v. NCAA*, No. 94-2392-KHV (D. Kan.) ($54.4 million cash recovery); *In re Glen Ivy Resorts, Inc.*, No. SD92-16083MG (Banker. Ct. C.D. Cal.) ($31 million cash recovery); and *In re Advanced Micro Devices Sec. Litig.*, No. C-93-20662-RPA(PVT) (N.D. Cal.) ($34 million cash recovery).

**BONNY E. SWEENEY** received her Bachelor of Arts degree from Whittier College in 1981 and a Master of Arts degree from Cornell University in 1985. She graduated *summa cum laude* from Case Western Reserve University School of Law in 1988, where she served as an editor of the Law Review and was elected to the Order of the Coif.

Ms. Sweeney was with Milberg Weiss for eight years and was a partner prior to her partnership with Lerach Coughlin. Formerly, she practiced in the Litigation Department of the Boston law firm of Foley, Hoag & Eliot. Ms. Sweeney specializes in antitrust and unfair competition litigation. Ms. Sweeney participated in the prosecution of several antitrust and unfair competition cases

that have resulted in significant settlements, including *In re NASDAQ Market-Makers Antitrust Litig.*, MDL 1023 (S.D.N.Y.), which settled for $1.027 billion in 1997, the largest antitrust settlement ever; *In re Airline Ticket Comm'n Antitrust Litig.*, MDL 1058 (D. Minn.), which settled for more than $85 million in 1996; and *In re LifeScan, Inc. Consumer Litig.*, No. C-98-20321-JF(EAI) (N.D. Cal.), which settled just before trial for $45 million. Ms. Sweeney was also one of the trial counsel for a class of coaches in *Hall v. NCAA*, No. 94-2392-KHV (D. Kan.), an antitrust class action that resulted in a $67 million jury verdict in three consolidated cases after a three-week trial.

Ms. Sweeney has served on the Executive Committee of the Antitrust and Unfair Competition Law Section of the California State Bar since 2002, and is currently Vice Chair of Antitrust Programs. She also lectures on California's Unfair Competition Law and antitrust topics. In 2003, Ms. Sweeney was a recipient of the Wiley M. Manuel Pro Bono Services Award and the San Diego Volunteer Lawyer Program Distinguished Service Award.

Ms. Sweeney is admitted to practice in California and Massachusetts, and is a member of the Antitrust Section of the American Bar Association, the Antitrust and Unfair Competition Section of the California Bar Association and the San Diego County Bar Association.

**TRAVIS E. DOWNS III** received his B.A. in History, *cum laude*, from Whitworth College in 1985, and received his law degree from University of Washington School of Law in 1990. Mr. Downs specializes in securities class actions and shareholders' derivative actions. Formerly a partner with Milberg Weiss, he was responsible for the prosecution and recovery of significant

settlements in the following cases: *In re Informix Corp. Sec. Litig.*, No. C-97-1289-CRB (N.D. Cal.) ($137.5 million recovery); *In re MP3.com, Inc. Sec. Litig.*, No. 00-CV-1873-K(NLS) (S.D. Cal.) ($36 million recovery); *In re Conner Peripherals, Inc. Sec. Litig.*, No. C-95-2244-MHP (N.D. Cal.) ($26 million recovery); *In re Silicon Graphics, Inc. II Sec. Litig.*, No. 97-4362-SI (N.D. Cal.) ($20.3 million recovery); *In re J.D. Edwards Sec. Litig.*, No. 99-N-1744 (D. Colo.) ($15 million recovery); *In re Sony Corporation Sec. Litig.*, No. CV-96-1326-JGD(JGx) (C.D. Cal.) ($12.5 million recovery); *In re Veterinary Centers of America, Inc. Sec. Litig.*, No. 97-4244-CBM(MCx) (C.D. Cal.) ($6.75 million recovery); *In re JDN Realty Corp. Derivative Litig.*, No. 00-CV-1853 (N.D. Ga.) (obtained extensive corporate governance enhancements); *In re Hollywood Entertainment Corp. Sec. Litig.*, No. 95-1926-MA (D. Or.) ($15 million recovery); *In re Legato Systems, Inc. Derivative Litig.*, No. 413050 (Cal. Super. Ct., San Mateo Cty.) (obtained extensive corporate governance enhancements); *In re Flagstar Companies, Inc. Derivative Litig.*, No. 736748-7 (Cal. Super. Ct., Alameda County) (obtained extensive corporate governance enhancements). Mr. Downs is a member of the Bar of the State of California and is also admitted to practice before the district courts of the Central, Northern and Southern Districts of California. He is also a member of the American Bar Association and the San Diego County Bar Association. Mr. Downs lectures and participates in professional education programs.

**ALBERT H. MEYERHOFF** has specialized for more than 30 years in labor, civil rights and environmental law. After graduating from Cornell Law School in 1972, he joined California Rural Legal Assistance representing farm workers and the rural poor. These efforts included the landmark case of *CAAP v. Regents of the University of California*, challenging the use of public research funds to promote agricultural

mechanization. He also litigated a host of state and federal civil rights cases involving racial discrimination in employment, voting and public education, including *Maria P. v. Riles*, invalidating a California statute excluding undocumented children from California schools. In 1981, Mr. Meyerhoff joined the Natural Resources Defense Council (NRDC), a national environmental organization, as Director of their Public Health Program. He specialized in litigation concerning toxic substances and occupational health and brought successful challenges to the continued use of cancer-causing pesticides (*Les v. Reilly*), the exclusion of women of "child-bearing age" from the workplace (*Love v. Thomas*) and the California Governor's failure to comply with Proposition 65, an anti-toxics law (*AFL-CIO v. Deukmejian*). During his 17 years with NRDC, Mr. Meyerhoff testified more than 50 times before the U.S. Senate and House of Representatives.

Mr. Meyerhoff has authored numerous articles for scholarly and general publications, including the *Stanford Law Review*, *EPA Journal*, *Environmental Law Quarterly*, *The New York Times*, *The Washington Post* and *Los Angeles Times*; has appeared regularly on such programs as CBS News 60 Minutes, ABC 20/20, NBC Dateline, Good Morning America, The Today Show and The NewsHour with Jim Lehrer; and has been an invited speaker at the Harvard Business School, the National Academy of Sciences, the American Academy of Sciences and the AFL-CIO.

Since 1998, Mr. Meyerhoff has been lead counsel in several labor and environmental cases, including *UNITE v. The Gap*, contesting the sale of garments manufactured under sweatshop conditions in the Commonwealth of the Mariana Islands, and *Public Citizen v. US DOT*, challenging cross border trucking from Mexico to conform to NAFTA but in violation of U.S. environmental laws.

Mr. Meyerhoff recently was selected "Trial Lawyer of the Year" by Trial Lawyers for Public Justice and a lifetime achievement award from the ACLU.

**G. PAUL HOWES**, after Marine Corps Vietnam service, received his B.A. with distinction from the University of New Mexico, was elected to Phi Beta Kappa and Phi Kappa Phi, and was the tympanist for the New Mexico Symphony Orchestra. He received his J.D. and M.A. in Public Administration from the University of Virginia. He served as a Special Assistant to the Director of the FBI, Judge William H. Webster, and then as a law clerk to Judge Roger Robb, United States Circuit Court of Appeals for the District of Columbia Circuit. He was an ABC News correspondent for the Washington Bureau and then served for 11 years as an Assistant U.S. Attorney for the District of Columbia, primarily prosecuting complex drug-organization homicides. He is a member of the New Mexico, District of Columbia, and California bars.

**SPENCER A. BURKHOLZ** received his B.A. degree in Economics, *cum laude*, from Clark University in 1985, where he was elected to Phi Beta Kappa, and received his law degree from University of Virginia School of Law in 1989. Mr. Burkholz specializes in securities class actions. A former partner of Milberg Weiss, he has recovered settlements in the following recent cases: *3Com* ($259 million); *Vesta Insurance* ($78 million); *Samsonite* ($24 million); *Emulex* ($39 million); *Mossimo* ($13 million); *Triteal* ($13.8 million); *Price Company* ($15 million); *Stratosphere Corp.* ($9 million); and *IMP* ($9.5 million). Mr. Burkholz was also on the trial team in *Long v. Wells Fargo*. Mr. Burkholz is currently representing large public and multi-employer pension funds

seeking to recover for their investments in WorldCom bonds. Mr. Burkholz is a member of the California bar and has been admitted to practice in numerous federal courts throughout the country.

**TIMOTHY G. BLOOD** graduated *cum laude* and with honors in economics from Hobart College in 1987 and the National Law Center of George Washington University in 1990. He was elected to Phi Beta Kappa, Omicron Delta Epsilon (economics) and the Moot Court Board (first year honors).

Prior to partnership with Lerach Coughlin, Mr. Blood was a partner with Milberg Weiss. Mr. Blood specializes in consumer fraud and unfair competition litigation with a sub-specialty in actions brought by policyholders against life and property and casualty insurers for deceptive sales practices, racial discrimination and systematic failures in claims adjustment. Mr. Blood has been involved in a number of cases that have resulted in significant settlements, including *McNeil v. American General Life & Accident Insurance Company* ($234 million), *Lee v. USLife Corporation* ($148 million), *Garst v. Franklin Life Insurance Company* ($90.1 million), *In re General American Sales Practices Litigation* ($67 million), *Williams v. United Insurance Company of America* ($51.4 million); and *Sternberg v. Apple Computer, Inc.* ($50 million).

Mr. Blood is admitted to practice in California and in the U.S. Courts of Appeals for the Fifth, Sixth, Eighth, Ninth and Eleventh Circuits and the U.S. District Courts for the Southern, Central, Eastern and Northern Districts of California. He is a member of the San Diego County and American Bar Associations, the State Bar of California, the Association of Business Trial Lawyers, the Association of Trial Lawyers of

America and the Consumer Attorneys of California.

**ARTHUR C. LEAHY** graduated with a B.A. in Business from Point Loma College in 1987. In 1990, Mr. Leahy graduated *cum laude* and received a J.D. from the University of San Diego School of Law, where he served as Managing Editor of the Law Review. While in law school, Mr. Leahy authored an article published in the *San Diego Law Review* and other articles published in another Law Journal. In addition, he served as a judicial extern for the Honorable J. Clifford Wallace of the U.S. Court of Appeals for the Ninth Circuit. After law school, Mr. Leahy served as a judicial law clerk for the Honorable Alan C. Kay of the U.S. District Court for the District of Hawaii.

Prior to partnership with Lerach Coughlin, Mr. Leahy was a partner with Milberg Weiss where for eight years he worked on securities fraud and consumer class actions in which his clients recovered millions of dollars. Mr. Leahy is a member of the California Bar, and has been admitted in numerous federal courts throughout the country.

**FRANK J. JANECEK, JR.** received his Bachelor of Science degree in Psychology from the University of California at Davis in 1987, and his Juris Doctor degree from Loyola Law School in 1991. He is admitted to the bar of the State of California, the district courts for all districts California, and to the U.S. Court of Appeals for the Sixth, Ninth and Eleventh Circuits. Prior to joining Lerach Coughlin, Mr. Janecek was a partner with Milberg Weiss, where, for 11 years he practiced in the area of consumer, Proposition 65, taxpayer and tobacco litigation. He has participated as a panelist and a speaker in continuing legal education programs relating to California's Unfair Competition laws, public

enforcement tobacco litigation and challenging unconstitutional taxation schemes.

Mr. Janecek litigated several Proposition 65 actions, including *People ex. rel. Lungren v. Superior Court*, 14 Cal. 4th 294 (1996), which was jointly prosecuted with the Attorney General's office. These actions resulted in the recovery of more than $10 million in disgorgement and/or civil penalties and warnings to consumers of their exposure to cancer causing agents and reproductive toxins. Mr. Janecek chaired several of the litigation committees in California's tobacco litigation which resulted in the $25.5 billion recovery for California and its local entities. Mr. Janecek also handled a constitutional challenge to the State of California's Smog Impact Fee, in the case *Ramos v. Department of Motor Vehicles*, No. 95AS00532 (Sacramento Super. Ct.). As a result of the *Ramos* litigation, more than a million California residents received full refunds, plus interest, totaling $665 million.

Mr. Janecek is the co-author with Patrick J. Coughlin of "A Review of R.J. Reynolds' Internal Documents Produced in *Mangini v. R.J. Reynolds Tobacco Co.*, No. 939359 - The Case that Rid California and the American Landscape of 'Joe Camel'" (January 1998), which, along with more than 60,000 internal industry documents, was released to the public through Congressman Henry Waxman. He is also the author of "California's Unfair Competition Act and Its Role in the Tobacco Wars" (Fall 1997). Mr. Janecek is a member of the American Bar Association, the California Bar Association, the San Diego County Bar Association and the Consumer Attorneys of California and San Diego.

**DAVID J. GEORGE** earned his Bachelor of Arts degree in Political Science from the University of Rhode Island, Summa Cum Laude. Mr. George then graduated at the top of his class at the University of Richmond School of Law. At the University of Richmond, Mr. George was a member of Law Review, was the President of the McNeill Law Society/Order of the Coif, and earned numerous academic awards, including outstanding academic performance in each of his three years there and outstanding graduate.

Before joining Lerach Couglin , he was a partner in the Boca Raton office of Geller Rudman, PLLC. While at Geller Rudman, Mr. George, a zealous advocate of shareholder rights, has been lead and/or co-lead counsel with respect to various securities class action matters, including *In re Cryo Cell International, Inc. Securities Litigation* (M.D. Fla.), *In re Gilead Sciences Securities Litigation* (N.D. Cal.) and *Mobility Electronics Securities Litigation* (D. Ariz.). Mr. George has also acted as lead counsel in numerous consumer class actions. Before joining Geller Rudman, Mr. George spent more than a decade as a commercial litigator with two of the largest corporate law firms in the United States. During that time Mr. George aggressively prosecuted and defended a wide array of complex commercial litigation matters, including securities class action matters, non-compete litigation, fraud claims, and real estate based litigation matters.

Mr. George is licensed to practice law in the state courts of Florida, as well as the United States District Courts for the Southern, Middle and Northern Districts of Florida. He is currently or has been a member of the American Bar Association, the Academy of Florida Trial Lawyers, the Palm Beach County Bar Association and the South Palm Beach County Bar Association.

**SANFORD SVETCOV** is a partner with the Appellate Practice Group of Lerach Coughlin. He was formerly a partner with Milberg Weiss. He

has briefed and argued more than 300 appeals in state and federal court, including *Braxton v. Municipal Court*, 10 Cal. 3d 138 (1973) (First Amendment); *Procunier v. Navarette*, 434 U.S. 555 (1977) (civil rights); *Parker Plaza v. UNUM Insurance*, 941 F.2d 349 (5th Cir. 1991) (real estate); *Catellus v. U.S.*, 34 F.3d 748 (9th Cir. 1994) (CERCLA); *U.S. v. Hove*, 52 F.3d 233 (9th Cir. 1995) (criminal law); *Kelly v. City of Oakland*, 198 F.3d 779 (9th Cir. 1999) (employment law, same gender sexual harassment); *United States v. Henke*, 222 F.3d 633 (9th Cir. 2000) (securities fraud); *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209 (11th Cir. 2001) (civil rights); *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002) (securities fraud).

Mr. Svetcov's professional appellate litigation experience includes securities fraud litigation, CERCLA, CEQA, commercial litigation, Clean Water Act, Civil Rights Act litigation, toxic torts, federal criminal law, California writ practice, employment law and ERISA.

Prior to joining Milberg Weiss in July 2000, Mr. Svetcov was a partner with the firm of Landels Ripley & Diamond, LLP, in San Francisco, from 1989 to 2000. His extensive legal experience includes service as: Chief, Appellate Section, U.S. Attorney's Office, San Francisco, 1984-1989; Attorney-in-Charge, Organized Crime Strike Force, San Francisco, 1981-1984; Chief Assistant U.S. Attorney, San Francisco, 1978-1981; Deputy Attorney General, State of California, 1969-1977; Legal Officer, U.S. Navy, VT-25, Chase Field, Beeville, Texas, 1966-1969; and Deputy Legislative Counsel, Legislature of California, Sacramento, 1965-1966.

Mr. Svetcov is certified as a Specialist in Appellate Practice by the State Bar of California Board of Legal Specialization. He was selected by the Attorney General for the Department of Justice's John Marshall Award for Excellence in Appellate Advocacy in 1986 and is a member and past President (1998) of the American Academy of Appellate Lawyers, and a member of the California Academy of Appellate Lawyers.

In 1999, Chief Justice Rehnquist appointed Mr. Svetcov to a three-year term on the Federal Appellate Rules Advisory Committee. He is also an ex-officio member of the Ninth Circuit Rules Advisory Committee on Rules and Internal Operating Procedures. His other memberships and service commitments to the legal profession include the California Academy of Appellate Lawyers; the Bar Association of San Francisco (Appellate Courts section); the American Bar Association (Appellate Judges Conference) Committee on Appellate Practice; Northern California Federal Bar Association, Board of Directors.

Mr. Svetcov earned his B.A., *cum laude*, from Brooklyn College in 1961 and his J.D. from the University of California, Berkeley, in 1964. He is a member of the Bars of the State of California; the U.S. Supreme Court; the Court of Appeals, Fifth, Eighth, Ninth and Eleventh Circuits; and the U.S. District Court, Northern District of California.

For two decades, he as been active as a teacher and lecturer at continuing legal education programs, including those of the ABA Appellate Practice Institutes (1990-2000); the Ninth Circuit Federal Bar Association Appellate Practice Seminar; and the N.I.T.A. Appellate Advocacy Seminar, and Fifth Circuit Bar Association Appellate Practice Seminars (1991-1999). He has served as an adjunct professor at Hastings College of Law and an instructor in Appellate Advocacy at the U.S. Attorney General's Advocacy Institute (1980-1989).

Sandy Svetcov is also active in community affairs. He has been a member of the San Francisco Jewish Community Relations Council since 1982, its president from 1991-1992, and during the years 1993-1995, he also served on the Northern California Hillel Council.

**MICHAEL J. DOWD** graduated from Fordham University, *magna cum laude*, in 1981 with a B.A. in History and Latin. While at Fordham, he was elected to Phi Beta Kappa. He earned his law degree in 1984 from the University of Michigan School of Law and entered private practice in New York that same year. He was admitted to practice in New York in 1985 and in California in 1988.

Mr. Dowd served as an Assistant U.S. Attorney in the Southern District of California from 1987-1991 and again from 1994-1998. He is a recipient of the Director's Award for Superior Performance as an Assistant U.S. Attorney. Mr. Dowd was formerly a partner with Milberg Weiss.

**DAVID C. WALTON** earned his B.A. in Accounting from the University of Utah and his J.D. from the University of Southern California Law Center in 1993. While there, he was a staff member of the *Southern California Law Review* and a member of the Hale Moot Court Honors Program.

Mr. Walton was formerly a partner with Milberg Weiss where he worked for ten years prior to joining Lerach Coughlin. He is a member of the Bar of California. Mr. Walton, a Certified Public Accountant (California 1992) and Certified Fraud Examiner, who is also fluent in Spanish, focuses on class actions on behalf of defrauded investors, particularly in the area of accounting fraud. He has investigated and participated in the litigation of many large accounting scandals, including Enron, WorldCom, Informix, HealthSouth, Dynegy and Dollar General. In 2003-2004, Mr.

Walton served as a member of the California Board of Accountancy which is responsible for regulating the accounting profession in California.

**RANDALL H. STEINMEYER** earned his undergraduate degree from the University of Southern California (B.S., 1993) and his law degree from Hamline University School of Law (J.D., 1996 *cum laude*), where he was a member of the *Hamline Law Review*. He is the author of "The Interrelationship Between NASD Arbitrations and NASD Disciplinary Proceedings," 281 Practicing Law Institute (1998). Prior to joining Lerach Coughlin, Mr. Steinmeyer was with Milberg Weiss for five years. Formerly, Mr. Steinmeyer headed the securities litigation department of Reinhardt & Anderson in St. Paul, Minnesota. Mr. Steinmeyer is a member of the bar of Minnesota and the U.S. District Court for the District of Minnesota. Mr. Steinmeyer is a former securities broker and held a Series 7 license with the National Association of Securities Dealers.

In 2003, he was a guest lecturer at Oxford University (UK) on the impact of corporate and broker dealer fraud on the investment community. Prior to joining Lerach Coughlin, Mr. Steinmeyer was a partner with Milberg Weiss. He also sits on the Board of Directors of the Hedge Fund Association. He has authored numerous articles on the hedge fund industry and offshore financial community.

Mr. Steinmeyer focuses on class actions on behalf of defrauded investors. Prior to joining Milberg Weiss, Mr. Steinmeyer was appointed lead counsel in several large and complex class actions which resulted in the recovery of tens of millions of dollars for aggrieved investors. Mr. Steinmeyer's reported cases include: *Ganesh LLC v. Computer Learning Centers*, 1998 WL 892622

(E.D. Va. 1998); *Gart v. Electroscope*, 1998 WL 757970 (D. Minn. 1998); *Chill v. Green Tree Financial, Inc.*, 181 F.R.D. 398 (D. Minn. 1998); and *In re Transcrypt Int'l Sec. Litig.*, 1999 U.S. Dist. LEXIS 17540 (D. Neb. 1999).

**JEFFREY W. LAWRENCE** received his B.A. *magna cum laude* from Tufts University in 1976. In 1979, Mr. Lawrence graduated *magna cum laude* with a J.D. from Boston School of Law. He was a staff member of the *Boston University Law Review* from 1977-78, and its editor from 1978-79.

From September 1979 to September 1980, Mr. Lawrence served as law clerk to the Honorable Walter Jay Skinner, U.S. District Court, District of Massachusetts. He was admitted to the Massachusetts bar in 1979, and to the Bar of California in 1991. He is licensed to practice before the U.S. Court of Appeals, First and Ninth Circuits, the U.S. District Court, District of Massachusetts, and the Northern District of California.

From 1983 to 1994, Mr. Lawrence was an Assistant U.S. Attorney, Criminal Division, where he obtained extensive trial experience in white collar crimes, ranging from money-laundering to stock fraud. He was formerly a partner with Milberg Weiss, where he worked for eight years.

**HENRY ROSEN** obtained his B.A. in 1984 from the University of California, after attending American College in Paris. In 1988, Mr. Rosen received his J.D. from the University of Denver, where he was Editor-in-Chief for the *University of Denver Law Review*. Mr. Rosen served as Judicial Law Clerk to the Honorable Jim R. Carrigan, U.S. District Court, District of Colorado, from 1989 to 1990. He is a member of the firm's Hiring Committee and is also a member of the firm's Technology Committee which focuses on applications to digitally manage documents

produced during litigation and internally generate research files.

Prior to joining Lerach Coughlin, Mr. Rosen had 13 years experience prosecuting securities fraud actions with Milberg Weiss on behalf of individual clients and investor classes. Major clients include Minebea Co., Ltd., a Japanese manufacturing company, represented in a securities fraud arbitration against a U.S. investment bank. Mr. Rosen has significant experience prosecuting every aspect of securities fraud class actions and has obtained hundreds of millions of dollars on behalf of defrauded investors. Prominent cases include: *In re Storagetek Sec. Litig.*, No. 92-B-750 (D. Colo.); *In re Access HealthNet Sec. Litig.*, Nos. SACV-96-1250-GLT(EEx) and No. SACV-97-191-GLT(EEx) (C.D. Cal.); *In re Valence Sec. Litig.*, No. C-95-20459-JW(EAI) (N.D. Cal.); *In re J.D. Edwards Sec. Litig.*, No. 99-N-1744 (D. Colo.); *In re Bergen Brunswig Sec. Litig.* and *Bergen Brunswig Capital Litig.*, No. SACV-99-1462-AHS(ANx) (C.D. Cal.); *In re Advanced Lighting Sec. Litig.*, No. 1:99CV8936 (N.D. Ohio); and *In re Safeskin Sec. Litig.*, No. 99cv454-BTM(LSP) (S.D. Cal.).

Mr. Rosen is admitted to the California bar (1991) and the Colorado bar (1988). He is a member of the State Bar of California, the American Bar Association (Litigation Section), the Association of Trial Lawyers of America, the California Trial Lawyers of America, California Trial Lawyers Association and the San Diego Trial Lawyers Association.

**RANDALL J. BARON** was born in Albuquerque, New Mexico in 1964. Mr. Baron received his B.A. from University of Colorado at Boulder in 1987 and his J.D. *cum laude* from University of San Diego School of Law in 1990. He was a member of the *San Diego Law Review* from 1988-1989. Mr. Baron was admitted to the California Bar in 1990

and the Colorado Bar in 1993. Since 1997, Mr. Baron is licensed to practice in Colorado State Court as well as the U.S. District Court for the Southern, Northern and Central Districts of California, as well as the District of Colorado. Formerly, Mr. Baron served as a Deputy District Attorney in Los Angeles County. From 1990-1994, he was a trial deputy in numerous offices throughout Los Angeles County, where he tried over 70 felony cases. From 1990-1994, Mr. Baron was part of the Special Investigation Division of the Los Angeles District Attorneys office where he investigated and prosecuted public corruption cases. Mr. Baron was formerly a partner with Milberg Weiss, where he worked for seven years prior to joining Lerach Coughlin. He specializes in securities litigation and actions for breach of fiduciary duty.

**EDWARD P. DIETRICH**, born White Plains, New York, October 14, 1961; admitted to bar, 1987, New York; 1989, U.S. District Court, Southern and Eastern Districts of New York; 1994, U.S. District Court, Northern District of California; 1995, California and U.S. District Courts, Central District of California; 1997, U.S. District Court, Southern and Eastern Districts of California, U.S. District Court, District of Arizona and U.S. Court of Appeals, Ninth Circuit. Education: Skidmore College (B.A., 1983), Phi Beta Kappa; George Washington University (J.D., 1986). Member, Moot Court Board.

**JACK REISE** earned his Bachelor of Arts degree in History from Binghamton University. He graduated cum laude from University of Miami School of Law where he was an Associate Editor on the University of Miami Inter-American Law Review and was also the recipient of the American Jurisprudence Book Award in Contracts.

Since he began practicing law, Mr. Reise has been devoted to protecting the rights of those who have been harmed by corporate misconduct. Mr. Reise started his legal career representing individuals suffering the debilitating affects of asbestos exposure back in the 1950s and 1960s.

Mr. Reise has since concentrated his practice on class action litigation, including securities fraud, shareholder derivative actions, consumer protection, unfair and deceptive insurance practices and antitrust. Prior to joining the firm, Mr. Reise was a partner at the law firm of Cauley Geller. He was also an associate with Milberg Weiss from 1998-2000.

A substantial portion of Mr. Reise's practice is devoted to representing shareholders in actions brought under the federal securities laws. He is currently serving as Lead Counsel in more than a dozen cases nationwide including *Abrams v. Van Kampen Funds*, No. 01 C 7538 (N.D. Ill.) (case involving a mutual fund that is charged with improperly valuing its net asset value), and *In re NewPower Holdings Securities Litigation*, No. 02 Civ. 1550 (CLB) (S.D.N.Y.), which recently settled with several of the defendants for $26 million.

Mr. Reise has been admitted to the Florida Bar since 1995. He is also admitted to practice before United States Courts of Appeals for the First, Fourth and Eleventh Circuits, as well as the Southern and Middle District Courts of Florida.

**PAMELA M. PARKER** received her B.A. degree in Political Science and French, with a concentration in International Politics, from the State University of New York at Binghamton, and was elected to Phi Beta Kappa. Ms. Parker received a J.D. degree from Harvard Law School *cum laude* in 1982. While at Harvard, Ms. Parker was an Articles Editor of the *Civil Rights/Civil Liberties Law Review*. After graduation, she served as a

law clerk to the Honorable Frank J. Battisti, Chief Judge of the U.S. District Court, Northern District of Ohio. Upon leaving the clerkship, Ms. Parker worked as an associate with the New York firm of Paul, Weiss, Rifkind, Wharton & Garrison. In 1988, Ms. Parker became associated with the New York firm of Lankenau, Kovner & Bickford, specializing in representation of publications, libel defense and First Amendment law.

Ms. Parker was formerly with Milberg Weiss for 13 years. As a partner there, her practice included appellate matters and environmental, consumer fraud and securities fraud litigation. Ms. Parker participated in the successful prosecution of several important actions including *In re The Exxon Valdez*, No. A89-095 (D. Alaska), in which she served as a member of the trial support team, and which resulted in a $5 billion jury verdict; *Pinney v. Great Western Bank, et al.*, No. CV-95-2100-I(RNBx) (C.D. Cal.), in which she served as one of the principal attorneys for plaintiffs and which resulted in a settlement of $17.2 million, and *Does I, et al. v. The Gap, Inc., et al.*, No. 01 0031 (D. Northern Mariana Islands), in which she was the lead prosecuting attorney and which resulted in a $20 million settlement, including a precedent-setting Monitoring Program to monitor labor and human rights practices in Saipan garment factories. In July 2003, Ms. Parker was named Trial Lawyer of the Year by the Trial Lawyers for Public Justice, in recognition of her work on the case in the Northern Mariana Island.

Ms. Parker is a member of the Appellate Practice Group of Lerach Coughlin. She has worked on a variety of appellate matters before numerous courts, including the U.S. Courts of Appeal for the Fifth, Sixth, Ninth and Tenth Circuits, and the appellate courts of California, Alabama, Ohio and Tennessee. She is a Lawyer Representative to the Ninth Circuit Judicial Conference.

Ms. Parker is admitted to practice in California and New York. She has been an active member of the Federal Bar Association, the San Diego County Bar Association and the Lawyers Club of San Diego, and also holds memberships with the American Bar Association and California Women Lawyers. She sits on the Board of Directors for the Legal Aid Society of San Diego.

**STEVEN W. PEPICH** received his B.S. in Economics from Utah State University in 1980 and his J.D. from De Paul University in 1983. Mr. Pepich is admitted to practice before the Courts of California and the District Court for the Southern, Central, Eastern and Northern Districts of California. Formerly a partner with Milberg Weiss, Mr. Pepich has been engaged in a wide variety of civil litigation, including consumer fraud, mass tort, royalty, civil rights, human rights, ERISA and employment law actions, as well as many securities and corporate litigations. He was part of the plaintiffs' trial team in *Mynaf v. Taco Bell Corp.*, which settled after two months of trial on terms favorable to two plaintiff classes of restaurant workers, for recovery of unpaid wages. He was also a member of the plaintiffs' trial team in *Newman v. Stringfellow* where, after a nine-month trial in Riverside, California, all claims for exposure to toxic chemicals were ultimately resolved for $109 million. Mr. Pepich has also participated in the successful prosecution of numerous securities fraud class actions, including *Gohler v. Wood*, No. 92-C-181 ($17.2 million recovery); *In re Advanced Micro Devices Sec. Litig.*, No. C-93-20662-RPA(PVT) ($34 million recovery); *In re Catalyst Semiconductor Sec. Litig.*, No. C-93-2096 ($15 million recovery); *In re Gupta Corporation Sec. Litig.*, No. C-94-1517 ($6 million recovery); *In re Louisiana-Pacific Corporation Sec. Litig.*, No. C-95-707 ($65 million recovery); and *In re Boeing Sec. Litig.*, No. C-97-1715Z ($92 million recovery). Mr. Pepich is a member of the American Bar Association, the San Diego Bar

Association and the Association of Business Trial Lawyers of San Diego. Mr. Pepich co-authored with William S. Lerach "Personal Liability Considerations of Officers and Directors in the Takeover Context," CEB, Business Law Institute, April 1986, and "New Diligence Considerations in the Context of the Federal Securities Laws," CEB Fourth Annual Securities Institute, May 1986.

**LAURA ANDRACCHIO,** prior to joining Lerach Coughlin, was a partner with Milberg Weiss Bershad Hynes & Lerach LLP. Her practice focuses primarily on litigation under the federal securities laws. Ms. Andracchio has litigated dozens of cases against public companies in federal and state courts throughout the country, and has contributed to hundreds of millions of dollars in recoveries for injured investors. Most recently, Ms. Andracchio was a lead member of the trial team in *In re AT&T Corp. Securities Litigation*, which was tried in district court in New Jersey, and which settled after two weeks of trial for $100 million. Prior to trial, Ms. Andracchio was responsible for managing and litigating the case, which was pending for four years.

Ms. Andracchio received her Bachelor of Arts degree from Bucknell University in 1986, and her Juris Doctor with honors from Duquesne University School of Law in 1989. While at Duquesne, Ms. Andracchio was elected to the Order of Barristers and represented the Law School in the National Samuel J. Polsky Appellate Moot Court competition, in which she placed as a finalist, and in the regional Gourley Cup Trial Moot Court competition.

**JOHN K. GRANT** was born in Provo, Utah in 1961. Mr. Grant received his B.A. from Brigham Young University in 1988 and his J.D. from the University of Texas at Austin in 1990. Mr. Grant was admitted to the California bar in 1994.

**KATHLEEN A. HERKENHOFF** received a Bachelor of Arts in English Literature from the University of California at Berkeley in 1989, and received a law degree from Pepperdine University School of Law in 1993. While at Pepperdine, she received American Jurisprudence Awards in Constitutional Law and Agency-Partnership Law. After graduation from Pepperdine, Ms. Herkenhoff was an enforcement attorney with the U.S. Securities and Exchange Commission. Prior to joining Lerach Coughlin, she was a partner with Milberg Weiss. Ms. Herkenhoff is a 1993 admittee to the State Bar of California and has been admitted to practice before the U.S. District Courts for the Northern, Central, Eastern and Southern Districts of California. Ms. Herkenhoff has successfully prosecuted several complex securities class actions, most recently obtaining a $122 million settlement against Mattel, Inc. and several of its former officers and directors.

**KIMBERLY C. EPSTEIN** graduated with a Bachelor of Science in Business Administration from California State University at Hayward in 1988. She attended University of San Francisco School of Law where she was a joint J.D./MBA degree candidate and obtained her Juris Doctor in 1993. Ms. Epstein clerked in the Law and Motion Department of the San Francisco Superior Court for the Honorable William J. Cahill (Ret.). She was admitted to the California bar in 1993 and predominantly practices in the area of securities litigation. Prior to partnership with Lerach Coughlin, Ms. Epstein was a partner with Milberg Weiss where she began her employment in 1994. She is licensed to practice in the state of California and before the U.S. District Courts in Northern and Central California, Arizona, and the U.S. Court of Appeals, Ninth Circuit.

**MICHELLE M. CICCARELLI** represents workers, consumers and shareholders in a broad range of complex class-action litigations for securities fraud, fraudulent business practices, human rights abuses, labor and employment violations, as well as derivative litigation for breaches of fiduciary duties by corporate officers and directors. She is the editor of Lerach Coughlin's Corporate Governance Bulletin and Taking Action - Fighting Corporate Corruption, and the author of Pension Power: How Union Pension Funds Are Recovering Stolen Assets and Changing the Way Public Companies Do Business and "Improving Corporate Governance through Litigation Settlements" (Corporate Governance Review, 2003). She is a frequent lecturer on securities fraud, corporate governance, and other issues of import to institutional investors.

Prior to partnership with Lerach Coughlin, she was a partner at Milberg Weiss, where she participated in the successful prosecution of several important actions, including *Does I, et al. v. The Gap, Inc. et al.*, No. 01-0031 (D.N. Mariana Islands), in which she was one of the lead litigators, spending several months on Saipan working with clients, investigating claims, and obtaining discovery. The case was successfully concluded with a $20 million settlement, including a precedent-setting Monitoring Program to monitor labor and human rights practices in Saipan garment factories.

Formerly, she practiced in Kentucky in the area of labor and employment law. She was the co-editor of the Kentucky Employment Law Letter (1998) and co-author of "Wage and Hour Update" (Lorman 1998). She was also a regular lecturer for the Kentucky Cabinet for Economic Development.

She was a law clerk to the Hon. Sara Walter Combs, Kentucky Court of Appeals (1994-95) after obtaining her J.D. (University of Kentucky 1993). She is a member of the California and Kentucky bars, and is admitted to practice before the U.S. District Courts for both jurisdictions as well as the Sixth Circuit Court of Appeals.

**JAMES I. JACONETTE** was born in San Diego, California in 1967. Mr. Jaconette is one of three partners responsible for the day-to-day prosecution of *In re Enron Corp. Securities Litigation* (S.D. Tex.) and *In re Dynegy, Inc. Securities Litigation* (S.D. Tex.), on behalf of Lead Plaintiff The Regents of the University of California, and the large classes of public investors represented in those actions. Mr. Jaconette has litigated securities class actions and corporate governance/merger & acquisition-related actions since 1995. To date, cases in which Mr. Jaconette executed a primary litigating role, including *In re Informix Corp. Securities Litigation* (N.D. Cal.), resulted in approximately $300 million in settlements, judgments, or common funds that benefited investors.

Mr. Jaconette attended San Diego State University, receiving his B.A. with honors and distinction in 1989 and his M.B.A. in 1992. In 1995, Mr. Jaconette received his J.D. *cum laude* from Hastings College of the Law, University of California, San Francisco. Mr. Jaconette was the Mortar Board Vice President from 1988-1989, a member of the Hastings Law Journal from 1993-1994, and Associate Articles Editor for same from 1994-1995. Mr. Jaconette authored "The Fraud-on-the-Market Theory in State Law Securities Fraud Suits," *Hastings Law Journal*, Volume 46, August, 1995. In 1993, Mr. Jaconette served as law clerk to the Honorable Barbara J. Gamer, and in 1994, as extern to the Honorable William H. Orrick, Jr., District Judge.

In 1995, Mr. Jaconette was admitted to the California bar and licensed to practice before the U.S. District Court, Southern District of California.

**TOR GRONBORG** was born in Portland, Oregon in 1969. Mr. Gronborg received his B.A. in 1991 from the University of California at Santa Barbara and was a recipient of an AFL-CIO history scholarship. In 1992, Mr. Gronborg did graduate work in international relations and strategic studies at the University of Lancaster, UK on a Rotary International Fellowship. Mr. Gronborg received his J.D. from Boalt Hall at the University of California at Berkeley where he was a member of the Moot Court Board.

Mr. Gronborg was admitted to the California bar in 1995, and in 1997 was licensed to practice in the courts of the Ninth Circuit and the Northern, Central and Southern Districts of California. Mr. Gronborg's practice areas at Lerach Coughlin include securities litigation, and campaign and election law.

**THOMAS E. EGLER** was born in Pittsburgh, Pennsylvania in 1967. Mr. Egler received his B.A. from Northwestern University in 1989. Mr. Egler received his J.D. in 1995 from Catholic University of America, Columbus School of Law, where he served as Associate Editor for *Catholic University Law Review* from 1994-1995. From 1995-1997, Mr. Egler was Law Clerk to the Honorable Donald E. Ziegler, Chief Judge, U.S. District Court, Western District of Pennsylvania.

Mr. Egler was admitted to the California bar in 1995 and the Pennsylvania bar in 1996. He is admitted to practice before the U.S. District Courts for the Western District of Pennsylvania, the Northern, Southern and Central Districts of California, and the U.S. Court of Appeals for the Third and Eleventh Circuits.

**PATRICK W. DANIELS** earned his undergraduate degree from the University of California, Berkeley (B.A., *cum laude*, 1993) and his law degree from the University of San Diego School of Law (J.D., 1997). He is the author of "The Capital Formation and Securities Fraud Enforcement Act of 1996: Historic and Economic Perspectives," Joint Interim Hearing, California State Senate Finance, Investment and International Trade and Assembly Banking and Finance Committees, Information Hearing Final Report, at 393 (1997). Admitted to practice: California, 1997.

Mr. Daniels represents workers, consumers and shareholders in a broad range of complex litigation - class actions for fraudulent business practices, human rights abuses, and shareholder actions for defrauded investors. Mr. Daniels represents a number of international public and jointly-trusteed labor-management pension funds, as well as fund managers in securities fraud and individual actions involving Enron, WorldCom and AOL Time Warner, among many other actions. Mr. Daniels has been a featured speaker at pension fund conferences in the United States, Europe, the South Pacific and Australia.

In the human rights area, Mr. Daniels was a member of an international coalition of attorneys and human rights groups who won an historical settlement with major U.S. clothing retailers and manufacturers, including The Gap, Target Corporation and J.C. Penney, on behalf of a certified class of over 50,000 predominantly female Chinese garment workers on the island of Saipan in an action seeking to hold the Saipan garment industry responsible for creating a system of indentured servitude and forced labor in Saipan garment factories. The coalition obtained an agreement for supervision of working conditions in the Saipan factories by an

independent NGO, as well as a substantial monetary award for the workers. In July 2003, several members of the coalition of attorneys were collectively honored as the "Trial Lawyers of the Year" by the Trial Lawyers for Public Justice.

Mr. Daniels is also one of the lead attorneys in historic class action litigation on behalf of U.S. POWs and Chinese and Korean civilians against Japanese corporations that used slave and forced labor during WWII.

**ANDREW J. BROWN** was born in Northern California in 1966. He is a graduate of the University of Chicago (B.A. 1988) and the University of California, Hastings College of Law (J.D. 1992). Upon passing the bar, Mr. Brown worked as a trial lawyer for the San Diego County Public Defender's Office. In 1997, he opened his own firm in San Diego, representing consumers and insureds in lawsuits against major insurance companies. Prior to joining Lerach Coughlin, Mr. Brown was a partner, and had worked for Milberg Weiss for four years. His current practice focuses on representing consumers and shareholders in class action litigation against companies nationwide.

As a partner at Lerach Coughlin, Mr. Brown continues to change the way corporate America does business. He prosecutes complex securities fraud and shareholder derivative actions, resulting in multi-million dollar recoveries to shareholders and precedent-setting changes in corporate practices. Recent examples include *Does I, et al. v. The Gap, Inc., et al.*, No. 010031 (D. Northern Mariana Islands), *Arlia v. Blankenship*, 234 F. Supp. 2d 606 (S.D. W.Va. 2002), and *In re: FirstEnergy Corp. Sec. Litig.*, 316 F. Supp. 2d 581 (N.D. Ohio 2004)

Mr. Brown is admitted to the bars of California and the U.S. District Courts for all Districts in California.

**CHRISTOPHER BURKE** earned his J.D. from the University of Wisconsin in 1993 and his Ph.D. in 1996. His practice areas include antitrust and consumer protection. Formerly a partner with Milberg Weiss, he was a part of the trial teams that successfully prosecuted the *In re Disposable Contact Lens Antitrust Litigation* ($89 million) and *Schwartz v. Visa, et al.* ($170 million).

Prior, he was an Assistant Attorney General at the Wisconsin Department of Justice. He has lectured on law-related topics including constitutional law, law and politics, and civil rights at the State University of New York at Buffalo and at the University of Wisconsin. His book, *The Appearance of Equality: The Supreme Court and Racial Gerrymandering* (Greenwood, 1999), examines conflicts over voting rights and political representation within the competing rhetoric of communitarian and liberal strategies of justification.

**JONATHAN M. STEIN** earned his Bachelor of Science degree in Business Administration from the University of Florida, where he concentrated his studies in Finance. While at Florida, he was selected to join the honor society of Omicron Delta Epsilon, recognizing outstanding achievement in Economics. Mr. Stein earned his juris doctorate from Nova Southeastern University, where he was the recipient of the American Jurisprudence Book Award in Federal Civil Procedure and served as Chief Justice of the Student Honor Court.

Mr. Stein began his practice of law in Fort Lauderdale as a prosecutor in the State Attorney's Office for the Seventeenth Judicial Circuit of Florida, where he handled numerous

jury trials. Before concentrating his practice in class action litigation, he also practiced as a litigator with one of Florida's largest law firms, where he concentrated on fighting insurance fraud. Prior to joining the firm, Mr. Stein was a partner with Geller Rudman, PLLC. Mr. Stein is involved in all aspects of class action litigation, including securities fraud, shareholder class and derivative actions, consumer fraud, products liability and antitrust.

A substantial portion of Mr. Stein's practice is dedicated to the representation of public shareholders of companies whose shares are acquired through management buyouts, leveraged buyouts, mergers, acquisitions, tender offers, and other change-of-control transactions. Mr. Stein has represented clients in seeking to protect shareholders by insuring that they receive maximum compensation for their shares and also by insuring that they receive all necessary information and disclosure concerning the transactions. He has been successful in restructuring many transactions and recovering millions of dollars in additional value for shareholders.

Mr. Stein is licensed to practice law in the state courts of Florida, as well as in the United States District Courts for the Southern and Middle Districts of Florida and the District of Colorado. In addition to these courts and jurisdictions, Mr. Stein regularly works on cases with local counsel throughout the country. Mr. Stein has been or is a member of the Association of Trial Lawyers of America, the American Bar Association, the Palm Beach County Bar Association and the South Palm Beach County Bar Association.

**ROBERT M. ROTHMAN** earned his Bachelor of Arts Degree in Economics from the State University of New York at Binghamton. He then earned his law degree, with Distinction, from Hofstra University School of Law. During law school, Mr. Rothman was a member of the Law Review and was awarded The Dean's Academic Scholarship for completing his first year in the top one percent of his class.

After law school, Mr. Rothman practiced commercial litigation with an international law firm. Having litigated cases involving many of the nation's largest companies, Mr. Rothman has extensive experience in the areas of consumer protection, antitrust, and investment fraud. Mr. Rothman also regularly tries and arbitrates cases. For example, he obtained a multi-million dollar verdict after the trial of a shareholders' derivative case, as well as multi-million dollar judgments on behalf of defrauded investors.

Prior to joining Lerach Coughlin, Mr. Rothman was a partner at Geller Rudman, PLLC where he concentrated his practice on representing shareholders and consumers in class actions.

Mr. Rothman is admitted to practice before the courts of the State of New York, as well as the United States District Courts for the Southern and Eastern Districts of New York. Mr. Rothman is a member of the American Bar Association's Sections of Litigation and Antitrust Law.

**DANIEL DROSMAN** is a partner with Lerach Coughlin. He is a former federal prosecutor with extensive litigation experience before trial and appellate courts. His practice focuses on securities fraud litigation and other complex civil litigation. Mr. Drosman is admitted to practice in New York and California and before federal courts throughout those states.

Mr. Drosman is a native San Diegan who received his B.A. degree in political science from Reed College in 1990 with honors and Phi Beta Kappa. He received his J.D. degree from Harvard Law School in 1993. Following graduation from

law school, Mr. Drosman served for three years as an Assistant District Attorney for the Manhattan District Attorney's Office. While at the Manhattan District Attorney's Office, Mr. Drosman served in both the appellate section, where he briefed and argued over 25 cases to the New York appellate courts, and in the trial section, where he prosecuted a wide variety of street crime.

From 1996 until 1997, Mr. Drosman was an associate in the New York office of Weil, Gotshal & Manges, where he specialized in civil litigation and white collar criminal defense.

In 1997, Mr. Drosman returned to San Diego and became an Assistant U.S. Attorney in the Southern District of California. In the Southern District, Mr. Drosman tried cases before the U.S. District Court and briefed and argued numerous appeals before the Ninth Circuit Court of Appeals. He was a member of the border crimes unit, where he was assigned to investigate and prosecute violations of the federal narcotics and immigration laws, and official corruption cases. During his tenure as an Assistant U.S. Attorney, Mr. Drosman received the Department of Justice Special Achievement Award in recognition of sustained superior performance of duty.

Mr. Drosman was a partner for Milberg Weiss before joining Lerach Coughlin in 2004. Mr. Drosman's practice involves representing defrauded investors in securities class actions, an area in which Mr. Drosman has co-authored a law journal article.

**AZRA Z. MEHDI** earned her Bachelors of Arts in 1992 from the University of Illinois at Chicago with high honors in English and German Literature. She was a member of the Honors College and spent a year at the University of Vienna in Austria. She received her J.D. from DePaul University College of Law in Chicago in 1995. Upon graduation, Ms. Mehdi did an internship at the Austrian law firm of Ortner, Poch & Foramitti. Ms. Mehdi began her employment at Milberg Weiss in 1997 focusing her practice on antitrust litigation and securities fraud litigation. She was a partner at Milberg Weiss prior to her partnership at Lerach Coughlin.

Ms. Mehdi is admitted to practice in New York (1996), California (2002), before the U.S. District Court for the Southern and the Eastern Districts of New York (1997) and the U.S. District Court for the Northern, Central and Southern Districts of California (2002). She is a member of the American Bar Association, the California Bar Association and the San Francisco Bar Association. Ms. Mehdi is fluent in German and Hindi.

**KEVIN K. GREEN** is a member of the firm's Appellate Practice Group. He specializes in appeals and writs in state courts, particularly the California appellate courts.

Mr. Green received his undergraduate degree from the University of California at Berkeley (B.A., with honors and distinction, 1989) and his law degree from Notre Dame Law School (J.D., 1995). After law school, he clerked for the Honorable Theodore R. Boehm, Associate Justice, Supreme Court of Indiana, and the Honorable Barry T. Moskowitz, U.S. District Judge, Southern District of California. In 1999, Mr. Green joined Milberg Weiss, where he became a partner. He then joined Lerach Coughlin when the firm was founded in 2004.

Due to the national scope of the practice, Mr. Green has handled appellate matters in numerous states. His appellate decisions include: *Lebrilla v. Farmers Group, Inc.*, 119 Cal. App. 4th

1070 (2004) (reversing denial of class certification and ordering certification of statewide class); *West Corp. v. Superior Court*, 116 Cal. App. 4th 1167 (2004) (upholding personal jurisdiction over telemarketers sued under California law); *Ritt v. Blanks*, 2003 Ohio App. LEXIS 3297 (Ohio Ct. App. July 10, 2003) (reversing denial of class certification); and *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496 (2003) (addressing "reasonable consumer" standard under California law).

While in law school, Mr. Green authored a student note titled "A Vote Properly Cast? The Constitutionality of the National Voter Registration Act of 1993," 22 Journal of Legislation 45 (1996). He is a member of the San Diego County Bar Association's Appellate Court Committee. He was admitted to the State Bar of California in 1995.

**JONAH H. GOLDSTEIN** is a partner with Lerach Coughlin. Mr. Goldstein was a partner with Milberg Weiss prior to joining Lerach Coughlin in 2004. Formerly, Mr. Goldstein was an Assistant U.S. Attorney for the Southern District of California, where he tried 13 jury trials (including a seven-defendant 11 week trial), and briefed and argued appeals before the Ninth Circuit Court of Appeals.

In 1991, Mr. Goldstein received his B.A. degree in political science from Duke University. He received his J.D. from the University of Denver College of Law in 1995, where he was the Notes & Comments Editor of the University of Denver Law Review. Following graduation from law school, Mr. Goldstein served as a law clerk for the Honorable William H. Erickson on the Colorado Supreme Court.

Mr. Goldstein is admitted to practice in Colorado (1995) and California (1997).

**SHAWN A. WILLIAMS** earned his undergraduate degree from the State University of New York at Albany (B.A. English 1991). He earned his law degree from the University of Illinois College of Law (J.D. 1995). Upon graduation from law school, he served as an Assistant District Attorney in the Manhattan District Attorney's Office (1995-2000) where he spent four years in the trial division prosecuting all levels of street crimes and one year conducting white collar fraud investigations.

Mr. Williams worked for Milberg Weiss for four years and was a partner before joining Lerach Coughlin in 2004. Mr. Williams' practice focuses on class action securities fraud matters. He is admitted to practice in all courts of the State of New York, including the U.S. District Courts for the Southern and Eastern Districts of New York. Mr. Williams is also admitted to practice in all courts of the State of California and the United States Court of Appeals for the Ninth Circuit.

**JOSEPH D. DALEY** received his undergraduate degree from Jacksonville University, and his J.D. from the University of San Diego School of Law. He was a member of the USD Appellate Moot Court Board (1995-96), and has received several awards for written and oral advocacy, including: Order of the Barristers, Roger J. Traynor Constitutional Law Moot Court Team (Best Advocate Award); Philip C. Jessup International Law Moot Court Team (United States National Champions, First Place Regional Team); USD Alumni Torts Moot Court Competition (First Place Overall and Best Brief); the USD Jessup International Law Moot Court Competition (First Place Overall and Best Brief), and the American Jurisprudence Award in Professional Responsibility.

Mr. Daley edited the award-winning Federal Bar Association Newsletter (San Diego chapter) in the

Year 2000, and served as the Year 2000 Chair of San Diego's Co-Operative Federal Appellate Committees ("COFACS"). Mr. Daley co-authored with Susan S. Gonick *The Nonretroactivity of the Private Securities Litigation Reform Act of 1995*, 25 Sec. Regulation L.J. 60 (1997); reprinted in 3 Sec. Reform Act Litig. Rep. 258 (1997) and 25 RICO L. Rep. 819 (1997).

Mr. Daley was admitted to the California Bar in 1996, and is admitted to practice before the U.S. District Courts for the Northern, Southern, Eastern, and Central Districts of California, as well as before the U.S. Courts of Appeals for the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits.

Mr. Daley's practice concentrates on federal appeals. Prior to joining Lerach Coughlin in 2004, Mr. Daley was a partner at Milberg Weiss.

**DOUGLAS R. BRITTON** was born in Los Angeles, California, in 1968. Mr. Britton received his B.B.A. from Washburn University in Topeka, Kansas in 1991 and his J.D., *cum laude*, from Pepperdine University Law School in 1996. Mr. Britton was admitted to the Nevada Bar in 1996 and to the California Bar in 1997 and is admitted to practice in all of the state courts in California, as well as the U.S. District Courts for the Northern, Southern, Eastern, and Central Districts of California. Mr. Britton has been litigating securities class action lawsuits since his admission to the Bar in 1996.

**ELLEN A. GUSIKOFF STEWART** was born in New York, New York in 1964. She received her B.A. in Economics from Muhlenberg College in 1986, and her J.D. from Case Western Reserve University in 1989. Mrs. Stewart was admitted to the California bar in 1989, and is admitted to practice before all federal courts in California, the Sixth

and Ninth Circuit Courts of Appeals and the Western District of Michigan.

Mrs. Stewart currently practices in the firm's settlement department, negotiating and documenting the firm's complex securities, merger and consumer privacy class and derivative actions. Notably, these settlements include, *In re Vesta Insurance Group, Inc. Sec. Litig.*, (N.D. Ala. 2002) ($78 million recovery, to date); *In re Prison Realty Securities Litig.*, (M.D. Tenn. 2001) (over $140 million in cash and stock); *Stanley v. Safeskin Corp.*, (S.D. Ca. 2003) ($55 million recovery); *In re Wisconsin Energy Derivative Litig.*, (Milwaukee County Circuit Court).

**A. RICK ATWOOD, JR.** prosecutes securities class actions, merger-related class actions, and shareholder derivative suits at both the trial and appellate levels. He has successfully represented shareholders in federal and state courts in numerous jurisdictions, including Alabama, California, Colorado, Delaware, Georgia, Hawaii, Illinois, New York, New Jersey, Nevada, North Carolina, Oregon, South Dakota, Texas, Tennessee, Utah, Washington, and Washington, D.C.

Mr. Atwood was born in Nashville, Tennessee in 1965. In 1987, he received a B.A. (with honors) in Political Science from the University of Tennessee at Knoxville. He received a B.A. (with great distinction) in Philosophy from the Katholieke Universiteit Leuven in Leuven, Belgium in 1988. He received his J.D. in 1991 from Vanderbilt University Law School, where he served as Authorities Editor on the Vanderbilt Journal of Transnational Law.

Mr. Atwood was admitted to the California Bar in 1991, and is licensed to practice before the United States District Courts for the Southern, Central and Northern Districts of California. Prior to

joining Lerach Coughlin, Mr. Atwood practiced in the San Diego office of Milberg Weiss, and before that was an associate in the Los Angeles office of Brobeck Phleger & Harrison LLP.

**JONATHAN E. BEHAR** was born in Los Angeles in 1968. In 1991, Mr. Behar received his Bachelor of Arts degree in English Literature from the University of California at Santa Barbara (with High Honors) and his Juris Doctor degree from the University of San Diego School of Law in 1994. He is admitted to the State Bar of California (1994) and the Southern and Central Districts of California (1998 and 2000 respectively). Prior to joining Lerach Coughlin, Mr. Behar practiced law with Milberg Weiss from 1994 to 2004.

As a partner at Lerach Coughlin, Mr. Behar currently practices in the areas of securities, environmental and consumer litigation. While at Milberg Weiss, Mr. Behar was actively involved in the prosecution of two of California's seminal tobacco cases, *Mangini v. R.J. Reynolds Tobacco Company*, the "Joe Camel" case, as well as *Cordova v. Liggett Group, Inc., et al.*, which alleged a 40 year conspiracy by the United States tobacco manufacturers.

**AMBER L. ECK** graduated from Pepperdine University (*magna cum laude*) with a Bachelor of Arts degree in 1990. Upon graduation, she worked for two years at a Los Angeles legal newspaper, the Metropolitan News-Enterprise. Ms. Eck then attended Boston University School of Law, graduating (*magna cum laude*) in 1995. At B.U., Ms. Eck was a member of the Giles Sutherland Rich Intellectual Property Moot Court Team which received honors for Best Brief in the Northeast Region. In addition, she served as Case and Note Editor for the B.U. International Law Journal and Chapter Justice for Phi Alpha Delta.

Ms. Eck practiced law with Milberg Weiss from 1997 to 2004, before joining Lerach Coughlin. Her practice focuses on the prosecution of securities class actions and shareholder derivative suits. In addition, Ms. Eck received the Wiley W. Manuel *pro bono* service award in 1999 and the Distinguished Service Award in 2002 from the County of San Diego for pro bono service. Ms. Eck is a member of the California (1995) and Nevada (1996) bars, and is admitted to practice before the United States District Courts for all districts in both jurisdictions. She served on the Board of Directors for the Barristers Club of San Diego (1996-1997), and is a member of the American Inns of Court, Enright Chapter.

**DENNIS J. HERMAN** is a 1992 graduate of Stanford Law School, where he received the Order of the Coif and the Urban A. Sontheimer Award for graduating second in his class. Mr. Herman practiced law with Milberg Weiss from 2002 to 2004, where he specialized in securities class action litigation on behalf of defrauded investors. Mr. Herman is actively involved in the firm's ongoing prosecution of securities fraud class actions, including those now pending against VeriSign Corp. and The Coca-Cola Company, Inc. He has also participated in the successful prosecution of numerous other securities fraud claims that have resulted in substantial recoveries for investors, including recent actions filed against NorthWestern Corp. (recovery in excess of $40 million), Specialty Laboratories, Inc. ($12 million recovery), Electro-Scientific Industries, Inc. ($9 million), and Commtouch Software, Inc. ($15 million recovery). Mr. Herman also recently concluded the successful representation of the estate of a bankrupt company in lawsuits against its former officers and outside auditor seeking recovery for actions that deepened the company's insolvency before it went bankrupt.

**NANCY M. JUDA** specializes in employee benefits law and works in the firm's Institutional Investor Department. Ms. Juda received her law degree from American University in 1992 and her undergraduate degree from St. Lawrence University in 1988.

Prior to joining Lerach Coughlin (and its predecessor firm), Ms. Juda was employed by the United Mine Workers of America Health & Retirement Funds, where she began her practice in the area of employee benefits law. Ms. Juda was also associated with union-side labor law firms in Washington, D.C., where she represented the trustees of Taft-Hartley pension and welfare funds on qualification, compliance, fiduciary and transactional issues under ERISA and the Internal Revenue Code.

Using her extensive experience representing union pension funds, Ms. Juda advises Taft-Hartley fund trustees regarding their options for seeking redress for losses due to securities fraud. Ms. Juda currently advises trustees of funds providing benefits for members of unions affiliated with the Building and Construction Trades Department of the AFL-CIO, including funds sponsored by the Operative Plasterers and Cement Masons International Association of America and Canada, International Union of Painters and Allied Trades, United Union of Roofers, Waterproofers and Allied Workers and International Union of Elevator Constructors. Ms. Juda also represents workers in ERISA class actions involving breach of fiduciary duty claims against corporate plan sponsors and fiduciaries.

Ms. Juda is licensed to practice in Maryland (1992) and the District of Columbia (1995). She is a member of the National Coordinating Committee for Multi-Employer Plans, the International Foundation of Employee Benefit Plans, the Employee Benefits Committee of the American Bar Association's Section of Labor and Employment Law, and the AFL-CIO Lawyers' Coordinating Committee.

Ms. Juda is the editor of Lerach Coughlin's quarterly newsletter, *Taking Action – Fighting Corporate Corruption.*

**JEFFREY D. LIGHT** was born in Los Angeles, California in 1964. He received his B.S. from San Diego State University in 1987 and his J.D. from the University of San Diego in 1991 *cum laude*. Mr. Light was the recipient of the American Jurisprudence Award in Constitutional Law. He served as law clerk to the Honorable Louise DeCarl Adler, U.S. Bankruptcy Court and the Honorable James Meyers, Chief Judge, Southern District of California, United States Bankruptcy Court. Mr. Light practiced law with Milberg Weiss from 1994 to 2004, before joining Lerach Coughlin. He was admitted to the California bar in 1992 and is admitted to practice before all federal courts in California.

Mr. Light is also a member of the San Diego County Bar Association and is on the Attorney Fee Arbitration Panel. Mr. Light currently practices in the firm's settlement department, negotiating, documenting and obtaining court approval of the firm's complex securities, merger, consumer and derivative actions. These settlements include: *In Re AT&T Corporation Securities Litigation* (D.N.J. 2005) ($100 million recovery); *In re Infonet Corporation Securities Litigation* (C.D. Cal. 2004) ($18 million recovery) and *In re Ashworth, Inc. Securities Litigation* (S.D. Cal. 2004) ($15.250 million recovery).

## OF COUNSEL

**LEONARD B. SIMON** is admitted to practice in California, New York, and the District of Columbia.

Mr. Simon's practice has been devoted heavily to litigation in the federal courts, including both the prosecution and the defense of major class actions and other complex litigation in the securities and antitrust fields. He has argued more than 20 appeals in the federal and state courts of appeal. He has also represented large, publicly traded corporations.

Mr. Simon served as plaintiffs' co-lead counsel in *In re American Continental Corp./Lincoln Savings & Loan Sec. Litig.*, MDL 834 (D. Ariz.) (settled for $240 million), and *In re NASDAQ Market-Makers Antitrust Litig.*, MDL 1023(S.D.N.Y.) (settled for more than one billion dollars). He is currently in a leadership position in the private *Microsoft Antitrust Litigation*, and in the *California Utilities Antitrust Litigation*. He was centrally involved in the prosecution of *In re Washington Public Power Supply System Sec. Litig.*, MDL 551(D. Ariz.), the largest securities class action ever litigated.

Mr. Simon is an Adjunct Professor of Law at Duke University, the University of San Diego, and the University of Southern California law schools. He has lectured extensively on securities, antitrust and complex litigation on programs sponsored by the ABA Section of Litigation, the Practising Law Institute, and ALI-ABA, and at UCLA Law School, University of San Diego Law School, and Stanford Business School. He is an editor of California Federal Court Practice, and has authored a law review article on the Private Securities Litigation Reform Act of 1995.

Mr. Simon received his Bachelor of Arts degree from Union College in 1970 and his Juris Doctor degree from Duke University School of Law, Order of the Coif and with distinction, in 1973. He served as law clerk to the Honorable Irving Hill, U.S. District Judge for the Central District of California, in 1973-74.

**BYRON S. GEORGIOU** received his A.B. with Great Distinction, with Honors in Social Thought and Institutions, in 1970 from Stanford University, attending on an Alfred P. Sloan full academic scholarship. After a year co-founding and teaching 7th and 8th graders at the Mariposa School, which has thrived for 35 years as an alternative primary through middle school in rural Mendocino County, he attended Harvard Law School, graduating *magna cum laude* in 1974. He was admitted to the California Bar in 1974 and served for one year as law clerk to the Honorable Robert F. Peckham, Chief Judge of the U.S. District Court for the Northern District of California. He is a member of the bar of the U.S. Supreme Court, the U.S. Court of Appeals for the Ninth Circuit and the U.S. District Courts for the Northern, Eastern, Central and Southern Districts of California.

Mr. Georgiou served from 1975 to 1980 in various capacities with the California Agricultural Labor Relations Board, defending the constitutionality of the law up through the U.S. and California Supreme Courts and prosecuting unfair labor practice cases enforcing the collective bargaining rights of farmworkers, who had been excluded from coverage under the National Labor Relations Act.

From 1980 to 1983, Mr. Georgiou served as Legal Affairs Secretary to California Governor Edmund G. Brown Jr., responsible for litigation by and against the Governor, judicial appointments, liaison with the Attorney General, Judiciary and State Bar, legal advice to the Governor and members of his Cabinet, and exercise of the Governor's powers of extradition and clemency.

From 1983 to 1994, he was Managing Partner and co-founder of the San Diego law firm of Georgiou, Tosdal, Levine & Smith, engaged in a general civil practice, with emphasis on litigation,

appearances before executive and legislative governmental bodies, and representation of labor organizations and their members, including contract negotiations and enforcement for many California public and private sector unions.

In 1994, he co-founded and served as President of American Partners Capital Group, specializing in serving the needs of institutional investors through capital formation programs in a variety of alternative asset categories.

In 1981 Mr. Georgiou was honored as Public Official of the Year by the California Trial Lawyers Association and served as Chair of the Governor's Task Force on Alcohol, Drugs and Traffic Safety, one of the nation's first vehicles for enacting tough drunk driver legislation sponsored by the Mothers Against Drunk Driving (MADD).

Since affiliating with Milberg Weiss in 2000 and continuing with Lerach Coughlin, Mr. Georgiou serves as the primary liaison with a number of the firm's principal institutional clients and is actively involved in the historic litigations seeking recoveries for defrauded investors in *Enron, Dynegy, AOL Time Warner* and *WorldCom*.

**SANDRA STEIN** is a graduate of the University of Pennsylvania (B.S.) and Temple University Law School (J.D.).  She is a member of the Pennsylvania and Washington, D.C. bars.  Ms. Stein specializes in securities class action litigation, legislative law, and antitrust litigation. She served as counsel to U.S. Senator Arlen Specter and to the U.S. Institute for Law and Economic Policy, a think tank which develops policy positions on selected issues involving the administration of justice within the American Legal System.  In addition, Ms. Stein served on the Board of Advisors of the Annenberg Institute of Public Service at the University of

Pennsylvania.  Ms. Stein was the recipient of the National Federation of Republican Women's "Best of America" Award and has been honored by the White House, California State Senate, and California State Assembly for civic leadership.

In a unique partnership with her daughter, Attorney Laura Stein, a former associate of Milberg Weiss, the Steins served as two of the top asset recovery experts in the firm.  With Lerach Coughlin, Attorneys Stein focus on maximizing profits and minimizing losses to shareholders due to corporate fraud and breaches of fiduciary duty.  They also seek to deter future violations of federal and state securities laws by reinforcing the standards of good corporate governance.

Ms. Stein has been active in a number of organizations, including the National Association of Shareholder and Consumer Attorneys (NASCAT), National Association of State Treasurers (NAST), the AFL-CIO Lawyers Coordinating Committee, the National Coordinating Committee for multi-employer Plans (NCCMP), the International Foundation for Employer Benefit Plans (IFEBP) among others.

Ms. Stein recently addressed the National Association of Auditors, Controllers and Treasurers on the subject of corporate governance and its role as a positive force in future class action securities settlements.  She has also spoken before numerous AFL-CIO conventions and dozens of public and multi-employer pension funds.

**ELISABETH A. BOWMAN** is part of Lerach Coughlin's in-house graphics group which creates visual and audio aids to help explain complex cases and legal theories in a succinct and understandable way. Ms. Bowman's eight years as a criminal defense trial attorney and her former experience in the graphic arts combine to

make her exceptionally well suited to produce persuasive legal graphics at every stage of litigation and at trial. Before joining Lerach Coughlin, Ms. Bowman practiced law with Milberg Weiss for six years, during which time she assisted in the trials of: *Long v. Wells Fargo Company, et al.*, *Yourish v. California Amplifier, et al.*, *In re Helionetics, Inc. Securities Litigation*, and *Schwartz v. Visa, et al.*

Since joining Lerach Coughlin in 2004, Ms. Bowman assisted in the trials of: *Douglas Shooker, et. al. v. Gary Winnick, et. al.*, and *In re AT&T Corp. Securities Litigation.*

Ms. Bowman received her B.F.A. from the University of Alaska at Anchorage in 1986, where she majored in Fine Arts and Psychology. While a student at the U of A, she received a grant from the Ford Foundation to participate in the artists in residency program at the Visual Arts Center, Alaska. Ms. Bowman received her J.D. from the University of San Diego in 1989. During the summer of 1987, she attended USD's Institute on International and Comparative Law in Oxford, England.

Ms. Bowman was in private practice as a criminal defense attorney for eight years, handling both trials and appeals in state and federal courts. Ms. Bowman is a member of Volunteers in Parole, an organization based on the Big Brothers' paradigm, in which attorneys are matched with parolees from the California Youth Authority in an effort to offer positive mentoring. She also served on VIP's local and state-wide boards.

Ms. Bowman is a member of the California bar (1990), and is admitted to the Supreme Court of the State of California, the U.S. District Court for the Southern District of California, the U.S. Court of Appeals for the Ninth Circuit, and the Supreme Court of the United States.

**JAMES CAPUTO** has focused his practice on the prosecution of complex litigation involving securities fraud and corporate misfeasance, consumer actions, unfair business practices, contamination and toxic torts, and employment and labor law violations. He has successfully served as lead or co-lead counsel in numerous class and consumer actions litigation matters, including, for example: *In re S3 Securities Litigation*, Case No. CV770003 (Cal. Super. Ct., Santa Clara County); *Santiago v. Kia Motors America*, Case No. 01CC01438 (Cal. Super. Ct., Orange County); 0988 MJJ (N.D. Cal.); *In re Fleming Companies Securities Litigation*, No. 5:02-CV-178 (TJW) (E.D. Tex.); *In re Capstead Mortgage Corp. Securities Litigation*, No. 3:98-CV-1716 (N.D. Tex.); *In re Valence Technology Securities Litigation*, C95-20459 (JW)(EAI) (N.D. Cal.); *In re THQ, Inc. Securities Litigation*, Master File No. CV-00-01783-JFW (C.D. Cal.); and *In re ICN Pharmaceuticals Corp. Securities Litigation*, No. CV-98-02433 (C.D. Cal.).

Mr. Caputo was formerly a partner at Spector Roseman & Kodroff and Milberg Weiss. During the latter tenure, he was one of the trial counsels in the year-long trial of *Newman v. Stringfellow*, a toxic exposure case involving nearly 4,000 plaintiffs. That case ultimately settled for approximately $110 million. More recently, he was co-trial counsel in an employment law class action against Taco Bell, which settled for $14 million.

Mr. Caputo received a B.S. degree from the University of Pittsburgh in 1970 and an M.A. degree from the University of Iowa in 1975. In 1984, he received his J.D. degree *magna cum laude* from California Western School of Law, where he served as editor-in-chief of the International Law Journal. He also clerked for Presiding Justice Daniel J. Kremer of the California Court of Appeal from 1985 to 1987 and to Associate Justice

Don R. Work of the California Court of Appeal from 1984 to 1985. He has co-authored: "No Single Cause: Juvenile Delinquency and the Search for Effective Treatment" (1985) and authored Comment, *Equal Right of Access in Matters of Transboundary Pollution: Its Prospects in Industrial and Developing Countries*, 14 Cal. West. Intl. L. J. 192 (1984). Mr. Caputo has also numerous presentations to various legal and professional groups regarding complex and class action litigation.

He is admitted to practice in the State of California and the U.S. District Courts for the Southern, Central and Northern Districts of California as well as numerous other jurisdictions. Mr. Caputo is a member of the S an Diego County and American Bar Associations, the Consumer Attorneys of California, and the Association of Trial Lawyers of America.

**MITCHELL D. GRAVO** is the sole owner of The Law Offices of Mitchell D. Gravo, Inc. specializing in lobbying and government relations. The firm represents clients before the Alaska Congressional delegation, the Alaska Legislature, the Alaska State Government and the Municipality of Anchorage.

Mr. Gravo attended Ohio State University as an undergraduate before attending the University of San Diego School of Law. He came to Alaska in 1977, served briefly as an intern with the Municipality of Anchorage and then clerked a year for Superior Court Judge J. Justin Ripley. After his clerkship with Judge Ripley, he went back to the work for the Municipality of Anchorage, where he first served as the executive assistant to the Municipal Manager and then as the first lobbyist for the then Mayor of Anchorage, George M. Sullivan. Mitch has been described as one of the "top lobbyists in the state"

by Alaska's major daily newspaper, *The Anchorage Daily News*.

The legislative clients of the firm include the Anchorage Economic Development Corporation, the Anchorage Convention and Visitors Bureau, UST Public Affairs, Inc., the International Brotherhood of Electrical Workers, Alaska Seafood International, Distilled Spirits Council of America, RIM Architects, Anchorage Police Department Employees Association, Fred Meyer, and the Automobile Manufacturer's Association.

**JACQUI E. MOTTEK** received her B.S. degree in Government and Politics *cum laude* from the University of Maryland, College Park, Maryland in 1979. Ms. Mottek obtained her J.D. in 1986 from the University of San Francisco School of Law, where she was a recipient of the American Jurisprudence Award in Constitutional Law and a member of the University of San Francisco's Law Review.

Ms. Mottek was associated with the law firm Brobeck, Phleger & Harrison from 1987 to 1994. In 1994, Ms. Mottek served as sole chair in a jury trial resulting in a verdict in favor of her clients of $1 million. In 1994, Ms. Mottek became a partner with the firm Lieff, Cabraser, Heimann & Bernstein specializing in plaintiffs' class actions with an emphasis on consumer fraud litigation and other complex business litigation for plaintiffs. She successfully prosecuted a certified class action on behalf of physicians who provided medical services to of Blue Cross of California HMO members. She is the author of "The Impact of Classwide Arbitration on Mandatory Arbitration," Vol. 1, No. 13, Class Action Litigation Report (October 27, 2000).

Prior to joining Lerach Coughlin in 2004, Ms. Mottek prosecuted consumer fraud class actions. She serves as co-lead counsel in several consumer

class actions, including *Tenet HealthCare Cases II*, JCCP 4285, pending before the Los Angeles Superior Court, and as co-lead counsel and a member of the executive committee of the *Cellphone Termination Fees Litigation*, JCCP 4332, pending before the Superior Court of Alameda County. She is also a senior litigator in *Spielholz v. LA Cellular, Inc,*. Case No. BC186787 (resulting in the published opinion *Spielholz v. Superior Court*, 86 Cal. App. 4th 1866 (2001), granting a petition for a writ of mandamus she drafted in a question of first impression in California); in the matters coordinated before the federal court in the Northern District of Illinois, styled *In re Owen Federal Bank Mortgage Servicing Litigation*, MDL No.1604 and as counsel in *Paton v. Cingular Wireless*, Case No. CGC-04-428855, in the Superior Court of San Francisco.

**L. THOMAS GALLOWAY** attended Florida State University (B.A., History/Latin) and received his J.D. from the University of Virginia Law School (1972), where he was a member of the Editorial Board of the University of Virginia Law Review.

Mr. Galloway is the founding partner of Galloway & Associates, a law firm specializing in the representation of institutional investors – namely, public and multi-employer pension funds.

Mr. Galloway has authored several books and articles, including: *The American Response to Revolutionary Change: A Study of Diplomatic Recognition* (AEI Institute 1978); *America's Energy: Reports from the Nation* (Pantheon 1980); Contributor, *Coal Treatise* (Matthew Bender 1981); Contributor, *Mining and the Environment: A Comparative Analysis of Surface Mining in Germany, Great Britain, Australia, and the United States*, 4 Harv. Envtl. L. Rev. 261 (Spring 1980); *A Miner's Bill of Rights*, 80 W. Va. L. Rev. 397 (1978); and

Contributor, *Golden Dreams, Poisoned Streams* (Mineral Policy Center Washington D.C. 1997).

Mr. Galloway represents and/or provides consulting services for the following: National Wildlife Federation, Sierra Club, Friends of the Earth, United Mine Workers of America, Trout Unlimited, National Audubon Society, Natural Resources Defense Council, German Marshal Fund, Northern Cheyenne Indian Tribe and Council of Energy Resource Tribes. He is a member of the District of Columbia and Colorado State Bars.

**JERRILYN HARDAWAY**, in the Houston Enron Trial Office, is a seventh-generation Texan who grew up in Greenville and graduated from Texas A&M with three undergraduate degrees-English, Psychology and Applied Mathematics. She was a Fulbright Scholar, studying Italian architecture and writing a prize-winning article on international trade relations. Despite her primarily liberal arts education she was really only interested in computers, focusing on software development for vertically integrated markets, which led to an interest in antitrust law. She graduated in 1993 from the University of Houston Law Center, where she was a member of the Houston Journal of International Law. She worked alongside renowned class-action attorney Charles Kipple for the next eight years, assisting as lead counsel or co-lead counsel in several complex anti-trust cases through 1999, including MDL1206, *In Re: Lease Oil Antitrust Litigation* in the Southern District of Texas, Corpus Christi Division. After traveling and living abroad for three years, she returned to Houston and, in March 2002, was asked to "build a simple database, probably won't take longer than the summer." Now, more than two years later, her Enron databases manage more than 100 million documents and she supervises two teams of litigation- support specialists. Jerri is a frequent

speaker and author on electronic discovery and developing issues in technology and the law. She speaks several languages, which helps because she very much enjoys traveling.

## SPECIAL COUNSEL

**SUSAN K. ALEXANDER** graduated with honors from Stanford University in 1983 and earned her J.D. from the University of California at Los Angeles in 1986. Ms. Alexander joined the Appellate Practice Group at Lerach Coughlin in 2004 after working with Milberg Weiss in San Francisco for four years.

Following her admission to the California Bar in 1986, Ms. Alexander joined Bronson, Bronson & McKinnon, where she litigated professional malpractice and product liability cases on behalf of attorneys, doctors, and automobile manufacturers, second-chairing two dental malpractice cases to a defense verdict. In 1990, Ms. Alexander joined the California Appellate Project ("CAP"), where she prepared appeals and petitions for writs of *habeas corpus* on behalf of individuals sentenced to death, as well as supervising private attorneys in their preparation of appeals and *habeas corpus* petitions. At CAP and subsequently in private practice, Ms. Alexander litigated and consulted on death penalty direct and collateral appeals for 10 years, including favorable decisions in the California Supreme Court (*In re Brown*, 17 Cal. 4th 873 (1998)) and the Ninth Circuit (*Odle v. Woodford*, 238 F.3d 1084 (9th Cir. 2001)). At Milberg Weiss, Ms. Alexander has argued *Shuster v. Symmetricom, Inc.* and *Wilkes v. Versant Object Technology Corp.* in the Ninth Circuit, and will argue *Pirraglia v. Novell, Inc.* in the Tenth Circuit.

Ms. Alexander is a member of the bar of the U.S. Supreme Court, the Ninth Circuit Court of Appeals, the Tenth Circuit Court of Appeals, U.S. District Court, Northern, Central, Eastern and Southern Districts of California, and the California Supreme Court. Ms. Alexander is also a member of the Federal Bar Association, Appellate Division and the Appellate Practice Section of the Bar Association of San Francisco.

## FORENSIC ACCOUNTANTS

**ANDREW J. RUDOLPH** is a Certified Fraud Examiner and a Certified Public Accountant licensed to practice in California. He is an active member of the American Institute of Certified Public Accountants, California's Society of Certified Public Accountants and the Association of Certified Fraud Examiners. His 20 years of public accounting, consulting and forensic accounting experience includes financial fraud investigation, auditor malpractice, auditing of public and private companies, business litigation consulting, due diligence investigations and taxation. Mr. Rudolph is the National Director of Lerach Coughlin's Forensic Accounting Department which provides the firm with in-house forensic accounting expertise in connection with securities fraud litigation against national and foreign companies. Prior to joining Lerach Coughlin in 2004, Mr. Rudolph was the Director of Forensic Accounting for the law firm of Milberg Weiss for 12 years. Mr. Rudolph has given numerous lectures and assisted with articles on forensic investigations and financial statement fraud. Mr. Rudolph has directed hundreds of financial statement fraud investigations which were instrumental in the recovery of billions of dollars for defrauded investors. Prominent cases include *Qwest*, *HealthSouth*, *WorldCom*, *Boeing*, *Honeywell*, *Vivendi*, *Aurora Foods*, *Informix*, and *Platinum Software*.

**CHRISTOPHER YURCEK** is of the firm's senior forensic accountants and provides in-house forensic accounting and litigation expertise in

connection with major securities fraud litigation. Mr. Yurcek is a Certified Public Accountant with 19 years of accounting, forensic examination and consulting experience in areas including financial statement audit, fraud investigation, auditor malpractice, turn-around consulting, business litigation, and business valuation. Mr. Yurcek is currently responsible for overseeing the firm's forensic accounting investigation in *In re Enron Corporation Securities Litigation*. Prior to joining Lerach Coughlin, Mr. Yurcek provided in-house forensic accounting expertise to Milberg Weiss where he directed accounting investigations in connection with well-publicized recent securities fraud litigation including cases such as *Enron*, *Vesta*, *Informix*, *Mattel*, *Coca Cola Company*, and *Media Vision*. Prior to joining Lerach Coughlin and Milberg Weiss, Mr. Yurcek's experience included providing forensic accounting expertise to bankruptcy trustees, and audit and accounting services at a national CPA firm. Mr. Yurcek speaks at professional accounting seminars on topics such as financial statement fraud and fraud prevention, and has co-authored articles on the subjects. Mr. Yurcek is a member of the American Institute of Certified Public Accountants, and the California Society of CPAs.

**R. STEVEN ARONICA** is a Certified Public Accountant licensed in the States of New York and Georgia and is a member of the American Institute of Certified Public Accountants, the Institute of Internal Auditors and the Association of Certified Fraud Examiners. He has been employed in the practice of accounting for 25 years, including: (1) public accounting where he was responsible for providing clients with a wide range of accounting and auditing services; (2) private accounting with Drexel Burnham Lambert, Inc. where he held positions with accounting and financial reporting responsibilities, most recently as a Vice President; (3) various positions with the United States Securities and Exchange Commission; and (4) the chief forensic accountant in the New York office of Milberg Weiss. Mr. Aronica has extensive experience in securities regulation and litigation. At the SEC, Mr. Aronica reviewed and analyzed financial statements and related financial disclosures contained in public filings for compliance with generally accepted accounting principles, generally accepted auditing standards, and the accounting and auditing rules, regulations and policies of the SEC. Mr. Aronica was also an Enforcement Division Branch Chief, responsible for managing a group of investigators and accountants who initiated, developed and executed numerous investigations involving financial fraud, accounting improprieties and audit failures. During his seven-year tenure at he SEC, Mr. Aronica was responsible for directing and investigating a complex, Mr. Aronica has been instrumental in the prosecution of numerous financial and accounting fraud civil litigation claims against companies which include: Lucent Technologies, Oxford Health Plans, Computer Associates, Aetna, WorldCom, Tyco, Vivendi, AOL Time Warner, Ikon, Thomas & Betts, InaCom, and Royal Ahold. In addition, Mr. Aronica helped prosecute numerous claims against each of the major U.S. public accounting firms.

### *FIRM RESUME*

Shapiro Haber & Urmy LLP is a litigation firm based in Boston, Massachusetts that concentrates in the litigation of complex civil actions, particularly class actions. We have represented investors, businesses and consumers in numerous significant class actions. The firm has won multimillion dollar jury verdicts, arbitration awards and settlements for its clients and the classes. The firm has extensive experience in both trials and appeals in state and federal courts. Unlike many civil litigators, partners in the firm have conducted numerous jury trials.

The firm has been awarded the "AV" rating by the Martindale-Hubbell Law Directory. Two of the firm's partners were named Massachusetts Super Lawyers in securities litigation in 2004. The firm's website is located at www.shulaw.com.

Highlights of the firm's class action experience include the following:

1.     *Tucker v. Scrushy, et. al. (*Jefferson County, Alabama). Edward Haber, a partner of the firm, is one of the Court appointed lead counsel in the consolidated derivative action brought on behalf of the HealthSouth Corporation against its former CEO, Richard Scrushy, its other former officers and directors, its auditors, investment bankers and others. This action coordinates derivative actions brought on behalf of HealthSouth in the Delaware Chancery Court (*Biondi v. Scrushy, et. al.*), the Federal District Court in Alabama and the state court in Birmingham, Alabama.

2.     *U.S. West, Inc. v. MacAllister, et. al.,* (District of Colorado). This was a derivative action arising from $10 million in fines assessed against U.S. West. The firm was co-lead counsel for the derivative plaintiffs and the class. U.S. West is one of the "Baby Bells" which was created in the court-approved break of American Telephone and Telegraph (AT&T). The $10 million fine was imposed by the United States District Court for the District of Columbia as a result of U.S. West's violations of the Modification of Final Judgment ("MFJ") entered in *United States v. American Tel. & Tel. Co.,* 552 F. Supp 131 (D.D.C. 1982), aff'd mem. Sub nom. Maryland v. United States, 460 U.S. 1001 (1983), *modified United States v. Western Electric Co.*, 673 F. Supp. 525 (D.D.C. 1987), 714 F. Supp 1 (D.D.C. 1988), *aff'd in part and reversed in part,* 900 F.2d 213 (D.C. Cir. 1990). The MFJ governed the break-up of AT&T and the regional telephone companies. Notice of the settlement of this action

was sent to approximately 1,500,000 class members and shareholders of U.S. West. The firm (and its co-lead counsel) successfully dealt with a huge volume of written and telephonic inquiries which that class notice produced.  The decision of the Court (Judge Lewis T. Babcock) approving the settlement of this action is published in the CCH Federal Securities Law Reporter [1992-1993 Transfer Binder], Para. 97,269 at page 95, 228 (December 18, 1992).  In that decision Judge Babcock commended the efforts and results of the firm and co-counsel, as follows:

> The proposed settlement in this case was fairly and honestly entered into after exhaustive discovery and intense negotiations. . .

> All of these matters reflect thorough investigation not only by the plaintiffs, but by the demand committee in a manner that minimized the expenditure of time and resources in light of the issues raised by the demand.

> The Court is satisfied beyond question that . . . this reflects an arm's length settlement and negotiated by skilled and experienced attorneys in light of complex facts in a somewhat complex and novel context.

(*Id.* at page 95,235)

> It [the settlement] reflects a compromise of a dispute with a minimum of expenditure of expense and resources.

(*Id.* at 95,236)

> . . . Counsel who have been involved in this case come with a wealth of experience and skill in prosecuting class actions, derivative actions in the field and have expanded this skill and experience to address the rather novel issues that have been presented here.

(*Id.* at 95,237)

3.    *United States Trust Company of New York, et. al. v. Albert, et. al.* and *Investors Fiduciary Trust Company v. Jenner, et. al.* (Southern District of New York). These interpleader actions were brought by the plaintiff trust companies involving over $100 million dollars received by the plaintiffs as Trustees of several unit investment trusts.  At issue is which combination of three groups of potential claimants are entitled to those funds.  On July 25, 1995 United States Magistrate

Judge Sharon E. Grubin, in her Report and Recommendation to the Honorable Kimba M. Wood, recommended that the firm be appointed lead counsel for one of the three defendant classes.  (Judge Wood endorsed that recommendation.)  In doing so Magistrate Judge Grubin said as follows:

> I should note at the outset that both firms are highly qualified to act as lead counsel for the Class.  Briefly, Shapiro Grace [Haber & Urmy] has extensive experience in prosecuting class actions, including as lead counsel.  Haber himself . . . has litigated in federal courts across the country for 25 years . . . Haber, as well as the others in the firm, have impressive academic and professional credentials, including teaching and lecturing on securities litigation and other areas.
>
> . . . There is no doubt that both Shea & Gardner and Shapiro Grace [Haber & Urmy] have the qualities notes as necessary for lead counsel by the Manual for the Complex Litigation, Second, § 20.224 at 20 (1985); ability, commitment and resources. . .
>
> * * *
>
> Shapiro Grace [Haber & Urmy] has circulated to counsel and the court a draft of the summary judgment brief it has prepared, contending that the Former Holder Class is not entitled to any share of the Fund as a matter of law . . .
>
> * * *
>
> Without intending to express any view at this time as to the merits of Shapiro Grace [Haber & Urmy]'s proposed summary judgment motion or the wisdom if its strategy, I note that it shows thought in vigorous pursuit of what counsel believes is in the best interest of the class. . .

(Report and Recommendation, July 25, 1995, at 35-36 and 37 and 42.)

4.    *In re Merrill Lynch Analyst Reports Securities Litigation, 02-MDL-1484,* pending in the United States District Court for the Southern District of New York.  Mr. Haber is the court appointed Co-chairman of the Plaintiffs' Executive Committee.  The firm is also court-appointed lead counsel in two of the Merrill Lynch securities analyst cases.  *In re Merrill Lynch & Co.  InfoSpace Analyst Reports Securities Litigation,* and *In re Merrill Lynch & Co., Inc. Internet Capital Group, Inc. Research Reports Analyst Securities Litigation.*

5.    The firm has been appointed lead counsel or co-lead counsel in three securities fraud class actions pending in the District of Massachusetts against leading financial services firms for issuing allegedly false and misleading research reports.

5.    *Conseco Annuity Assurance Company v. Citigroup, Inc., et. al.* (Southern District of Texas).  The firm is counsel to Conseco Annuity Assurance Company in a class action against Citigroup, Inc., Citibank, N.A., Saloman Smith Barney and other Citigroup, Inc. subsidiaries.  The action alleges that the defendant sold approximately $2 billion of Enron Credit Link Notes (which would become worthless in the event of an Enron bankruptcy), in order to transfer the Citigroup defendants' loan exposure to Enron to the institutional purchasers of the Notes.  The action alleges that the defendants sold the Notes when they knew that Enron financial statements were fraudulent, which knowledge came from the fact that the Citigroup defendants had engaged in transactions with Enron pursuant to which Enron was creating its false financial statements.

6.    The firm represented the Commonwealth of Massachusetts Pension Reserves Investment Trust ("PRIT") in a securities fraud action against Bear Stearns & Co., Inc. in the U. S. District Court for the Southern District of California.  The case arose out of the sale of $81 million in subordinated debentures issued by Weintraub Entertainment Group ("WEG"), a start-up film company.  In February 1987, PRIT bought $5 million in bonds from Bear Stearns, the placement agent for the issuer.  WEG declared bankruptcy in 1990, and the bondholders lost virtually their entire investment.  A class action was filed in San Diego against Bear Stearns and others.  PRIT also filed suit in 1991, and in 1993 our action was consolidated with the class action for discovery and trial.  The case was tried to a jury in San Diego in the summer of 1998.  Shapiro Haber & Urmy LLP partner Thomas V. Urmy was PRIT's trial counsel.  After a 4 week trial, the jury found that Bear Stearns had committed securities fraud in violation of section 10b-5 and entered a $6.57 million verdict in favor of PRIT.  This award was 100% of the damages sought by PRIT at the trial.  The case was subsequently settled while on appeal to the Ninth Circuit.

7.    Shapiro Haber & Urmy partners Thomas Shapiro and Edward Haber were chief trial counsel in a securities class action entitled *Fulco v. Continental Cablevision,* C. A. No. 89-1342-Y, in a three-week jury trial before Chief Judge Young in the United States District Court in Boston.  The case was brought on behalf of the limited partners in four partnerships that owned and operated cable television systems.  The jury returned a verdict for the plaintiffs for approximately $4.5 million.

7.    Mr. Shapiro was chief trial counsel in a securities fraud class action against Polaroid Corporation in federal court in Boston, which resulted in a jury verdict with an estimated value of $80 million.  A panel of the Court of Appeals for the First Circuit found error in the jury instructions and remanded the case for a new trial.  Polaroid then petitioned for and received *en banc* reconsideration.  Sitting *en banc*, the First Circuit reversed the judgment.  *Backman v. Polaroid Corp,* 910 F.2d 10 (1 Cir. 1990).

8.    The firm is co-lead counsel in a securities fraud class action entitled *In Re Actrade Financial Technologies Securities Litigation* pending in the United States District Court for the Southern District of New York, which has been settled for $9.9 million, subject to court approval.

9.    The firm was liaison counsel in an antitrust class action in the District of Massachusetts against SmithKline Beecham that was settled in 2004 for $175 million.

9.    The firm is co-lead counsel in *In re Polymedica Corp. Securities Litigation*, a securities fraud class action pending in the District of Massachusetts.

9.    The firm represented the Louisiana Employees State Retirement System, and was appointed by the court as co-lead counsel, in a securities fraud class action entitled *In Re Molten Metal Technology, Inc. Securities Litigation* in the United States District Court for the District of Massachusetts.  In spite of the bankruptcy of Molten Metal, claims against the directors and officers of the company were settled for $11.91 million.  The firm was also co-lead counsel in a related class action on behalf of investors in Molten Metal stock which was settled for an additional $1.25 million.  *Axler v. Scientific Ecology Group, Inc.*

10.    The firm also served as co-lead counsel on behalf of the Louisiana Employees State Retirement System in a securities fraud class action against Kurzweil Applied Intelligence, Inc.  The action was settled with the company, certain of its officers, and certain underwriters of Kurzweil for $7.5 million in cash and stock.   After further litigation, an additional $2.15 million was recovered from Kurzweil's outside auditors. *Morton v. Kurzweil Applied Intelligence, Inc.* (D. Mass.).

11.    The firm represented a class of persons who had sold businesses to Waste Management, Inc. for common stock of Waste Management  The case arose from Waste Management's restatement of its financial statements.   The firm obtained summary judgment against Waste Management as to liability for a majority of the class members. The firm successfully defended defendant's appeal of the class certification order to the United States Court of Appeals for the First Circuit.  208 F.3d 288 (2000).  That was the first appeal ever heard by the First Circuit pursuant to Rule 23(f).   The case was subsequently settled for a combination of cash and stock with a total value of $25 million. *Mowbray v. Waste Management Holdings, Inc.*, (D. Mass.).

12.    The firm was co-lead counsel in a securities fraud class action against Inso Corp. in the District of Massachusetts that was settled for $12 million.

13.    The firm served as liaison counsel in a securities fraud class action against Picturetel Corporation based on allegedly false and misleading financial statements, including the improper recognition of revenue.  The case was settled for $12 million.  *In Re Picturetel Corp. Securities Litigation* (D. Mass.).

14.    The firm was one of three law firms that represented the class in a securities

fraud action against the software company Pegasystems, Inc., which arose out of the allegedly improper recognition of revenue from a software licensing contract. The case was settled for $5.25 million. *Chalverus v. Pegasystems, Inc.* (D. Mass.).

15.    The firm served on the Executive Committee of plaintiffs' counsel in the securities fraud class action against Centennial Technologies, Inc. and certain of its officers and directors. This action arose from one of the more notorious financial frauds in Massachusetts history. This action was settled for a combination of Centennial stock and cash with a value of approximately $20 million. Claims against Centennial's auditors settled for an additional $20 million. *In Re Centennial Technologies Litigation* (D. Mass.).

16.    The firm was co-lead counsel in a securities fraud class action against Presstek, Inc. and certain of its officers. The case was settled for over $20 million of Presstek stock. *Berke v. Presstek, Inc.* (D. N.H.).

17.    The firm represented the limited partners in ten oil and gas drilling limited partnerships in securities fraud class actions against the sponsor of the partnerships, officers of the sponsor, and the investment bank, lawyers and auditors for the partnerships. The firm overcame the bankruptcy of the sponsor, the bankruptcy of the investment bank, the insolvency of the primary directors and officers' insurance carrier and the dissolution of the defendant law firm, to recover settlements totaling approximately $15 million. *Holton v. Rothschild* (D. Mass.), and related cases.

18.    The firm served on the Executive Committee of plaintiffs' counsel in a securities fraud class action against Cambridge Biotech Corp. Cambridge Biotech was in bankruptcy, and this action involved delicate negotiations with the directors and officers' insurance carrier and the Trustee in Bankruptcy of Cambridge Biotech. The case was settled for $1.05 million in cash plus 25% of the equity in the new corporation that was formed pursuant to Cambridge Biotech's bankruptcy reorganization. *In Re Cambridge Biotech Corp. Securities Litigation* (D. Mass.).

19.    The firm was one of the lead counsel in the securities fraud class action against Kendall Square Research Corporation and certain of its officers and directors, which was settled for cash, stock and warrants, with a total value of approximately $17 million. After the settlement with the company and its officers and directors, the litigation proceeded against Kendall Square's outside auditors, and that action was settled for an additional $3.4 million. *In Re Kendall Square Research Corp. Securities Litigation* (D. Mass.).

20.    Mr. Shapiro successfully argued the appeal to the First Circuit in *Shaw v. Digital Equipment Corp.*, 83 F.3d 1194 (1 Cir., 1996), a securities class action that arose from a secondary offering of Digital securities. After remand, the case was settled for $5.2 million. Partners of the firm have argued at least five other securities fraud class actions in the First Circuit.

21.     The firm was one of plaintiffs' counsel in shareholder derivative litigation against Cendant Corporation, which arose from one of the largest financial frauds in American history. The case was settled for $54 million. *In Re Cendant Corp. Derivative Action Litigation* (D. N.J.).

22.     The firm served as lead counsel in the securities fraud class action against Open Environment Corp. and certain of its officers and directors, which was settled for $6 million. *Zeid v. Open Environment Corp* (D. Mass.).

23.     The firm represented the class in a securities fraud class action against Bank of New England Corporation, which arose from the largest bank failure in New England history. The firm had to deal with the Bank's insolvency and competing claims against limited insurance policies by the Trustee in bankruptcy and the FDIC, as Receiver for the Bank. The case was settled for $6.5 million. *In Re Bank of New England Corporation Class Action Litigation* (D. Mass.).

24.     The firm was co-counsel in a class action suit against the underwriters for the sale of subordinated notes by Bank of New England Corporation. Notwithstanding the dismissal of certain of the claims, the case was settled for $8.4 million. *Slavin v. Morgan Stanley & Co., et al.*, C.A. No. 91-10191-S (D. Mass.).

25.     The firm was lead counsel in a securities fraud class action against Monarch Capital Corporation, which was settled for approximately $5 million.

26.     The firm represented a class of bondholders who had purchased $10 million of industrial revenue development bonds to fund construction of a hotel in Colorado. There were over 60 defendants in the case, including underwriters, lawyers, numerous banks and an agency of the federal government as Receiver for various banks. The firm settled the claims on favorable terms and also located a buyer for, and negotiated the sale of, the hotel, resulting in a recovery of over 80% of the bondholders' losses.

27.     The firm was co-counsel in the representation of a class of persons who were victimized by a "boiler room" commodities trading operation. An extremely complex settlement was reached, including the limited use of a mandatory class to preclude future punitive damage claims. *In Re First Commodity Corporation of Boston Customer Accounts Litigation,* MDL Docket No. 713 (D. Mass.).

28.     Mr. Haber and Michelle Blauner, also a Shapiro Haber & Urmy partner, represented one partner in a suit against another partner for breach of fiduciary duty. The case was tried to a jury in the federal court in Boston, which returned a verdict in favor of our client. The verdict was affirmed on appeal. *Wartski v. Bedford,* 926 F.2d 11 (1 Cir. 1991).

29.     Mr. Shapiro was co-trial counsel for a defendant in a jury-waived trial on an indictment for fraud in the sale of securities, filing false financial statements and conspiracy.

Mr. Shapiro was also on the brief in the appeal from that conviction.  *United States v. Lieberman*, 608 F.2d 889 (1 Cir. 1979).

Biographies of the firm's lawyers are as follows:

**Thomas G. Shapiro**

Mr. Shapiro graduated from Harvard College (*magna cum laude*) in 1965 and from Harvard Law School (*cum laude*) in 1969.  Upon graduation, Mr. Shapiro was an associate of the late William P. Homans, Jr., a noted civil liberties and criminal defense lawyer.  In 1973, Mr. Shapiro co-founded the law firm of Silverglate, Shapiro and Gertner with Harvey Silverglate and now United States District Judge Nancy Gertner, where he remained a partner until 1980.

During this period, Mr. Shapiro conducted a range of civil and criminal jury trials, including cases of first degree murder, armed robbery, criminal securities fraud, Selective Service System violations, and motor vehicle cases such as driving under the influence. One of his more notable jury trials was the defense of Susan Saxe on charges of first degree murder and armed robbery, in which Mr. Shapiro and now Judge Gertner were co-trial counsel.  Mr. Shapiro has thus acquired a depth of trial experience not shared by many civil litigators.

In 1981, Mr. Shapiro co-founded a predecessor firm to his present firm, in which his practice has focused more on civil litigation and class actions.  Mr. Shapiro has become well known for his expertise and experience in complex civil litigation, and especially securities class action litigation.  He served as the first Chairman of the Federal Practice Committee of the Massachusetts Bar Association.  He has on many occasions served on the faculty of Massachusetts Continuing Legal Education programs concerning complex litigations and class actions.  Mr. Shapiro was  one of four attorneys on the Lawyer Panel at the MCLE's Federal Court Judicial Forum '96 at the invitation of the United States District

Court.  Mr. Shapiro has also served on the faculty of a Flaschner Judicial Institute seminar for Massachusetts Superior Court judges on the Trial and Management of Complex Cases.

In addition, Mr. Shapiro has been a faculty member in many other continuing legal education programs concerning securities litigation sponsored by the Practicing Law Institute, ALI-ABA, the Massachusetts Academy of Trial Attorneys and the Boston Bar Association.  Mr. Shapiro has spoken on securities litigation issues at two conventions of the Massachusetts Association of Contributory Retirement Systems, Inc. (MACRS), an association of 106 county and municipal retirement systems in Massachusetts.  He has also been an invited speaker for the Pioneer Institute, the American Corporate Counsel Association and a NASDAQ Financial Executive Conference for senior officers of NASDAQ companies.

Mr. Shapiro is the author of the chapter "Depositions in Class Actions" in *Massachusetts Deposition Practice Manual*, published by MCLE in 1992, and co-author (with Shapiro Haber & Urmy partner Michelle Blauner) of *Securities Litigation in the Aftermath of In Re Data Access Securities Litigation*, 24 New. Eng. L. Rev. 537 (1990).

Mr. Shapiro is a member of the bar of the Commonwealth of Massachusetts, the United States District Court for the District of Massachusetts, the United States Court of Appeals for the First Circuit, and the Supreme Court of the United States.  He has been admitted *pro hac vice* in a number of other jurisdictions.

In addition to his extensive experience conducting jury trials in a variety of criminal and civil matters, Mr. Shapiro has tried two securities fraud class actions in which jury verdicts were returned in favor of the class, as well as a lengthy securities arbitration hearing that resulted in a multimillion dollar award to the plaintiff.  He has argued the

following securities fraud class actions in the United States Court of Appeals for the First Circuit:

> *Backman v Polaroid Corp.*, 910 F.2d 10 (1 Cir. 1990);
>
> *Shaw v Digital Equipment Corp.*, 82 F.3d 1194 (1 Cir. 1996);
>
> *Glassman v Computervision Corp.*, 90 F.3d 617 (1 Cir. 1996);
>
> *Geffon v Micrion Corp.*, 249 F.3d 29 (1 Cir. 2001).

Mr. Shapiro has been actively involved in a large number of the firm's securities litigation cases that did not result in jury trials or appeals.

Mr. Shapiro has an AV rating from Martindale Hubbell and he has been named a Massachusetts Super Lawyer in the field of securities litigation.

**Edward F. Haber**

Mr. Haber graduated from Cornell University in 1966 and from Harvard Law School (*cum laude*) in 1969.  Upon graduation from Harvard Law School, he taught at the Boston College Law School during the 1969-1970 academic year.  Thereafter, Mr. Haber began a civil and criminal trial practice, in which he acquired substantial trial experience before state and federal courts, in Massachusetts and elsewhere.  The events leading up to one of the criminal trials that Mr. Haber conducted in federal court were described as the "New England News Story of the Year."  Mr. Haber's extensive jury trial experience distinguishes him from most attorneys whose experience is limited to civil litigation.

Mr. Haber now specializes in prosecuting securities and consumer class actions.  Over the years, he has prosecuted, along with his partners and associates, dozens of class actions, and he has the experience of bringing several of those class actions to trial.

11

Mr. Haber has participated as a faculty member of the New England Federal Securities Regulation Institute, sponsored by the American Law Institute/American Bar Association Committee on Continuing Professional Education. He has also participated as a faculty member of the Massachusetts Bar Association's seminar on the Fundamentals of Securities Arbitration.  He is a member of the bar of the Commonwealth of Massachusetts, the Supreme Court of the United States, the United States Courts of Appeals For the First and Seventh Circuits and the United States District Courts for the Districts of Massachusetts, the Central District of Illinois and the Eastern District of Michigan.

Mr. Haber has an AV rating from Martindale Hubbell and he has been named a Massachusetts Super Lawyer in the field of securities litigation

**Thomas V. Urmy**

Mr. Urmy graduated from Amherst College in 1960 and from Yale Law School in 1964. Upon graduation, Mr. Urmy was employed at the law firm Root Barrett Cohen Knapp & Smith in New York City, where he assisted the senior litigation partner in that firm, Whitman Knapp.  Mr. Knapp headed the Knapp Commission that investigated police corruption in New York City in the 1970s and was for many years a U.S. District Judge for the Southern District of New York, where he now sits as a Senior District Judge.

While employed at the Knapp firm, Mr. Urmy engaged in a general civil litigation practice in the state and federal courts, litigating cases in the Supreme Court of the State of New York and the United States District Court for the Southern District of New York.

Between 1973 and 1987, Mr. Urmy was with the Boston law firm Warner &

Stackpole, practicing in the area of civil litigation and handling securities, antitrust, banking, product liability, personal injury and other cases. During that time, Mr. Urmy tried numerous cases in the Massachusetts Superior Court and in the United States District Court in Massachusetts.

Since January of 1988, Mr. Urmy has been counsel to and a partner in Shapiro Haber & Urmy LLP, where he has continued his practice of civil litigation primarily in the state and federal courts in Massachusetts, but also in the federal courts in New York City, Washington, D.C. and the Southern District of California.

While at Shapiro Haber and Urmy, a significant part of Mr. Urmy's practice has been representing plaintiffs in class actions, including securities, consumer fraud and unfair labor practices cases. In 1998, Mr. Urmy represented the Pension Reserves Investment Trust of the Commonwealth ("PRIT") in a successful four-week trial in the United States District Court for the Southern District of California arising out of a fraudulent sale by Bear Stearns & Company to PRIT and others of subordinated debentures issued by a start-up film company known as Weintraub Entertainment Group. After a summary judgment entered against PRIT and others had been reversed by the Ninth Circuit, the case was tried to a jury. After trial, the jury entered a $6.57 million verdict in favor of PRIT against Bear Stearns, and the case later settled while on appeal to the Ninth Circuit.

During the course of his career, Mr. Urmy has successfully argued appeals before the United States Courts of Appeals for the First, Second and Ninth Circuits, the Massachusetts Supreme Judicial Court and the Massachusetts Appeals Court

Mr. Urmy has an AV rating from Martindale Hubbell.

13

**Michelle H. Blauner**

Ms. Blauner is a 1983 graduate of Cornell University (with highest distinction) and a 1986 graduate of Harvard Law School (*cum laude*), where she was a managing editor of the *Harvard Civil Rights-Civil Liberties Law Review*.  Between 1986 and January 1988 she was an associate at the Boston law firm of Foley, Hoag & Elliot.  In January, 1988 she joined Shapiro Haber & Urmy.  She became a partner of the firm in 1993.

Ms. Blauner has worked on many of the complex class actions prosecuted by the firm at both the trial and appellate level.  Her practice has been concentrated in federal securities class actions, common law breach of fiduciary duty class actions, shareholder derivative actions, ERISA class actions, and consumer class actions under Massachusetts G.L. c. 93A and other federal and state consumer protection laws.  She also has developed an expertise on the implications of company bankruptcies on securities and ERISA class actions against corporate officers and directors.

In May, 2002, Ms. Blauner served on the faculty of a Boston Bar Association program on the *Life Cycle of a Class Action.*  She is co-author, with Mr. Shapiro, of *Securities Litigation in the Aftermath of In Re Data Access Securities Litigation*, 24 New. Eng. L. Rev. 537 (1990).

Ms. Blauner is a member of the bar of the Commonwealth of Massachusetts, the United States District Court for the District of Massachusetts and the United States Court of Appeals for the First Circuit.  She has been admitted *pro hac vice* in numerous other federal and state courts.

14

**Theodore Hess-Mahan**

Mr. Hess-Mahan is a 1981 graduate of Tufts University and a 1990 graduate of Suffolk University Law School (*cum laude*).  Upon graduation from law school, he worked as a law clerk to Francis P. O'Connor, Associate Justice of the Supreme Judicial Court for the Commonwealth of Massachusetts.  He was an associate with the firm of Ropes & Gray from 1991 to 1997.  Mr. Hess-Mahan joined Shapiro Haber & Urmy as an associate in May 1997.  Mr. Hess-Mahan has been actively involved in the firm's securities litigation practice. In May 2002, he was on the faculty of a seminar entitled "The Life Cycle of a Class Action" sponsored by the Litigation Section of the Boston Bar Association.  Mr. Hess-Mahan is a member of the bar of the Commonwealth of Massachusetts, the Supreme Court of the United States, the United States Court of Appeals for the First Circuit, and the United States District Court for the District of Massachusetts.

**Christine E. Morin**

Ms. Morin is a 1983 graduate of Mount Holyoke College  and a 1994 graduate of Suffolk University Law School (*cum laude*).  She joined Shapiro Haber & Urmy as an associate in March 1995. Ms. Morin has worked on a number of the firm's complex securities and consumer fraud class actions.   She is a member of the bar of the Commonwealth of Massachusetts and the United States District Court for the District of Massachusetts.

**Todd S. Heyman**

Mr. Heyman is a 1993 graduate of Georgetown University and a 1999 graduate of Stanford Law School. Upon graduation from law school, he worked as a law clerk to the Honorable Nancy Gertner, United States District Judge in the District of Massachusetts. Mr. Heyman joined Shapiro Haber & Urmy as an associate in September 2000. Mr. Heyman has been actively involved in a number of the firm's securities, ERISA and labor class actions. He is a member of the bar of the Commonwealth of Massachusetts and the United States District Court for the District of Massachusetts.

**Matthew L. Tuccillo**

Mr. Tuccillo is a 1995 graduate of Wesleyan University and a 1999 graduate of the Georgetown University Law Center. While at Georgetown, Mr. Tuccillo served as a judicial intern to the Honorable Stephen F. Eilperin of the Superior Court for the District of Columbia, now a Senior Judge.

Upon graduation, Mr. Tuccillo was an associate at Brown, Rudnick, Freed & Gesmer, P.C. (now Brown Rudnick Berlack Israels, LLP) from 1999 to 2001. There, Mr. Tuccillo gained substantial trial experience handling a broad range of civil litigation. He represented *amicus* Health Care for All and co-authored briefs filed before the Supreme Judicial Court in *In re Harvard Pilgrim Health Care, Inc.*, 434 Mass. 51 (2001). Mr. Tuccillo successfully conducted numerous municipal zoning hearings, and helped obtain a favorable jury verdict in an employment case in Massachusetts Superior Court. He also worked on several complex cases, including representing the City of Boston in its litigation against the firearms industry.          After Brown Rudnick, Mr. Tuccillo was an associate with

16

the Boston office of Lieff, Cabraser, Heimann & Bernstein, LLP, a national litigation firm, from 2001 to 2002. There, he worked on a variety of complex and class action matters, including consumer protection, antitrust, and bankruptcy cases. In particular, Mr. Tuccillo helped represent the Boston-based Prescription Access Litigation Project in numerous national drug pricing cases.

Mr. Tuccillo joined Shapiro Haber & Urmy as an associate in July 2002. He now focuses his practice on the litigation of complex securities, consumer protection, and employment cases.

Mr. Tuccillo is a member of the bar of the Commonwealth of Massachusetts and the United States District Court for the District of Massachusetts.


**LARA A. SUTHERLIN**

Ms. Sutherlin graduated from Indiana University in 1992 and received her JD degree from Northeastern University School of Law in 1999. She served as a clerk to the Honorable Michael Melloy, United States District Judge in the Northern District of Iowa in 2000 and 2001.

Ms. Sutherlin was an associate with the firms of Pyle, Rome, Lichten & Ehrenberg and Rodgers Powers & Schwartz prior to joining Shapiro Haber & Urmy LLP.

Ms. Sutherlin is a member of the bar of the Commonwealth of Massachusetts, the United States District Court for the District of Massachusetts and the United States Court of Appeals for the First Circuit.

**COUNSEL**

**Lawrence D. Shubow**

The Honorable Lawrence D. Shubow, counsel to the firm, is a retired Justice of the Brookline District Court, where he served from 1978 to 1990. In addition to his position with the firm, Judge Shubow also serves as a mediator for the Massachusetts Appeals Court. Judge Shubow is a graduate of Harvard College and Harvard Law School. He has served on the Massachusetts Supreme Judicial Court's Committee on Gender Bias and Advisory Committee on the Rules of Evidence. He was a Consulting Editor for Summary of Massachusetts Law (four Vols.), West Publishing Company, 1997.

**Alfred J. O'Donovan III**

Mr. O'Donovan is a graduate of Holy Cross College and Suffolk Law School *(cum laude)*. He was awarded the Suffolk trustees' scholarship for graduate study and received an LL.M. in taxation from New York University Law School in 1975. He then joined the tax department of Coopers & Lybrand in Boston. In 1977, Mr. O'Donovan joined the Boston law firm of Cargill, Masterman & Cahill as a business and tax associate and in 1978 began teaching tax law as a member of the adjunct facility of Suffolk Law School. He was an Associate Professor of Law at Suffolk Law School from 1980 to 1985. In 1985, Mr. O'Donovan joined the Boston firm of Warner & Stackpole, as tax counsel, and became a partner in the following year. He was the partner in charge of the tax department from 1990 until 1993 when he became counsel to Shapiro Haber & Urmy.

Mr. O'Donovan has been an Adjunct Professor of Law at Suffolk Law School from

1993 to the present, teaching estate and gift taxation and U.S. international taxation.

As counsel to Shapiro Haber & Urmy, Mr. O'Donovan has continued his tax and business practice, including the litigation of tax disputes in the U.S. Tax Court.

Mr. O'Donovan is a member of the bar of the Commonwealth of Massachusetts, the United States District Court for the District of Massachusetts, the United States Court of Appeals for the First Circuit, the United States Tax Court and the Supreme Court of the United States.